Bardis Vakili (SBN 247783) (bvakili@aclusandiego.org)
David Loy (SBN 229235) (davidloy@aclusandiego.org)
ACLU FOUNDATION OF SAN DIEGO &
IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
Telephone: (619) 398-4485

Craig E. Countryman (SBN 244601) (countryman@fr.com)
Joanna Fuller (SBN 266406) (jfuller@fr.com)
Aleksandr Gelberg (SBN 279989) (gelberg@fr.com)
Megan A. Chacon (SBN 304912) (chacon@fr.com)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070

Leonard B. Simon (SBN 58310) (lens@rgrdlaw.com)
LAW OFFICES OF LEONARD B. SIMON P.C.
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: (619) 338-4549

Counsel for Plaintiff-Petitioners

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORLANDO CANCINO CASTELLAR et al., | Case No. 3:17-cv-00491-BAS-BGS |
| Plaintiff-Petitioners, | **PLAINTIFF-PETITIONERS' OPPOSITION TO DEFENDANT-RESPONDENTS' MOTION TO DISMISS COMPLAINT** |
| v. | |
| JOHN F. KELLY, Secretary of Homeland Security, et al., | Date:          July 10, 2017<br>Time:          TBD<br>Courtroom:  4B (Schwartz)<br>Judge:         Hon. Cynthia Bashant |
| Defendant-Respondents. | **NO ORAL ARGUMENT UNLESS REQUESTED BY JUDGE** |

Case No. 3:17-cv-00491-BAS-BGS

# <u>Table of Contents</u>

<u>Page</u>

I.    INTRODUCTION ..........................................................................................1

II.   FACTS ........................................................................................................3

    A.    Defendants' Policies and Practices of Extended Detention without Prompt Presentment to a Neutral Adjudicator or Judicial Review of Probable Cause. ..............................................3

    B.    Legal Framework for Civil Immigration Arrest, Continued Detention, and Removal Proceedings ..........................................4

    C.    Plaintiffs' Experiences of Extended Detention Before Hearing Pursuant to Defendants' Policies and Practices. ..........6

        1.    Jose Cancino Castellar ..................................................6

        2.    Ana Maria Hernandez Aguas ........................................7

        3.    Michael Gonzalez ........................................................8

III.  STANDARD OF REVIEW ........................................................................8

IV.  ARGUMENT ............................................................................................9

    A.    The Court Has Jurisdiction Over Plaintiffs' Claims, Which Do Not Implicate any Case-by-Case Decisions and Remain Independent of Removal Proceedings Themselves. ..........................................................................10

        1.    This Case Does Not Implicate Discretionary Case-by-Case Decisions, and Therefore 8 U.S.C. § 1252(g) Does Not Deprive This Court of Jurisdiction. ..................................................................10

        2.    This Case Pleads Claims Collateral to Removal Proceedings, and Therefore 8 U.S.C. §§ 1252(a)(5) and (b)(9) Do Not Deprive This Court of Jurisdiction. ..................................................................13

    B.    Plaintiffs State Constitutional and Statutory Claims Against Extended Detention of One to Three Months Without a Prompt Hearing or Judicial Review. ............................15

        1.    To Detain Allegedly Removable Individuals for Over a Month Without a Hearing Violates Procedural and Substantive Due Process. ..............16

            a.    Defendants' Practices Violate Procedural Due Process. ........................................16

b.    Detention for Over a Month Without a
Hearing Violates Substantive Due Process........................ 24

2.    Detention Without Prompt Judicial Review of
Probable Cause Violates The Fourth Amendment..................... 27

3.    The "Entry Fiction" Does Not Deprive Arriving
Noncitizens of Constitutional or Statutory Rights
Against Extended Detention Without Prompt
Hearing or Judicial Review.................................................. 30

4.    Plaintiffs State Claims for Equitable and Habeas
Relief as well as Claims under the APA. ........................................ 35

a.    The Detention of Plaintiffs Is Agency
Action. ..................................................................... 35

b.    The Detention of Plaintiffs Is Final Agency
Action. ..................................................................... 35

c.    The Detention of Plaintiffs Is Unlawful
Agency Action........................................................... 36

V.    CONCLUSION .................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. United States,*
   362 U.S. 217 (1960) ............................................................. 2, 28, 29

*Addington v. Texas,*
   441 U.S. 418 (1979) .................................................................. 16

*Agmeyan v. I.N.S.,*
   296 F.3d 871 (9th Cir. 2002) .................................................. 22

*Aguilar v. ICE,*
   510 F.3d 1 (1st Cir. 2007) ............................................. 13, 14, 15

*Almeida-Sanchez v. United States,*
   413 U.S. 266 (1973) .................................................................. 30

*Armentero v. I.N.S.,*
   412 F.3d 1088 (9th Cir. 2005) (Ferguson, J., concurring)............................ 21

*Armstrong v. Exceptional Child Ctr., Inc.,*
   135 S. Ct. 1378 (2015) .............................................................. 35

*Armstrong v. Squadrito,*
   152 F.3d 564 (7th Cir. 1998) ......................................... 23, 25, 26, 27

*Baker v. McCollan,*
   443 U.S. 137 (1979) .................................................................. 17

*Barahona-Gomez v. Reno,*
   236 F.3d 1115 (9th Cir. 2001) ................................................ 10

*Barker v. Riverside Cnty. Office of Educ.,*
   584 F.3d 821 (9th Cir. 2009) ..................................................... 9

*Barrera-Echavarria v. Rison,*
   44 F.3d 1441 (9th Cir. 1995) ..................................................... 31

*Boos v. Barry,*
   485 U.S. 312 (1988) .................................................................. 33

*Boumediene v. Bush,*
    553 U.S. 723 (2008) ................................................................................32

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ................................................................................36

*Brady v. Gebbie,*
    859 F.2d 1543 (9th Cir. 1988) ...............................................................17

*Campbell v. Burt,*
    141 F.3d 927 (9th Cir. 1998) .................................................................18

*Carlson v. Landon,*
    186 F.2d 183 (9th Cir. 1950) .................................................................16

*Casas-Castrillon v. Dep't of Homeland Sec.,*
    535 F.3d 942 (9th Cir. 2008) ...........................................................33, 34

*Chi Thon Ngo v. I.N.S.,*
    192 F.3d 390 (3d Cir. 1999)...................................................................31

*Matter of Chirinos,*
    16 I. & N. Dec. 276 (BIA 1977) ..............................................................6

*Cnty. of Riverside v. McLaughlin,*
    500 U.S. 44 (1991)............................................................................3, 30

*Cohen v. United States,*
    650 F.3d 717 (D.C. Cir. 2011) (*en banc*) .............................................36

*Coleman v. Frantz,*
    754 F.2d 719 (7th Cir. 1985) ...........................................................24, 26

*Comm'r of Internal Revenue v. Shapiro,*
    424 U.S. 614 (1976) ................................................................................17

*Coolidge v. New Hampshire,*
    403 U.S. 443 (1971) ................................................................................28

*Corley v. U.S.,*
    556 U.S. 303 (2009) ..................................................................20, 25, 27

*Courthouse News Serv. v. Planet,*
    750 F.3d 776 (9th Cir. 2014) ...................................................................8

*Darby v. Cisneros,*
    509 U.S. 137 (1993) ................................................................................................36

*Demore v. Kim,*
    538 U.S. 510 (2003) ................................................................................................26

*Dent v. Holder,*
    627 F.3d 365 (9th Cir. 2010) ................................................................................34

*Diaz-Bernal v. Myers,*
    758 F. Supp. 2d 106 (D. Conn. 2010) ..................................................................12

*Doe v. Gallinot,*
    486 F. Supp. 983 (C.D. Cal. 1979), *aff'd,* 657 F.2d 1017 (9th Cir. 1981) ...................22

*Doe v. Gallinot,*
    657 F.2d 1017 (9th Cir. 1981) ........................................................................22, 23

*Duong v. I.N.S.,*
    118 F. Supp. 2d 1059 (S.D. Cal. 2000) ................................................................13

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council,*
    485 U.S. 568 (1988) ................................................................................................33

*Flanagan v. United States,*
    465 U.S. 259 (1984) ................................................................................................14

*Foucha v. Louisiana,*
    504 U.S. 71 (1992)..................................................................................................18

*Fuentes v. Shevin,*
    407 U.S. 67 (1972)............................................................................................22, 23

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ....................................................................................28, 29, 30

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) ................................................................................................23

*Hayes v. Faulkner County,*
    388 F.3d 669 (8th Cir. 2004) ....................................................................24, 25, 26

*INS v. Lopez-Mendoza,*
    468 U.S. 1032 (1984) ..............................................................................................26

*INS v. St. Cyr,*
 533 U.S. 289 (2001) ................................................................. 10, 33

*J.E.F.M. v. Lynch,*
 837 F.3d 1026 (9th Cir. 2016) ......................................... 1, 13, 14, 15

*Jones v. Blanas,*
 393 F.3d 918 (9th Cir. 2004) ................................................... 26

*Jordan v. Jackson,*
 15 F.3d 333 (4th Cir. 1994) ..................................................... 18

*Krimstock v. Kelly,*
 306 F.3d 40 (2d Cir. 2002) ................................................... 18, 21

*Kwai Fun Wong v. United States,*
 373 F.3d 952 (9th Cir. 2004) ..................................... 10, 12, 30, 31

*Lopez-Valenzuela v. Arpaio,*
 770 F.3d 772 (9th Cir. 2014) ................................................ 23, 24

*Ly v. Hansen,*
 351 F.3d 263 (6th Cir. 2003) ................................................... 13

*Lynch v. Cannatella,*
 810 F.2d 1363 (5th Cir.1987) ................................................... 31

*MacDonald v. United States,*
 No. 11-CV-1088-IEG BLM, 2011 WL 6783327 (S.D. Cal. Dec. 23,
 2011) ....................................................................................... 12, 13

*Magana-Pizano v. I.N.S.,*
 200 F.3d 603 (9th Cir. 1999) ............................................... 13, 35

*Maringo v. Holder,*
 364 F. App'x 903 (5th Cir. 2010)............................................. 34

*Marshall v. Jerrico, Inc.,*
 446 U.S. 238 (1980) ................................................................... 21

*Martinez v. Napolitano,*
 704 F.3d 620 (9th Cir. 2012) ............................................... 13, 14

*Mathews v. Eldridge,*
 424 U.S. 319 (1976) ................................................................... 17

*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) .........................................................................27

*McNabb v. United States*,
  318 U.S. 332 (1943) .........................................................................................16

*Muniz-Muniz v. U.S. Border Patrol*,
  No. 3:09 CV 2865, 2012 WL 5197250 (N.D. Ohio Oct. 19, 2012), *rev'd on other grounds*, 741 F.3d 668 (6th Cir. 2013) ...................................... 35, 36

*N. Georgia Finishing, Inc. v. Di-Chem, Inc.*,
  419 U.S. 601 (1975) .........................................................................................18

*Nadarajah v. Gonzales*,
  443 F.3d 1069 (9th Cir. 2006) .........................................................................33

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ...........................................................................9

*Or. Advocacy Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) .........................................................................26

*OSU Student Alliance v. Ray*,
  699 F.3d 1053 (9th Cir. 2012) ...........................................................................9

*Oviatt v. Pearce*,
  954 F.2d 1470 (9th Cir. 1992) ...................................................................*passim*

*Padilla v. Kentucky*,
  559 U.S. 356 (2010) ...........................................................................................3

*Parra v. Perryman*,
  172 F.3d 954 (7th Cir. 1999) ...........................................................................11

*Prieto-Romero v. Clark*,
  534 F.3d 1053 (9th Cir. 2008) .........................................................................17

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ...................................................................36

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ..................................................................................... 1, 10

*Reno v. Flores*,
  507 U.S. 292 (1993) .......................................................................... 18, 19, 24, 27

*Rhea Lana, Inc. v. Dep't of Labor,*
 824 F.3d 1023 (D.C. Cir. 2016)..........................................................................36

*Rhoden v. United States,*
 55 F.3d 428 (9th Cir. 1995) ...................................................................... 29, 30

*Ring v. Arizona,*
 536 U.S. 584 (2002) ...........................................................................................34

*Rodriguez v. Robbins,*
 715 F.3d 1127 (9th Cir. 2013) .................................................................... 32, 33

*Rodriguez v. Robbins,*
 804 F.3d 1060 (9th Cir. 2015), *cert. granted,* 136 S. Ct. 2489 (2016) ................20, 21, 25

*Rosales-Garcia v. Holland,*
 322 F.3d 386 (6th Cir. 2003) ............................................................................31

*Safe Air for Everyone v. Meyer,*
 373 F.3d 1035 (9th Cir. 2004) ............................................................................8

*Schall v. Martin,*
 467 U.S. 253 (1984) ................................................................................16, 25, 28

*Shaughnessy v. United States ex rel. Mezei,*
 345 U.S. 206 (1953) ...........................................................................................31

*Sissoko v. Rocha,*
 509 F.3d 947 (9th Cir. 2007) ............................................................................11

*Solida v. McKelvey,*
 820 F.3d 1090 (9th Cir. 2016) ..........................................................................35

*Starr v. Baca,*
 652 F.3d 1202 (9th Cir. 2011) ............................................................................9

*Texas v. United States,*
 809 F.3d 134 (5th Cir. 2015), *aff'd by equally divided Court,* 136 S. Ct.
 2271 (2016) ........................................................................................................11

*United States v. Minero-Rojas,*
 No. 11CR3253-BTM, 2011 WL 5295220 (S.D. Cal. Nov. 3, 2011)..........................24

*United States v. Pimental,*
 755 F.3d 1095 (9th Cir. 2014) ............................................................................6

*United States v. Raya-Vaca,*
  771 F.3d 1195 (9th Cir. 2014) ........................................................................30

*United States v. Ritchie,*
  342 F.3d 903 (9th Cir. 2003) ............................................................................9

*United States v. Salerno,*
  481 U.S. 739 (1987) ........................................................................................16

*United States v. Shields,*
  522 F. Supp. 2d 317 (D. Mass. 2007) ............................................................34

*United States v. Tejada,*
  255 F.3d 1 (1st Cir. 2001) ...............................................................................29

*United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.,*
  407 U.S. 297 (1972) ........................................................................................28

*United States v. Weissberger,*
  951 F.2d 392 (D.C. Cir. 1991) ........................................................................15

*Walters v. Reno,*
  145 F.3d 1032 (9th Cir. 1998) ........................................................................11

*Wang v. United States,*
  No. CV 10-0389 SVW (RCX), 2010 WL 11463156 (C.D. Cal. Aug. 18, 2010) ..............................................................................................................12

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ...................................................................................*passim*

*Zhislin v. Reno,*
  195 F.3d 810 (6th Cir. 1999) ..........................................................................11

**Statutes**

5 U.S.C. § 551(10) ..............................................................................................35

5 U.S.C. § 551(13) ..............................................................................................35

5 U.S.C. § 701(2) ................................................................................................35

5 U.S.C. § 701(b)(2) ...........................................................................................35

5 U.S.C. § 702 .....................................................................................................35

5 U.S.C. § 704 ................................................................................................... 35

5 U.S.C. § 706 ................................................................................................... 35

5 U.S.C. § 706(2) .............................................................................................. 36

8 U.S.C. § 1182(b)(5) ....................................................................................... 24

8 U.S.C. § 1225(a)(1) ........................................................................................ 30

8 U.S.C. § 1225(b) ....................................................................................... *passim*

8 U.S.C. § 1226(a) ........................................................................... 4, 24, 32, 33

8 U.S.C. § 1226(c) ...................................................................................... 6, 32

8 U.S.C. § 1229(a) ............................................................................................ 34

8 U.S.C. § 1229(b) ....................................................................................... 7, 34

8 U.S.C. § 1252(a)(5) ............................................................................ 1, 13, 14

8 U.S.C. § 1252(b)(9) ............................................................................ 1, 13, 14

8 U.S.C. §§ 1252(e) .......................................................................................... 11

8 U.S.C. § 1252(g) ....................................................................................... *passim*

8 U.S.C. § 1357(a)(2) .............................................................................. 4, 5, 30

28 U.S.C. § 2241(c)(3) ............................................................................... 3, 35

Administrative Procedure Act ..................................................................... *passim*

Immigration and Nationality Act ............................................................. 5, 9, 14, 16

**Other Authorities**

8 C.F.R. § 287.3(d) ......................................................................................... 4, 5

8 C.F.R. § 1003.19(d) ....................................................................................... 12

8 C.F.R. § 1236.1(b) ........................................................................................... 4

Fourth Amendment .................................................................................... *passim*

Fifth Amendment .......................................................................................... 15, 31

https://www.oig.dhs.gov/assets/Mgmt/2014/OIG_14-116_Aug14.pdf......................24

https://www.oig.dhs.gov/assets/Mgmt/2015/OIG_15-22_Feb15.pdf;........................24

INS, Final Rule-Making, "Enhancing the Enforcement Authority of
    Immigration Officers," 59 FR 42406-01, 42411 (1994)................................29

Rule 12(b)(1) ...........................................................................................................8

Rule 12(b)(6) .....................................................................................................9, 27

# I.   INTRODUCTION

The Constitution rests on the principle that government may not deprive individuals of liberty without robust procedural safeguards. Due process mandates a prompt hearing before a neutral adjudicator for any person detained for a significant time. The Fourth Amendment separately requires the government to obtain prompt judicial review of the basis for that detention. These principles distinguish a constitutional republic from a police state.

This case arises from the government's disregard of those principles. Defendants routinely imprison individuals for one to three months, and sometimes longer, without a prompt hearing or judicial review of probable cause. The first hearing in removal proceedings is especially important for detainees, most of whom lack access to counsel or familiarity with English. ECF No. 1 ¶¶ 5, 29. The first hearing notifies them of the charges; facilitates access to pro bono counsel; and provides them an opportunity to contest detention, seek a bond hearing, and request the evidence against them. ECF No. 1 ¶¶ 3, 27-34. To deny a prompt hearing or judicial review of probable cause strips immigration detainees of critical protections against arbitrary deprivation of liberty.

The Court has jurisdiction to decide this case because it challenges only an aspect of detention during removal proceedings, not the removal proceedings themselves. This case does not arise from any decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). It does not challenge any of those case-by-case "discretionary determinations." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 (1999). Instead, it challenges only the class-wide policy and practice of denying a hearing or judicial review of probable cause for months after the decision to charge and detain has been made. This case also does not require "judicial review of an order of removal" or "aris[e] from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. §§ 1252(a)(5), (b)(9). As the Ninth Circuit has confirmed, sections 1252(a)(5) and (b)(9) do not apply to issues "independent of or collateral to the removal process." *J.E.F.M. v. Lynch*, 837

F.3d 1026, 1032 (9th Cir. 2016). The legality of detention without a prompt hearing or judicial review is independent of removal itself. This Court therefore retains jurisdiction to decide the merits.

On the merits, the facts pleaded state a claim that Defendants are unlawfully detaining individuals for one to three months, sometimes more, without a hearing or judicial review. First, extended detention without a hearing violates both procedural and substantive due process. As courts have held, similar or shorter delays in providing a hearing violate the Constitution in both civil and criminal contexts. Second, extended detention without prompt judicial review of the basis for detention violates the Fourth Amendment in both civil and criminal cases. It is misleading to suggest the Supreme Court has approved immigration detention without judicial review. The Court expressly declined to decide that issue because it was "expressly disavowed" in the trial court. *Abel v. U.S.*, 362 U.S. 217, 230 (1960). Third, Defendants are violating the relevant statutes, which can and must be construed in light of constitutional requirements to require a prompt hearing and judicial review once the government has elected to detain individuals pending removal proceedings.

Defendants cannot prevail by mischaracterizing Plaintiffs' position. This case does not require the Court to "strike down" any statute "in its entirety as unconstitutional." ECF No. 28-1 at 20:3-4. It is Defendants' policies and practices that are unconstitutional, not the statutes on their face. Although the statutes raise constitutional concerns, they may easily be construed to preserve their validity. Plaintiffs do not necessarily assert the right to an "initial master calendar hearing" or judicial review of probable cause "within 48 hours of detention." ECF No. 28-1 at 1:13-14. Though the proposed class includes individuals detained more than 48 hours after arrest, the Complaint demands only a "prompt" hearing and judicial review. ECF No. 1 ¶¶ 68, 78-79, 82-83. The 48-hour mark represents the time by which DHS has made its "initial determination" that class members "will remain in custody." ECF No. 28-1 at 4:13-14. Although 48 hours after arrest is the presumptive time limit for a

probable cause determination in criminal cases, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991), the administrative and procedural differences between criminal and immigration cases may or may not result in a different standard of promptness in this case, depending on the facts developed in discovery. However, those differences do not justify categorically exempting immigration detention from the constitutional requirements of a prompt first hearing and judicial review of probable cause. Under any standard of promptness in any context, a delay of one to three months before first hearing or judicial review cannot be considered prompt.

The government's position ultimately reduces to magical thinking that immigration detention is somehow exempt from the constitutional rules that apply to all other forms of detention. But detention is detention, and immigration powers remain "subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). On the facts pleaded, Defendants are violating those limits, a result they cannot escape by labeling immigration detention as "civil." *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (though deportation is "not, in a strict sense, a criminal sanction," it is "a particularly severe 'penalty'").

Plaintiffs therefore state a claim for declaratory and injunctive relief under the Court's inherent equitable power to cure constitutional violations. The Court may also issue a writ of habeas corpus to cure "custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(3). Finally, because the facts pleaded show that the policy and practice at issue represents final agency action, Plaintiffs state a claim under the Administrative Procedure Act ("APA"). For these reasons, the Court should deny the motion to dismiss.

## II.    FACTS

### A.    Defendants' Policies and Practices of Extended Detention without Prompt Presentment to a Neutral Adjudicator or Judicial Review of Probable Cause.

Department of Homeland Security ("DHS") has a policy and practice of incarcerating individuals alleged to be removable for one to three months before

presenting them before a neutral adjudicator such as an immigration judge ("IJ"). ECF No. 1, ¶¶ 1, 5, 47-49; *see* ECF No. 28-2 (Defs. Resp'ts' Ex. Index) Exs. C, D, F, J, O, R. During that time, DHS does not obtain judicial review of whether detention is justified by probable cause. ECF No. 1 ¶¶ 1, 63. Defendants place no special emphasis on first appearance or judicial review of confinement and make no effort to provide them promptly. *Id.* ¶¶ 6, 28, 62-76.

In this district, immigration detainees are held in one of two facilities maintained by Immigration and Customs Enforcement ("ICE") or one of several short-term facilities operated by Customs and Border Protection ("CBP"). *Id.* ¶¶ 59-60. During confinement of detainees in these remote, jail-like facilities, DHS does not set automatic custody review hearings before an IJ or inform detainees of their rights in their native language. *Id.* ¶¶ 29, 43, 50-60, 63. DHS does not file a charging document, called a Notice to Appear ("NTA"), with the immigration court for a significant period of time after detention, often for days or weeks after it is issued. *Id.* ¶¶ 47-48. When DHS does file it, it sets no date for first appearance, relying on Defendant EOIR to do it instead. *Id.* ¶ 64. The immigration court does not set first appearances any more promptly than other hearings. *Id.* ¶¶ 28, 65. As a result, detainees languish in detention for months before any neutral adjudicator advises them of their rights, explains the removal process, discusses how they can seek release on bond or expedite proceedings, or reviews the lawfulness of their detention.

**B.    Legal Framework for Civil Immigration Arrest, Continued Detention, and Removal Proceedings.**

A DHS agent may arrest a person on an administrative warrant, signed by a DHS official, 8 U.S.C. § 1226(a), 8 C.F.R. § 1236.1(b), or without a warrant if the individual "is entering or attempting to enter the United States" in violation of immigration law or the agent "has reason to believe" the individual is in violation of immigration law. 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d). As Defendants acknowledge, "reason to believe" means "probable cause." ECF No. 28-1 at 4:3-4.

DHS must take arrestees "without unnecessary delay" to be examined by another immigration officer, not a judge, "having authority to examine aliens as to their right to enter or remain in the United States," 8 U.S.C. § 1357(a)(2), who, absent emergencies, must make a decision "within 48 hours of the arrest" whether to keep the person in custody and issue an NTA for removal proceedings. 8 C.F.R. § 287.3(d).

With limited exceptions, removal proceedings are conducted by an IJ.[1] ECF No. 1 ¶ 21. Although the Immigration and Nationality Act ("INA") states only that a removal "hearing" will be held, Defendants have a policy and practice of providing one or more "master calendar hearings" ("MCHs"), as a "pre-trial docket," prior to the hearing on the merits. *Id.* ¶¶ 27, 32.

At the initial MCH, with an interpreter if necessary, the IJ advises individuals of their rights, explains the charges in plain language, and verifies proper service of the NTA, which may contain errors. *Id.* ¶¶ 29-30. The initial MCH also provides the first meaningful opportunity for a detainee to challenge DHS's custody authority or request a hearing to do so, and it results in the placement of unrepresented detainees on a list sent to organizations that provide pro bono representation. *Id.* ¶¶ 31, 33. Because it "may take more than one master calendar session to get a case ready," a series of MCHs may be held to narrow the issues, until one or more "merits" hearings are held to decide removability and any eligibility for relief from removal. *Id.* ¶ 27.

---

[1] Individuals arriving at a port of entry without valid documentation for admission, or who are apprehended within 14 days of entering the U.S. without being admitted or possessing valid documentation for admission, generally receive so-called "expedited removal" orders under 8 U.S.C. § 1225(b), for which Congress has authorized a hearing before an immigration judge in limited circumstances. ECF No. 1 ¶ 23. However, when such an individual expresses a fear of persecution if removed, as did Plaintiff Gonzalez, expedited removal is not permitted, and he or she is referred for a credible fear interview. *Id.* If DHS determines that there is a credible fear, the case is referred to an IJ through the filing of an NTA, at which point the case proceeds through ordinary removal proceedings. *Id.* In the case of a negative credible fear determination, the applicant may seek "prompt review by an immigration judge" of the determination, to be "concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days." 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

Congress does not require detention of anyone in removal proceedings except certain noncitizens who are seeking admission to the United States or have specified criminal or national security histories. 8 U.S.C. §§ 1225(b), 1226(c). Many detainees are eligible to seek a custody review or "bond" hearing, ECF No. 1 ¶ 31, which must be set "*as promptly as possible*" before the IJ as an "impartial arbiter." *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977) (emphasis in original). Even those ineligible for bond may ask for a hearing to challenge DHS's legal authority for detention. ECF No. 1 ¶ 31 (citing *In re Joseph*, 22 I. & N. Dec. 799, 800 (BIA 1999)). By failing to provide a prompt first hearing that notifies detainees of these rights, Defendants are significantly prolonging the detention of many individuals who qualify for release.

## C.  Plaintiffs' Experiences of Extended Detention Before Hearing Pursuant to Defendants' Policies and Practices.

Plaintiffs' experiences are typical of the extended detention without a prompt hearing or judicial review that results from Defendants' policies and practices.

### 1.  Jose Cancino Castellar

Jose Orlando Cancino Castellar is eligible for Deferred Action for Childhood Arrivals, a form of deferred action from removal that would allow him to remain in the United States if granted. ECF No. 1 ¶ 47. DHS detained him on February 17, 2017 and four days later decided to charge and detain him by issuing him an NTA and refusing to release him.[2] *Id.* He told DHS he wanted an IJ to review that decision, but neither a bond hearing nor an MCH was held by the time the Complaint was filed on March 9, 2017. *Id.*

According to Defendants, DHS filed the NTA with the immigration court seven days after he was taken into custody and three days after its issuance. ECF 28-2, Ex. A. The NTA did not set a date for his initial MCH. *Id.* Mr. Cancino Castellar eventually

---

[2] Defendants glibly assert Mr. Cancino Castellar was held "as a 'Room and Board'" during a holiday weekend. ECF No. 28-1, at 7 n.8. However, a holiday weekend is not an extraordinary circumstance, *U.S. v. Pimental*, 755 F.3d 1095, 1104 (9th Cir. 2014), and the harsh conditions of confinement belie the attempt to whitewash his detention, ECF No. 1 ¶¶ 50-60.

had his first appearance on March 23, 2017, 34 days after DHS took him into custody. *Id.* Ex. C. He had a bond hearing two business days later on March 27, 2017, where the IJ overruled DHS's custody determination and ordered him released on $3500 bond. *Id.* Ex. E. He was released the next day after 39 days of custody, though a mere 5 days after his first appearance. *Id.*

### 2. Ana Maria Hernandez Aguas

Ana Maria Hernandez Aguas is a mother of two U.S. citizen children who was in DHS custody for 31 days without a first appearance or judicial review of probable cause when the Complaint was filed. ECF No. 1 ¶ 48. She is eligible for cancellation of removal, which would permit her to remain lawfully in the U.S. *Id.*; 8 U.S.C. § 1229b(b).

Ms. Hernandez Aguas was taken into DHS custody on February 7, 2017. *Id.*; ECF No. 28-2, Ex. F. DHS first detained her in a Border Patrol station in Chula Vista for five days, then transferred her to the San Luis Regional Detention and Support Center in San Luis, Arizona for another three days, and eventually sent her to the Otay Detention Facility in Otay Mesa, California on February 15, 2017. ECF No. 1 ¶ 48. At the time the Complaint was filed, she had not yet been provided with copies of any NTA, administrative warrant, or documents indicating DHS's custody determination, and no date had yet been scheduled for her first appearance. *Id.* Her immigration attorney scheduled a bond hearing for March 13, 2017, the earliest date the immigration court would provide. *Id.*

According to Defendants, the government issued an NTA for Ms. Hernandez Aguas on February 7, 2017, but did not file it with the immigration court until 14 days later. ECF No. 28-2, Ex. I. The NTA did not set a date for her initial MCH. *Id.* At her custody review hearing, the IJ overruled DHS's determination that she must remain in custody and ordered her released on $2500 bond. *Id.* Ex. L. She was released the next day, after 35 days of confinement, though just one day after her first appearance. *Id.* Ex. M. She still has not had her first MCH. *Id.* Ex. J.

### 3.    Michael Gonzalez

Michael Gonzalez claims U.S. citizenship, which DHS disputes. ECF No. 1 ¶ 49. At the time the Complaint was filed, he had been in DHS custody for 113 days without a first appearance or judicial review of probable cause. *Id.* On November 17, 2016, he presented himself at the San Ysidro Port of Entry and expressed a fear of persecution in Mexico. *Id.* On November 18, 2016, DHS issued him a "determination of inadmissibility" that commenced expedited removal proceedings. ECF No. 28-2, Ex. N. DHS detained him in an unknown location for several days until he was transferred to the Otay Detention Facility on November 23, 2016, where he remains. ECF No. 1 ¶ 49. On December 16, 2016, 29 days after he was detained, DHS interviewed him and determined he had a credible fear of persecution, signifying he had a significant chance of prevailing on his asylum claim. *Id.* DHS did not transfer his case to ordinary removal proceedings through an NTA until 20 days later, 49 days after he was taken into custody. *Id.* On January 30, 2017, his first MCH was scheduled for April 5, 2017. *Id.*

According to the government, the NTA was filed with the immigration court on January 19, 2017, two weeks after it was issued.[3] ECF No. 28-2, Ex. O. Mr. Gonzalez's April 5, 2017 MCH was changed to March 14, 2017. He was detained for 117 days before his first appearance and remains in detention. ECF No. 28-2, Ex. U.

### III.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) may be based on the complaint or extrinsic evidence. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Although the government submitted extrinsic evidence, the Court need not resolve any disputed facts and should therefore treat the motion as a facial attack, taking the facts pleaded as true. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).

---

[3] DHS never issued or "revoked" an "order of expedited removal" against Mr. Gonzalez, ECF No. 28-1 at 9:16. DHS only provided Mr. Gonzalez with a "determination of inadmissibility," but the portion of the form issuing an expedited "order of removal" is not filled out, ECF No. 28-2, Ex. N, nor could it be, since Mr. Gonzalez asked for asylum. 8 U.S.C. § 1225(b)(1)(A)(i).

In deciding a motion to dismiss under Rule 12(b)(6), the court takes the facts pleaded as true, along with matters subject to judicial notice, drawing all inferences in the light most favorable to the plaintiff to determine if the complaint states a plausible claim. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1058 (9th Cir. 2012); *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). If alternative explanations are plausible, the court may not dismiss the complaint. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Leave to amend must be granted unless amendment is futile. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

## IV.    ARGUMENT

The Court should deny the motion to dismiss. First, the Court has jurisdiction to decide the legality of extended detention without a hearing or judicial review. The jurisdictional statutes cited by Defendants do not bar this case because it challenges matters independent of the commencement or resolution of removal proceedings. Second, Plaintiffs state claims that the challenged detention violates both the Constitution and relevant statutes. Defendants cannot plausibly justify extended detention without a hearing or judicial review and instead misrepresent Plaintiffs' position. Plaintiffs do not mount a facial attack on any part of the INA or necessarily seek presentment or judicial review within 48 hours of arrest. Instead, they seek only "prompt judicial presentment" and "prompt judicial determination of whether probable cause justifies detention." ECF No. 1 ¶¶ 78, 82. Regardless of whether the standard of promptness in immigration detention requires presentment or judicial review within 48 hours of arrest, a delay of one to three months is not prompt under any reasonable standard. Properly construed, the detention statutes do not allow such prolonged delays. Plaintiffs therefore state claims for both constitutional and statutory violations that justify relief under the Court's equitable power, the habeas statute, and the Administrative Procedure Act.

**A.    The Court Has Jurisdiction Over Plaintiffs' Claims, Which Do Not Implicate any Case-by-Case Decisions and Remain Independent of Removal Proceedings Themselves.**

As interpreted in binding precedent, the relevant statutes do not deprive the Court of jurisdiction to decide that Defendants have an unlawful policy and practice of detaining individuals for an extended time without a prompt hearing or judicial review. Nothing cited by Defendants deprives the Court of power to decide the merits or overcomes the "the strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr,* 533 U.S. 289, 298 (2001)

**1.    This Case Does Not Implicate Discretionary Case-by-Case Decisions, and Therefore 8 U.S.C. § 1252(g) Does Not Deprive This Court of Jurisdiction.**

This case does not fall within the statute stripping jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders …." 8 U.S.C. § 1252(g). That statute "applies only to three discrete actions" not at issue here: the "discretionary determinations" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 482, 485 (emphasis in original); *see also Barahona-Gomez v. Reno*, 236 F.3d 1115, 1121 (9th Cir. 2001) (section 1252(g) "applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings"). This case does not challenge any of those discretionary decisions. Instead, Plaintiffs challenge a class-wide policy and practice of extended post-arrest detention without prompt hearing or judicial review. That policy and practice impacts detainees only after DHS has already decided to commence proceedings, and it is independent of the adjudication of their immigration cases or ultimate execution of any removal orders.

When "narrowly construed" as it must be, *Kwai Fun Wong v. United States*, 373 F.3d 952, 964 (9th Cir. 2004), section 1252(g) does not cover a challenge to the extended detention at issue here, which is entirely separate from the discretionary decisions "to commence proceedings, adjudicate cases, or execute removal orders."

1  *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (section 1252(g) did not apply

2  where plaintiffs did not seek "judicial review of the merits of their INS proceedings,

3  but rather to enforce their constitutional rights to due process" by making "collateral

4  challenges to unconstitutional practices and policies"); *cf. Texas v. United States*, 809 F.3d

5  134, 164-65 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S. Ct. 2271 (2016) (section

6  1252(g) did not bar challenge to agency action "on a class-wide basis" that did not

7  involve "case-by-case decisions" to commence proceedings).

8      Plaintiffs do "not ask the district court to block a decision 'to commence

9  proceedings, adjudicate cases, or execute removal orders against any alien.'" *Parra v.*

10 *Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (quoting 8 U.S.C. § 1252(g)). Instead, their

11 "claim concerns detention while the administrative process lasts, and it may be resolved

12 without affecting pending proceedings. Section 1252(g) therefore does not foreclose

13 review." *Id.*; *see also Zhislin v. Reno*, 195 F.3d 810, 814 (6th Cir. 1999) (section 1252(g) did

14 not bar action that "challenge[d] neither the constitutionality of the deportation order

15 nor the right of the Attorney General to execute the order" but instead challenged "the

16 right of the Attorney General to detain [petitioner] indefinitely").

17     Defendants find no comfort in *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir.

18 2007). In that case, the plaintiff asserted a "damages claim for false arrest" due to the

19 initiation of expedited removal proceedings. *Id.* at 948-49. Section 1252(g) applied

20 because the plaintiff's "claim directly challenge[d] [defendant's] decision to commence

21 expedited removal proceedings." *Id.* at 950. In this action, by contrast, Plaintiffs are not

22 challenging the initial decision to charge and detain them for removal proceedings,

23 expedited or otherwise. Instead, Plaintiffs are challenging their treatment *after* DHS has

24 made the "initial determination" to charge and detain them.[4] ECF No. 28-1 at 4:13.

25

26 ───────────────

   [4] This case does not involve "challenges to expedited removal orders," ECF No. 28-1
27 at 15 n.12. The class does not include persons "with final removal orders," expedited or
   otherwise. ECF No. 1 ¶ 68. This challenges only extended detention without prompt
28 presentment or judicial review before a final order is entered. It is not barred by 8
   U.S.C. §§ 1252(e)(2), (e)(5) because Plaintiffs do not seek "review of whether [any] alien
   is actually inadmissible or entitled to any relief from removal."

1    The Court may rule on that challenge without calling into question the decision
2    to commence proceedings. Therefore, section 1252(g) does not bar this case. *Cf. Wong*,
3    373 F.3d at 964 (section 1252(g) did not bar action where plaintiff "disclaims any
4    challenge to the execution of the removal itself, but rather asserts that her claims
5    implicate only actions *other than* that removal, or the commencement of proceedings, if
6    any, leading to that removal") (emphasis in original); *Diaz-Bernal v. Myers*, 758 F. Supp.
7    2d 106, 125 (D. Conn. 2010) (section 1252(g) did not bar challenge to "conditions of
8    the plaintiffs' arrest and confinement, including their lack of access to counsel, their
9    lack of information about their rights, and their being coerced to sign documents that
10   they may not have understood," because those claims "do not deal with the defendants'
11   commencement of proceedings against the plaintiffs, the adjudication of their cases, or
12   the execution of their removal").

13   Defendants are wrong that after the decision to charge and detain has been
14   made, the policy and practice of extended detention without prompt hearing or judicial
15   review "cannot be divorced from the decision to commence proceedings." ECF No
16   28-1 at 16:14. Indeed, immigration court regulations recognize that decisions on
17   continued custody or bond "shall be separate and apart from, and shall form no part
18   of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d).

19   Defendants' other authority is similarly beside the point. In *Wang v. United States*,
20   No. CV 10-0389 SVW (RCX), 2010 WL 11463156 (C.D. Cal. Aug. 18, 2010), the
21   plaintiff sought damages for "false imprisonment" due to an allegedly improper
22   decision to charge him as "an 'arriving alien.'" *Id.* at *4. As a result, the plaintiff
23   necessarily challenged "the decision to initiate removal proceedings against him," and
24   the case was barred by section 1252(g). *Id.* at *6. In *MacDonald v. United States*, No. 11-
25   CV-1088-IEG BLM, 2011 WL 6783327 (S.D. Cal. Dec. 23, 2011), the court lacked
26   jurisdiction over the claim that plaintiff was initially "arrested and incarcerated on a
27   legally invalid basis," because that claim "challenges the very decision to commence the
28   removal proceedings" against him. *Id.* at *6. Here, by contrast, Plaintiffs challenge not

the initial decision to charge and detain them but rather the government's treatment of them following that decision. Indeed, *MacDonald* supports Plaintiffs' position. 2011 WL 6783327, at *5 (noting "§ 1252(g) does not bar judicial review of decisions or actions that occur during the formal adjudicatory process or of due process violations that occur before and during the removal proceedings") (citation omitted).

In addition, Plaintiffs seek a writ of habeas corpus, among other remedies, and section 1252(g) does "not strip the district court of jurisdiction over [Plaintiffs'] habeas petition." *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999); *see also Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003) (section 1252(g) does not "extend to the habeas power of federal courts, in order to avoid the constitutional issue of whether or not such a limitation would violate the Suspension Clause of the Constitution"); *Duong v. I.N.S.*, 118 F. Supp. 2d 1059, 1062 (S.D. Cal. 2000) (section 1252(g) "does not prevent the Court from exercising jurisdiction over the Petitioner's constitutional claims").

### 2. This Case Pleads Claims Collateral to Removal Proceedings, and Therefore 8 U.S.C. §§ 1252(a)(5) and (b)(9) Do Not Deprive This Court of Jurisdiction.

The other statutes cited by Defendants likewise do not deprive this Court of jurisdiction. Plaintiffs seek only a judgment against extended detention without prompt hearing or judicial review. That judgment would neither require "judicial review of an order of removal" nor "aris[e] from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. §§ 1252(a)(5), (b)(9). These statutes "channel judicial review over final orders of removal to the courts of appeals," but they do not apply to "claims that are independent of or collateral to the removal process." *J.E.F.M.*, 837 F.3d at 1032; *see also Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) ("The statute, by its plain language, applies only to 'judicial review of an order of removal' and does not eliminate the ability of a court to review claims that are 'independent of' challenges to removal orders.'"); *Aguilar v. ICE*, 510 F.3d 1, 10 (1st Cir. 2007) (section 1252(b)(9) does not "swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien").

1    Plaintiffs challenge their extended post-arrest detention without prompt hearing

2    or judicial review. That claim is independent of the removal process because it is

3    "collateral to their substantive eligibility for relief." *J.E.F.M.*, 837 F.3d at 1032.

4    Accordingly, this Court retains jurisdiction to decide the merits. As Defendants

5    acknowledge, section 1252(b)(9) does not apply to detention challenges because they

6    are "collateral to the removal process." ECF No. 28-1 at 12 n.10 (citing *Nadarajah v.*

7    *Gonzales*, 443 F.3d 1069, 1075 (9th Cir. 2006)). Because detention claims "are

8    independent of removal proceedings," it is clear that "district courts retain jurisdiction

9    over challenges to the legality of detention" such as the claims in this case. *Aguilar*, 510

10   F.3d at 11. If courts retain jurisdiction over "constitutional challenges regarding the

11   availability of bail" for immigration detainees, *id.*, then this Court has jurisdiction over

12   Plaintiffs' challenge to extended detention without a prompt hearing or judicial review.

13   In both cases, the "substance of the relief" Plaintiffs seek does not directly or

14   "indirectly challenge a removal order." *Martinez*, 704 F.3d at 622.

15   Furthermore, section 1252(b)(9) does not bar claims that cannot be meaningfully

16   heard in the administrative process. Defendants are wrong that "Plaintiffs may raise

17   their claim … before an immigration judge, and again to the BIA, and ultimately … the

18   Ninth Circuit." ECF No. 13:16-20. Removal "proceedings are confined to determining

19   whether a particular alien should be deported. While legal and factual issues relating to

20   that question can be raised in removal proceedings and eventually brought to the court

21   of appeals for judicial review, certain claims, by reason of the nature of the right

22   asserted, cannot be raised efficaciously within the administrative proceedings delineated

23   in the INA." *Aguilar*, 510 F.3d at 11. That is the case here. Even if a request for custody

24   review is successful, which can take weeks, ECF No. 1 ¶ 48, it cannot cure the harm

25   caused by the government's failure to ensure a prompt hearing or judicial review of

26   probable cause before that time. Those issues would then become moot on entry of a

27   removal order and could not be subject to "judicial review of a final order" on "petition

28   for review." 8 U.S.C. § 1252(a)(5), (b)(9); *cf. Flanagan v. United States*, 465 U.S. 259, 266

1    (1984) (noting that "[a]n order denying a motion to reduce bail … becomes moot if

2    review awaits conviction and sentence"); *United States v. Weissberger*, 951 F.2d 392, 396

3    (D.C. Cir. 1991) ("[a]n order requiring pretrial detention … becomes moot upon

4    conviction and sentence"). To require Plaintiffs to exhaust the administrative process

5    "would foreclose them from any meaningful judicial review" of the claims in this case.

6    *Aguilar*, 510 F.3d at 11. Where a plaintiff "would have had no legal avenue to obtain

7    judicial review" of his claims, section 1252(b)(9) does not bar those claims. *J.E.F.M.*,

8    837 F.3d at 1032.

9          Although some of the benefits of a prompt hearing may be relevant to the

10   merits, as discussed below, a challenge to the denial of a prompt hearing is not "part

11   and parcel of the removal proceeding itself." ECF No. 28-1 at 13:2 (quoting *Aguilar*,

12   510 F.3d at 13). In *Aguilar*, the court found that "right-to-counsel" claims are not

13   "sufficiently separate from removal proceedings to be considered either 'independent'

14   or 'collateral,'" because "such claims are often featured in petitions for judicial review

15   of removal orders." 510 F.3d at 13. Here, by contrast, the detention claims are

16   collateral to removal and cannot be raised in a petition for review of a removal order.

17   To decide those claims in this action would not result in "fragmented litigation," *id.*,

18   because nothing in this case requires the Court to review the decision of an

19   immigration judge in any individual case. Instead, this case asks the Court only to

20   require that Defendants bring detainees promptly before immigration judges and

21   ensure prompt judicial review of detention. Those issues are entirely collateral to the

22   merits of removal proceedings, and this Court therefore has jurisdiction.

23    **B.    Plaintiffs State Constitutional and Statutory Claims Against**
24         **Extended Detention of One to Three Months Without a Prompt**
          **Hearing or Judicial Review.**

25          On the merits, Plaintiffs state claims that extended detention without a prompt

26   hearing or judicial review of probable cause violates the Constitution and relevant

27   statutes. The Due Process Clause of the Fifth Amendment prohibits civil or criminal

28   detention of any individual without a prompt hearing before a neutral adjudicator.

1  After an arrest, the Fourth Amendment requires prompt review by a neutral

2  adjudicator of the basis for the arrest. Properly construed, the INA incorporates both

3  of those requirements, and Defendants are engaging in unlawful agency action under

4  the APA. The Court should therefore deny the motion to dismiss.

5        **1.  To Detain Allegedly Removable Individuals for Over a Month Without a Hearing Violates Procedural and Substantive Due**

6               **Process.**

7       In the United States, "liberty is the norm, and detention prior to trial or without

8  trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987).

9  The Supreme Court "repeatedly has recognized that civil commitment for any purpose

10  constitutes a significant deprivation of liberty that requires due process protection."

11  *Addington v. Texas*, 441 U.S. 418, 425 (1979). For immigration detainees as with other

12  civil detainees, "[f]reedom from imprisonment—from government custody, detention,

13  or other forms of physical restraint—lies at the heart of the liberty" protected by the

14  Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). While immigration

15  authorities may subject non-citizens to removal hearings and "restrain them of their

16  liberties for enforced deportation after hearing, detention for long and unreasonable

17  periods before hearing is illegal." *Carlson v. Landon*, 186 F.2d 183, 186 (9th Cir. 1950).

18       Accordingly, immigration detention is contingent on a prompt judicial hearing,

19  as with other forms of detention, criminal or civil. *Salerno*, 481 U.S. at 747 (mandatory

20  pretrial detention legal if prompt adversarial detention hearing is provided); *Schall v.*

21  *Martin*, 467 U.S. 253, 269-70 (1984) (civil detention of juveniles pending delinquency

22  proceedings requires prompt presentment and probable cause hearing). The failure to

23  provide such a hearing violates both procedural and substantive due process.

24        **a.  Defendants' Practices Violate Procedural Due Process.**

25       The Due Process Clause guarantees essential "procedural safeguards" against

26  arbitrary deprivation of liberty. *McNabb v. United States*, 318 U.S. 332, 347 (1943).

27  Because "freedom from incarceration is a vital liberty interest … the state may not

28  incarcerate any individual randomly and without specific protective procedures." *Oviatt*

1  *v. Pearce*, 954 F.2d 1470, 1476 (9th Cir. 1992). Accordingly, "due process requires

2  adequate procedural protections to ensure that the government's asserted justification

3  for physical confinement outweighs the individual's constitutionally protected interest

4  in avoiding physical restraint." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065 (9th Cir.

5  2008).

6       "At a minimum, due process requires notice and a hearing where the individual

7  has a meaningful opportunity to confront the evidence against him." *Brady v. Gebbie*,

8  859 F.2d 1543, 1554 (9th Cir. 1988). Ordinarily, "an adversary hearing is not required"

9  before an arrest. *Baker v. McCollan*, 443 U.S. 137, 143 (1979). However, a "prompt post-

10  deprivation hearing" is required "at which some showing of the probable validity of the

11  deprivation must be made." *Comm'r of Internal Revenue v. Shapiro*, 424 U.S. 614, 629

12  (1976). The procedural due process analysis involve "three distinct factors: First, the

13  private interest that will be affected by the official action; second, the risk of an

14  erroneous deprivation of such interest through the procedures used, and the probable

15  value, if any, of additional or substitute procedural safeguards; and finally, the

16  Government's interest, including the function involved and the fiscal and

17  administrative burdens that the additional or substitute procedural requirement would

18  entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Oviatt*, 954 F.2d at 1475-76

19  (applying *Mathews* to determine 114-day delay in detainee's first appearance violated due

20  process). Under that framework, detention of one to three months without a hearing

21  violates due process because (1) the individual's interest in freedom from restraint is

22  paramount; (2) the risk of erroneous detention is significant when an initial appearance

23  is not promptly provided, and a prompt hearing would significantly reduce that risk;

24  and (3) the government has no legitimate interest in delaying first appearance, and any

25  burdens in ensuring a prompt appearance would be minimal and insufficient to defeat

26  the right to a prompt hearing.

27

28

*First Mathews Factor: Individual Interest in Liberty*

The individual's paramount interest in liberty demands a prompt hearing after arrest. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Courts require prompt hearings for less severe deprivations of liberty. *See, e.g., N. Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 607 (1975) (garnishment statute violated due process without any "provision for an early hearing"); *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002) (prompt hearing required after impoundment of motor vehicle); *Campbell v. Burt*, 141 F.3d 927, 929 (9th Cir. 1998) (due process "guarantees prompt post-deprivation judicial review in child custody cases").

"Promptness is the touchstone" of due process "analysis into the timeliness of post-deprivation review." *Jordan v. Jackson*, 15 F.3d 333, 349 (4th Cir. 1994). In the context of removal from parental custody, a deprivation of liberty "less comprehensive in scope than that resulting from an arrest," a delay of 65 hours before an initial hearing "is near, if not at, the outer limit of permissible delay between a child's removal from his home and judicial review." *Id.* at 350-51 (emphasis added). By necessity, therefore, Defendants violated due process in detaining Plaintiffs for one to three months or more without providing them any hearing. Depending on the facts developed in discovery, perhaps a hearing is not always required within 48 hours of arrest. *Cf. id.* at 350 (delay of hearing beyond 48 hours of child's removal from home was "constitutionally permitted as a consequence of the differences between the criminal processes and the civil removal processes"). But a delay of one to three months cannot be prompt under any standard.

Defendants find no support in *Reno v. Flores*, 507 U.S. 292 (1993). That case involved children taken into the government's care when "unaccompanied by a parent, guardian, or other related adult." *Id.* at 295. The government was required to "assure itself that someone will care for those minors pending resolution of their deportation proceedings" when "the parents or guardians of that child are nonexistent or

unavailable." *Id.* at 295, 304. If not immediately placed with a parent, guardian, relative, or other accepted caregiver, the children were cared for in "facilities that meet state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children." *Id.* at 298. Observing that "juveniles, unlike adults, are always in some form of custody," the Court noted "'[l]egal custody' rather than 'detention' more accurately describes the reality of the arrangement." *Id.* at 298, 302. On those facts, the Court rejected a "facial challenge" to rules that did not require automatic custody hearings, noting that most juveniles "will have been in telephone contact with a responsible adult outside the INS—sometimes a legal services attorney," and declined to assume "an excessive delay will invariably ensue—particularly since there is no evidence of such delay." *Id.* at 309. On that facial challenge, the Court held procedural "due process is satisfied by giving the detained alien juveniles the *right* to a hearing before an immigration judge." *Id.* (emphasis in original). Here, by contrast, Plaintiffs make an as-applied challenge to policies and practices denying a prompt hearing and plead abundant facts showing lack of access to counsel and excessive delay during confinement in prison-like conditions. In addition, the denial of a prompt first hearing in this case involves much more than denying review of "initial deportability and custody determinations." *Id.* at 308. To deny a prompt hearing deprives detainees of notice and advice of essential rights and impedes access to counsel. ECF No. 1 ¶¶ 3, 27-34. As a result, *Flores* does not preclude this case.

### *Second Mathews Factor: Risk of Error and Value of Additional Safeguards*

The second factor "has two components: the risk that the procedures used will erroneously deprive plaintiff of his liberty interest, and the value of additional or alternate procedural safeguards." *Oviatt*, 954 F. 2d at 1476. Here, there is a significant risk of erroneous deprivation of physical liberty, because detainees who have legitimate claims to release are not given a hearing to assert them for one to three months. The risk of error is further magnified by language barriers, lack of sophistication regarding complex immigration laws, and lack of notice of the specific procedures for seeking a

bond hearing. *See Rodriguez v. Robbins,* 804 F.3d 1060, 1085 (9th Cir. 2015), *cert. granted,* 136 S. Ct. 2489 (2016) ("*Rodriguez III*") ("Detainees, who typically have no choice but to proceed *pro se,* have limited access to legal resources, often lack English-language proficiency, and are sometimes illiterate. As a result, many class members are not aware of their right to a bond hearing and are poorly equipped to request one."); *cf. Oviatt*, 954 F.2d at 1476 (where "inmates were mentally impaired" or "did not speak English and were unlikely to know of their legal rights" or "were not in contact with their families or lawyers," [t]he risk of an erroneous deprivation of plaintiff's liberty interest was enormous").

On the other hand, the value of a prompt first appearance is unquestionable. The common law has long recognized the paramount importance of prompt judicial presentment as a check on abuse of power. *Corley v. U.S.*, 556 U.S. 303, 309 (2009). It is not "just some administrative nicety," but is "one of the most important" protections "against unlawful arrest." *Id.* at 320. The same is true in immigration cases. An initial hearing is the first time the IJ will review the NTA to make sure it was properly served, contains no defects, and names the correct respondent; the first meaningful time many detainees will be able to challenge the government's detention authority or request a more robust custody review hearing if one has not been provided; the first time detainees will have a neutral adjudicator explain their rights, including their right to counsel and to see the evidence against them, with the help of a translator if needed and in plain language; the first time a neutral adjudicator will determine whether the detainees have properly received a list of available free legal service providers; and the first time a neutral adjudicator will observe detainees' mental health and capacity to represent themselves. ECF No. 1 ¶¶ 3, 27-34. Without these minimal safeguards, there is a significant risk of erroneous detention.

In asserting there is no evidence that prompt presentment to an IJ "would meaningfully reduce the risk of erroneous detention," ECF No. 28-1 at 21:7-9, Defendants ignore the cardinal rule that the complaint must be taken as true and

construed in Plaintiffs' favor. Defendants also ignore their own evidence regarding Mr. Cancino Castellar and Ms. Hernandez Aguas. Both spent over 30 days in custody prior to first appearance, based solely on DHS's unilateral decision to deny release on bond. ECF No. 28-2, Exs. D, G. Then, within days of their first hearing, they were released by judges who disagreed and set low bond amounts. In any event, due process does not excuse the failure to provide a prompt first appearance even for individuals presumptively ineligible for release, due to the paramount interest in personal liberty.

Defendants ignore the importance of a neutral decision-maker, a core element of "adjudicative proceedings" in "both civil and criminal cases" that the Supreme Court has "jealously guarded" to prevent "unjustified or mistaken deprivations" of liberty based on "an erroneous or distorted conception of the facts or the law." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The decision of immigration enforcement officers to arrest and detain cannot substitute for a prompt neutral hearing. *Armentero v. I.N.S.*, 412 F.3d 1088, 1088 (9th Cir. 2005) (Ferguson, J., concurring) ("Administrative agents cannot be vested with the authority to render decisions concerning the length of detention. Such decision-making power rests in the hands of a judicial officer."); *Krimstock*, 306 F.3d at 53 ("warrantless arrest by itself does not constitute an adequate, neutral 'procedure' for testing the City's justification for continued and often lengthy detention of a vehicle" pending forfeiture proceedings). If a hearing is required "at an early point after seizure" of a vehicle "in order to minimize any arbitrary or mistaken encroachment upon plaintiffs' use and possession of their property," *Krimstock*, 306 F.3d at 53, then an early hearing is necessarily required to justify deprivation of liberty in immigration proceedings.

Although detainees in theory can request a custody review hearing before initial presentment, they often lack knowledge of that right. *Rodriguez III*, 804 F.3d at 1085 (immigration detainees are generally "not aware of their right to a bond hearing and are poorly equipped to request one") In any event, the Due Process Clause does not allow the government to shift the burden of requesting a hearing to persons deprived of

liberty. *Oviatt*, 954 F.2d at 1476 (in delayed presentment case, "[t]he risk of an erroneous deprivation of plaintiff's liberty interest was enormous" where "[t]he only check on clerical errors" before initial hearing "is protestation by the prisoner, his family, or his lawyer"); *Doe v. Gallinot*, 657 F.2d 1017, 1023 (9th Cir. 1981) (civil commitment decisions "were highly error-prone, especially where review of those decisions depended on the initiative and competence of the persons committed"). To condition the right to a prompt hearing "on the request of the individual reverses the usual due process analysis in cases where potential deprivation is severe and the risk of error is great." *Doe v. Gallinot*, 486 F. Supp. 983, 993 (C.D. Cal. 1979), *aff'd*, 657 F.2d 1017 (9th Cir. 1981). "It is inconceivable that a person could be arrested on criminal charges and held for up to 17 days without a hearing unless he requested it." *Id.* The same is true for immigration detention. "Even in civil cases where the deprivation is of property rather than liberty, the State must initiate the hearing and justify the deprivation." *Id.* Therefore, Defendants must bear the burden to provide a prompt initial hearing. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (striking down statute that "allows a post-seizure hearing if the aggrieved party shoulders the burden of initiating one").

Astonishingly, Defendants contend that prompt presentment may harm detainees for want of time to "obtain an attorney or collect documentation and evidence" for a custody review hearing, implying that IJs will force detainees to proceed when they are not prepared. ECF No. 28-1 at 21:9-14. The Complaint contains no facts supporting that speculation, which is sufficient to reject it. In any event, it is implausible to assert that IJs with the obligation to assist *pro se* litigants will force unprepared detainees to proceed. *See Agmeyan v. I.N.S.*, 296 F.3d 871, 883-84 (9th Cir. 2002). If the concern is access to counsel, it makes no sense to delay an initial hearing that facilitates access to counsel. ECF No. 1 ¶¶ 3, 29, 33, 34. In any event, Plaintiffs do not ask this Court to require that the first appearance necessarily be a custody review

1 hearing. Plaintiffs simply seek a prompt first hearing, at which detainees may request

2 custody review either immediately or later. ECF No. 1 ¶ 8.

3         _Third Matthews Factor: The Government's Interests_

4         The government has no legitimate justification for delaying a first appearance for

5 one to three months. Assuming facts not pleaded, Defendants speculate that to

6 guarantee a prompt initial hearing will "take time away from immigration judges' ability

7 to provide prompt hearings" for other detainees seeking subsequent MCHs or merits

8 hearings. ECF No. 28-1 at 22:18-22. At best, Defendants assert disputed facts that

9 cannot be considered on a motion to dismiss. In any event, even if requiring prompt

10 presentment might result in a brief "catch-up" period, it would have no lasting impact

11 once the docket normalizes. _See Armstrong v. Squadrito_, 152 F.3d 564, 572 (7th Cir. 1998)

12 ("[W]hen a state provides for a first appearance, it would place a small burden on the

13 state to ensure the timeliness of that appearance.").

14         Reading the Complaint in Plaintiffs' favor, the Court must find the asserted

15 interest in delay is insubstantial on the facts pleaded, especially when compared to the

16 overwhelming interest in liberty from detention. _Gallinot_, 657 F.2d at 1024 ("We do not

17 believe that the [government's] speculations … suffice to demonstrate an

18 administrative burden substantial enough to outweigh the interests served by a

19 mandatory hearing.").

20         As the Ninth Circuit has held, "'administrative convenience' is a thoroughly

21 inadequate basis for the deprivation of core constitutional rights." _Lopez-Valenzuela v._

22 _Arpaio_, 770 F.3d 772, 785 (9th Cir. 2014). Although it may impose "some costs in time,

23 effort, and expense" to ensure prompt hearings, "these rather ordinary costs cannot

24 outweigh the constitutional right" to due process. _Fuentes_, 407 U.S. at 92 n.22. Any

25 "additional expense" of prompt hearings "does not justify denying a hearing meeting

26 the ordinary standards of due process." _Goldberg v. Kelly_, 397 U.S. 254, 261 (1970).

27         Even if there might be some impact on the immigration court's workload, it is a

28 problem of Defendants' own making, since they largely control the number of people

they choose to detain. As Defendants acknowledge, release or parole is permitted by statute for many detainees. ECF No. 28-1 at 5:7 & n.5 (citing 8 U.S.C. §§ 1182(b)(5), 1226(a)). As DHS itself has found, there are abundant alternatives to detention at significantly less expense.[5] While perhaps occasional delays might be permissible due to unforeseeable exigent circumstances, the Court should not tolerate chronic, systemic delays. *See United States v. Minero-Rojas*, No. 11CR3253-BTM, 2011 WL 5295220, at *7 (S.D. Cal. Nov. 3, 2011) (first appearances may not be "systematically delayed" because of "process that no longer is effective to protect" detainees' rights). Plaintiffs therefore state a claim that their delayed presentment violates procedural due process.

### b.    Detention for Over a Month Without a Hearing Violates Substantive Due Process.

Due process includes "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided." *Flores*, 507 U.S. at 302. Substantive due process prohibits extended detention without prompt appearance before a judge. *Hayes v. Faulkner County*, 388 F.3d 669, 673 (8th Cir. 2004). A prompt first appearance "serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent." *Coleman v. Frantz*, 754 F.2d 719, 724 (7th Cir. 1985). An extended detention without judicial presentment "substantially impinges upon and threatens" all of those specific rights. *Id.*; *see also Lopez-Valenzuela*, 770 F.3d at 777-80 (summarizing law of substantive due process as applied to pretrial detainees). "The first appearance has such great value in protecting numerous rights that its denial presumptively disrupts those rights. Therefore, as a matter of constitutional

---

[5] DHS Office of Inspector General, OIG-15-22 *U.S. Immigration and Customs Enforcement's Alternatives to Detention (Revised)* at 4 (Feb. 4, 2015) (concluding alternatives to detention are effective and estimating costs of electronic monitoring to be roughly $13/day per participant), https://www.oig.dhs.gov/assets/Mgmt/2015/OIG_15-22_Feb15.pdf; DHS Office of Inspector General, OIG-14-116 (Revised), *ICE's Release of Immigration Detainees* at 7 (Aug. 2014)("ICE's budget assumes detention beds cost $122 a day on average.), https://www.oig.dhs.gov/assets/Mgmt/2014/OIG_14-116_Aug14.pdf.

1  prophylaxis, the denial of a first appearance offends the Due Process Clause."

2  *Armstrong*, 152 F.3d at 573. Accordingly, the right to prompt presentment after arrest is

3  fundamental, as further evidenced by its universal codification in federal and state law.

4  *Corley*, 556 U.S. at 306. Such unanimity confirms that the denial of prompt first

5  appearance "offends some principle of justice so rooted in the traditions and

6  conscience of our people as to be ranked as fundamental." *Schall*, 467 U.S. at 268.

7        Defendants cannot avoid that principle by drawing an arbitrary distinction

8  between criminal and civil detention.[6] The right to a prompt hearing applies equally to

9  both, because detention equally impinges on the fundamental right to liberty no matter

10  the justification. In determining that substantive due process requires prompt

11  presentment after arrest under a civil "body attachment writ," the *Armstrong* court

12  noted the writ's "shared characteristics" with a criminal warrant. 152 F.3d at 574.

13  Finding that both types of arrest result in similarly severe deprivations of liberty, the

14  court found a substantive due process right to prompt presentment in the civil

15  detention context, because the plaintiff "face[d] the same sort of ultimate sanction as if

16  he defended himself from a criminal charge—the loss of liberty." *Id* at 575. Thus,

17  whether in the civil or criminal context, "due process simply does not permit the state

18  to detain an arrestee indefinitely without procedural protections." *Id.* As with other

19  detainees, immigration detainees are "treated much like criminals serving time."

20  *Rodriguez III*, 804 F.3d at 1073. For these reasons, a substantive due process right to

21  prompt presentment exists in the immigration context.

22        Given that such a right exists, the question is whether delays of one to three

23  months violate that right. Courts have held that delays of similar or lesser duration

24  violated substantive due process. *Hayes,* 388 F.3d at 673 (38 days); *Armstrong*, 152 F.3d

25

26  _____

27  [6] Plaintiffs do not seek "the full trappings of legal protections" in criminal cases. ECF No. 28-1 at 22:27-23:2. They seek only a prompt hearing and judicial review of probable cause, not, for instance, the right to remain silent, the right to appointment of

28  counsel, or the right to jury trial, much less application of the Federal Rules of Evidence or Criminal Procedure.

at 567 (57 days); *Coleman*, 754 F.2d at 723-24 (18 days). While those cases depended on "deliberate indifference," *see, e.g., Armstrong*, 152 F.3d at 577, no such finding is required because the substantive due process rights of civil detainees in this Circuit do not depend on deliberate indifference. *Jones v. Blanas*, 393 F.3d 918, 933 (9th Cir. 2004). Instead, the Court need only balance the Plaintiffs' "liberty interests in freedom from incarceration" against "the legitimate interests of the state." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003). That balance favors Plaintiffs, because Defendants can assert no legitimate interest in delaying first judicial appearance for one to three months and sometimes longer.

Indeed, they can only defend their practice by misstating the law, contending that "the purpose of immigration detention is … to put an end to a continuing violation of the immigration laws." ECF No. 28-1 at 24:9-13 (citing *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)). The Supreme Court said no such thing in *Lopez-Mendoza* or anywhere else. Instead, the Court discussed "[t]he purpose of *deportation*." *Lopez-Mendoza*, 468 U.S. at 1039. By contrast, the purpose of immigration *detention* is to mitigate risk of flight or danger while proceedings are pending. *Demore v. Kim*, 538 U.S. 510, 528 (2003); *Zadvydas*, 533 U.S. at 679. To delay first judicial appearance for one to three months serves no legitimate interest, particularly when such an appearance provides the first meaningful opportunity to request a neutral determination, either immediately or promptly thereafter, whether detention is warranted.

Even if deliberate indifference is required, Plaintiffs state a claim. The facts pleaded allege that DHS makes a decision to detain without regard for when detainees may be presented for judicial appearance, leaving that responsibility entirely to a busy immigration court system to which it delegates the responsibility of setting a first hearing. ECF No. 1 ¶¶ 6, 62, 64. Those facts state a claim for deliberate indifference. *Hayes*, 388 F.3d at 674 ("Because the County's policy here attempts to delegate the responsibility of bringing detainees to court for a first appearance and ignores the jail's authority for long-term confinement, the policy is deliberately indifferent to detainees'

1  due process rights."); *Armstrong,* 152 F.3d at 577-78 ("[T]he jail did not consider itself

2  responsible for getting someone like Armstrong to the court. In other words, the jail's

3  policy was that once it placed a detainee's name on the will call list, the jail left the

4  matter in the hands of the court."). Such a choice represents "conscious disregard of

5  known or obvious dangers" or "a deliberate choice to avoid an obvious danger" and

6  constitutes deliberate indifference. *Armstrong,* 152 F.3d at 577.

7        As with procedural due process, *Reno v. Flores* does not preclude Plaintiffs'

8  substantive due process claim. On the facts of *Flores,* the Court found no substantive

9  due process right of an unaccompanied child "not to be placed in a decent and humane

10 custodial institution if there is available a responsible person unwilling to become the

11 child's legal guardian but willing to undertake temporary legal custody," because

12 maintaining "decent and humane" custody of children with "no available parent, close

13 relative, or legal guardian" was properly justified by the legitimate interest in

14 "preserving and promoting the welfare of the child." *Flores,* 507 U.S. at 303. That

15 holding cannot apply to extended detention of adults in prison-like settings without a

16 prompt hearing or judicial review, which is not justified by any legitimate interest.

17       Finally, the substantive due process right to prompt presentment of detainees is

18 not "novel." ECF No. 28-1 at 23:21-27. It descends from the common law and

19 expressly applies to civil detention. *Corley,* 556 U.S. at 306; *Armstrong,* 152 F.3d at 574.

20 Even if Plaintiffs' "claim does not fall within the four corners of our prior case law,"

21 that "does not justify dismissal under Rule 12(b)(6)," because such "dismissals are

22 especially disfavored in cases where the complaint sets forth a novel legal theory that

23 can best be assessed after factual development." *McGary v. City of Portland,* 386 F.3d

24 1259, 1270 (9th Cir. 2004). Accordingly, Plaintiffs state a substantive due process claim.

25       **2.    Detention Without Prompt Judicial Review of Probable Cause Violates The Fourth Amendment.**

26

27       The Fourth Amendment requires a finding of probable cause to justify arrest,

28 either through judicial warrant before arrest or judicial determination promptly after

arrest, either of which may be made "without an adversary hearing," though it can be combined with first appearance. *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975). Defendants violate that rule by detaining individuals without any review of probable cause by a neutral and detached magistrate, before or after arrest. ECF No. 1 at ¶ 4, 46. "The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates." *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 317 (1972); *see also Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971) (even if "authorized as a justice of the peace to issue warrants under then existing state law," Attorney General was not "neutral and detached magistrate," because "prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations"). Given the high stakes of "prolonged detention" after arrest, "the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty," and therefore "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114. That principle necessarily applies to immigration detention, like any form of civil detention. *See Schall*, 467 U.S. at 274-77 (citing *Gerstein* in assessing the constitutionality of pretrial detention in the civil juvenile delinquency context). If *Gerstein* did not apply in civil contexts, then *Schall* would have had no reason to rely on it.

The Supreme Court did not address much less decide that issue in *Abel*. As the Court declared, "[t]he claim that the administrative warrant by which petitioner was arrested was invalid" under the Fourth Amendment "is not entitled to our consideration" because "[i]t was not made below" and "indeed, it was expressly disavowed." *Abel*, 362 U.S. at 230. The Court discussed "historical evidence" only to support its conclusion that "petitioner's disavowal of the issue below calls for no further consideration." *Id.* at 234. Accordingly, *Abel* stands only for the proposition that

petitioner forfeited the question whether the administrative warrant for his arrest was valid, and it cannot bear the weight placed on it by the government.[7]

To say "[t]he Fourth Amendment was tailored explicitly for the criminal justice system," *Gerstein*, 420 U.S. at 125 n.27, does not mean it has no application to civil detention. As the Court said, "the key factor" requiring judicial review "is significant restraint on liberty." *Id.* at 125 n.26. Civil detention imposes just as "significant [a] restraint on liberty" as does criminal detention. It is not disputed that the Fourth Amendment requires probable cause to make an immigration arrest. ECF No. 28-1 at 4:3-4. Indeed, DHS's predecessor acknowledged it was "clearly bound" by judicial "interpretations" regarding "arrest and post-arrest procedures," including "those set forth in *Gerstein v. Pugh*, 420 U.S. 103 (1975)." INS, Final Rule-Making, "Enhancing the Enforcement Authority of Immigration Officers," 59 FR 42406-01, 42411 (1994). If so, there is no principled reason to contend the Fourth Amendment does not require prompt judicial review of probable cause after an immigration arrest.

The Ninth Circuit so held in *Rhoden v. U.S.*, 55 F.3d 428 (9th Cir. 1995). In that case, the court held that "the government's six-day detention" of an individual on immigration grounds "without a hearing must also be tested against constitutional limits," in particular the "Fourth Amendment protection against unlawful seizures." *Id.* at 432. Plaintiffs therefore state a claim that it violates the Fourth Amendment to detain them for one to three months without judicial review. *Cf. United States v. Tejada*, 255 F.3d 1, 4 (1st Cir. 2001) ("where the delay in bringing the alien before a magistrate is so unnecessarily long that it effects a constitutional deprivation, the alien may petition for habeas corpus relief").

The Fourth Amendment "requires a timely judicial determination of probable cause" that is made "promptly after arrest." *Gerstein*, 420 U.S. at 125-26. The fact that

---

[7] Even if *Abel* allows detention without judicial review of probable cause under the Fourth Amendment, it does not apply to the separate question whether the Due Process Clause requires prompt presentment to a neutral magistrate for other purposes, such as notice of charges, advice of rights, and opportunity to request a bond hearing.

1   Congress provided for administrative review of immigration arrests, 8 U.S.C. §

2   1357(a)(2), does not preclude this Court from enforcing the constitutional requirement

3   of judicial review. The courts, not Congress, ultimately interpret and enforce the

4   Fourth Amendment, and "no Act of Congress can authorize a violation of the

5   Constitution." *Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973). In criminal

6   cases, "the promptness requirement of *Gerstein*" ordinarily requires "judicial

7   determinations of probable cause within 48 hours of arrest." *McLaughlin*, 500 U.S. at 56.

8   In this case, there may be disputed facts whether immigration or "border detentions

9   involve a distinct set of considerations and require different administrative procedures"

10  such that the 48-hour rule does not apply "as a matter of law" at this stage. *Rhoden*, 55

11  F.3d at 432 n.7. However, Defendants are not at liberty to disregard the Fourth

12  Amendment and categorically substitute administrative review of probable cause for

13  that of a neutral and detached magistrate. Plaintiffs therefore state a claim under the

14  Fourth Amendment.

15          **3.    The "Entry Fiction" Does Not Deprive Arriving Noncitizens of Constitutional or Statutory Rights Against Extended**
16          **Detention Without Prompt Hearing or Judicial Review.**

17          When the government detains an individual alleged to be a noncitizen "who

18  arrives in the United States," 8 U.S.C. § 1225(a)(1), such as Plaintiff Gonzalez, that

19  individual retains the due process right to presentment and judicial review of probable

20  cause promptly after detention, which is independent of the question of "admission or

21  exclusion." ECF No. 28-1 at 18:17. As a result, the so-called "entry fiction" does not

22  prevent Plaintiffs from stating a claim as to noncitizens arriving in the United States.

23          The "Due Process Clause applies to all who have entered the United States—

24  legally or not," even those who have only "run some fifty yards into the United States."

25  *U.S. v. Raya-Vaca*, 771 F.3d 1195, 1203 (9th Cir. 2014). Under the "entry fiction," a

26  noncitizen "seeking admission" to the United States—such as an arriving asylum seeker

27  detained at a port of entry—"has not 'entered' the United States, even if the alien is in

28  fact physically present" in the country, detained or otherwise. *Wong*, 373 F.3d at 971.

The entry fiction pertains to "the narrow question of the scope of procedural rights available in the admissions process, and is not necessarily applicable with regard to other constitutional rights." *Id.* Therefore, it "is best seen … as a fairly narrow doctrine that primarily determines the *procedures* that the executive branch must follow before turning an immigrant away. Otherwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-persons." *Id.* at 973. It does not "deny all constitutional rights to non-admitted aliens" or affect rights that are collateral to and separate from the question of admissibility, such as the right to prompt presentment after detention. *Id.* at 971; *Cf. Rosales-Garcia v. Holland*, 322 F.3d 386, 412-14 (6th Cir. 2003) (holding that although "excludable aliens do not have a constitutional right to enter or be admitted to the United States … the indefinite detention of excludable aliens does raise constitutional concerns"); *Lynch v. Cannatella*, 810 F.2d 1363, 1373 (5th Cir.1987) (holding the entry fiction "determines the aliens' rights with regard to immigration and deportation proceedings," but "does not limit the right of excludable aliens detained within United States territory to humane treatment."). While perhaps Mr. Gonzalez's ultimate "right to enter the United States" on the merits of his asylum claim "depends on the congressional will," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 216 (1953), his right to a prompt hearing and judicial review of the justification for his detention does not.

This case does not concern "the validity of the procedures used to admit or exclude" an individual from the United States, and therefore, for purposes of this case, "an excludable alien is a 'person' for purposes of the Fifth Amendment," entitled to prompt presentment and judicial review of the basis for detention. *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 396 (3d Cir. 1999). The class excludes anyone "with final removal orders," ECF No. 1 ¶ 68, and does not involve anyone detained after having been "ordered excluded and deported" after hearings on the merits. *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1443 (9th Cir. 1995). Even aliens held as enemy combatants

1   outside the United States have a constitutional right to challenge the legality of their

2   detention. *Boumediene v. Bush*, 553 U.S. 723, 734 (2008). If so, Mr. Gonzalez may

3   challenge the legality of his detention without a prompt hearing or judicial review.

4        Even if the "entry fiction" does apply to the procedural due process right to

5   prompt presentment of Mr. Gonzalez and others like him, a proper construction of the

6   relevant statutes protects allegedly removable noncitizens, arriving and otherwise, from

7   extended detention of one to three months without a prompt hearing or judicial review

8   of probable cause. Generally, "an alien may be arrested and detained pending a decision

9   on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The

10  government "shall take into custody" noncitizens with certain criminal histories

11  pending removal proceedings. 8 U.S.C. § 1226(c). Arriving noncitizens who have "a

12  credible fear of persecution … shall be detained for further consideration of the

13  application for asylum," and in the case of "an applicant for admission, if the

14  examining immigration officer determines that an alien seeking admission is not clearly

15  and beyond a doubt entitled to be admitted, the alien shall be detained" for removal

16  proceedings. 8 U.S.C. § 1225(b)(1)(B)(ii), (b)(2)(A).

17       Although these statutes do not expressly require a prompt post-arrest hearing or

18  judicial review of probable cause, that does not end the matter. Without such a

19  requirement, the statutes "would raise a serious constitutional problem," *Zadvydas*, 533

20  U.S. at 690, because they apply to individuals not subject to the entry fiction. In

21  particular, the statute for detention of "arriving aliens," 8 U.S.C. § 1225(b), applies both

22  to persons who have never entered the United States and to persons who have

23  previously resided here and are therefore not subject to the "entry fiction." *Rodriguez v.*

24  *Robbins*, 715 F.3d 1127, 1141 (9th Cir. 2013). Accordingly, even if the "entry fiction"

25  deprives "arriving aliens" of the constitutional rights to a prompt post-arrest hearing

26  and judicial review of probable cause, the statute governing their detention must be

27  read to guarantee those rights, because "where one possible application of a statute

28  raises constitutional concerns, the statute as a whole should be construed through the

prism of constitutional avoidance." *Id.* (citing *Clark v. Martinez*, 543 U.S. 371, 380 (2005)); *see also Nadarajah*, 443 F.3d at 1078 (section 1225(b) cannot be read as "treating some detentions authorized by the same statute differently, depending on the identity and status of the detainee").

The Court must presume that a statute is not "intended to infringe constitutionally protected liberties." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988). When a statute "raises a serious doubt as to its constitutionality," the Court must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided," because an interpretation "that avoids invalidation best reflects congressional will." *Zadvydas*, 533 U.S. at 689. If one "construction of a statute would raise serious constitutional problems," and a fair alternative would not, courts "are obligated to construe the statute to avoid such problems." *St. Cyr*, 533 U.S. at 300.

This Court therefore has "the power to adopt narrowing constructions of federal legislation" and "the duty to avoid constitutional difficulties by doing so if such a construction is fairly possible." *Boos v. Barry*, 485 U.S. 312, 331 (1988). Here, such a construction is fairly possible, because the statutes give no "clear indication of congressional intent" to preclude prompt hearing or judicial review and thus do not foreclose interpretation to avoid unconstitutionality. *Zadvydas*, 533 U.S. at 697. When necessary, the Supreme Court has "read significant limitations into other immigration statutes in order to avoid their constitutional invalidation." *Id.* at 689 (reading "implicit limitation" into detention statute to confine "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States"). The Ninth Circuit has done the same. For example, where "prolonged detention without adequate procedural protections would raise serious constitutional concerns," the court construed section 1226(a) as requiring a bond hearing to avoid a "constitutionally doubtful" construction of the statute. *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 950-51 (9th Cir. 2008).

1    That principle applies here. Without the "adequate procedural protections" of

2    prompt post-arrest hearing and judicial review of probable cause, the detention statutes

3    "would raise serious constitutional concerns," which the Court can and must avoid by

4    reading those protections into the statutes. *Id.* at 950. If the Constitution can "require

5    the addition of an element or elements to the definition of a criminal offense in order

6    to narrow its scope," *Ring v. Arizona*, 536 U.S. 584, 606 (2002), it certainly requires the

7    more modest step of reading detention statutes to ensure a prompt post-arrest hearing

8    and judicial review of probable cause. *Cf. United States v. Shields*, 522 F. Supp. 2d 317,

9    336 (D. Mass. 2007) (construing civil commitment statute "to contain an implicit

10   requirement that an opportunity for a probable cause hearing before a neutral

11   decisionmaker be afforded within a reasonable period of time after any detention").

12   Congress did not require otherwise by stating that "[i]n order that an alien be

13   permitted the opportunity to secure counsel before the first hearing date in proceedings

14   under section 1229a of this title, the hearing date shall not be scheduled earlier than 10

15   days after the service of the notice to appear, unless the alien requests in writing an

16   earlier hearing date." 8 U.S.C. § 1229(b)(1). Properly construed to avoid constitutional

17   problems, the term "hearing" in that statute means the ultimate merits hearing on

18   removal, not the initial hearing. That is consistent with normal practice in immigration

19   courts. ECF No. 28-1 at 7:3-12 (distinguishing between "initial master calendar

20   hearing" and "separate hearing called a merits hearing … to determine any issues of

21   removability"); *Maringo v. Holder*, 364 F. App'x 903, 906 (5th Cir. 2010) (treating

22   "removal hearing" on the merits as "the first hearing date" under section 1229(b), as

23   opposed to an earlier "initial calendar hearing"). Given that the initial MCH exists in

24   part to facilitate access to pro bono counsel, ECF No. 1 ¶¶ 3, 29, 33, it would

25   "unreasonably impute to Congress … a Kafkaesque sense of humor about aliens'

26   rights" to construe the statute as requiring delay in scheduling the first MCH. *Dent v.*

27   *Holder*, 627 F.3d 365, 374 (9th Cir. 2010). Accordingly, the Complaint states a statutory

28   claim as to all Plaintiffs, including alleged arriving noncitizens such as Mr. Gonzalez.

### 4.    Plaintiffs State Claims for Equitable and Habeas Relief as well as Claims under the APA.

Because the policy and practice of extended detention without a prompt hearing or judicial review of probable cause violates the Constitution and applicable statutes, Plaintiffs state a claim for equitable relief or writ of habeas corpus. 5 U.S.C. § 702 (waiving sovereign immunity for "relief other than money damages"); 28 U.S.C. § 2241(c)(3) (authorizing writ for "custody in violation of the Constitution or laws or treaties of the United States"); *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (court may enjoin "violations of federal law by federal officials"); *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016) (discussing "equitable relief against the federal government"); *Magana-Pizano*, 200 F.3d at 609 (section 2241 "habeas review extends to both constitutional and statutory questions"). Plaintiffs also state a claim under the APA. By detaining individuals without a prompt hearing or judicial review of probable cause, DHS has engaged in final agency action subject to judicial review and injunction under the APA. 5 U.S.C. §§ 702, 704, 706.

### a.    The Detention of Plaintiffs Is Agency Action.

Under the APA, "agency action" includes a "sanction." 5 U.S.C. §§ 551(13), 701(b)(2). A "sanction" is any "prohibition, requirement, limitation, or other condition affecting the freedom of a person" or taking "restrictive action." 5 U.S.C. §§ 551(10), 701(2). The detention of Plaintiffs is a "sanction" because it "'affects' their freedom, as well as constitutes 'restrictive action.'" *Muniz-Muniz v. U.S. Border Patrol*, No. 3:09 CV 2865, 2012 WL 5197250, at *5 (N.D. Ohio Oct. 19, 2012), *rev'd on other grounds*, 741 F.3d 668 (6th Cir. 2013) ("restraining, interrogating, and arresting individuals" by DHS agents in Border Patrol is agency action).

### b.    The Detention of Plaintiffs Is Final Agency Action.

Plaintiffs state a claim that the policy and practice of detention without prompt hearing or judicial review of probable cause is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The finality inquiry is "pragmatic

and flexible." *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1027 (D.C. Cir. 2016) (internal citation and quotation omitted). Read favorably to Plaintiffs, the facts plead state a claim that Defendants have made a conscious decision to arrest and detain individuals without providing a prompt hearing or judicial review of probable cause. ECF No. 1 ¶¶ 1, 6, 63-67. Under the pragmatic definition of finality, that policy represents the "consummation of the agency's decision making process" from "which rights or obligations have been determined, or from which legal consequences flow." *Muniz-Muniz*, 2012 WL 5197250 at *5 (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). The policy "need not be in writing to be final and judicially reviewable." *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (unwritten ICE detention policy subject to APA review).

The "adequate remedy" provision does not "defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). It simply avoids "duplicating previously established special statutory procedures for review of agency actions." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993). While regulations may allow custody review in individual cases, they offer "no adequate remedy for the period of unlawful detention members of the class suffer *before* receiving this review—the central injury at issue in this case." *R.I.L-R.*, 80 F. Supp. 3d at 185. Additionally, the APA does not require individuals to exhaust optional procedures. *Darby*, 509 U.S. at 147. Finally, an administrative remedy is inadequate where "the relief would be individualized, not class wide" and the challenge focuses on illegal agency procedures rather than a decision to detain a particular individual. *Cohen v. United States*, 650 F.3d 717, 732 (D.C. Cir. 2011) (*en banc*).

          **c.**    **The Detention of Plaintiffs Is Unlawful Agency Action.**

Under the APA, the Court shall "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2). As explained above, Plaintiffs state a claim that their extended detention

1    without a prompt hearing or judicial review of probable cause violates the Constitution

2    and applicable statutes. Accordingly, Plaintiffs state a claim under the APA.

3    **V.    CONCLUSION**

4        For the foregoing reasons, the Court should deny the motion to dismiss.

5

6    Dated:  June 12, 2017                ACLU FOUNDATION OF SAN DIEGO

7                                        & IMPERIAL COUNTIES

8                                    By:  S/David Loy

9                                        DAVID LOY

10                                   Attorney for Plaintiff-Petitioners

11                                   Email: davidloy@aclusandiego.org

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 12, 2017 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ LR 5.4(d). Any other counsel of record will be served by U.S. mail or hand delivery.

S/David Loy
DAVID LOY