1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10
    JOSE ORLANDO CANCINO                    Case No. 17-cv-0491-BAS-BGS
11  CASTELLAR, *et al*.,
                                            **ORDER:**
12                      Plaintiff-Petitioners,
                                            **(1) GRANTING DEFENDANTS'**
13          v.                                  **MOTION TO DISMISS THE**
                                                **COMPLAINT UNDER RULE**
14  KIRSTJEN NIELSEN, Secretary,                **12(b)(1) FOR LACK OF**
    U.S. Department of Homeland                  **JURISDICTION [ECF No. 28]**
15  Security, *et al*.,
                                            **AND**
16                      Defendant-Respondents.
                                            **(2) TERMINATING AS MOOT**
17                                              **MOTION FOR CLASS**
                                                **CERTIFICATION [ECF No. 2]**
18
19
20

21         Plaintiffs Jose Orlando Cancino Castellar, Ana Maria Hernandez Aguas, and

22  Michael Gonzalez[1] are immigrants who were apprehended and taken into custody by

23  immigration officers.  (ECF No. 1.)  Like many immigrants in the Southern District

24  of California, they remained in custody for nearly one to three months before they

25  ever saw an immigration judge.  That first appearance before an immigration judge

26

27  _____
           [1] The Complaint and the parties use the terms "Plaintiff-Petitioners" and "Defendant-
28  Respondents."  (ECF Nos. 1, 28, 35, 37.)  For ease, the Court uses the terms "Plaintiffs"
    and "Defendants."

                                    – 1 –
                                                                              17cv491

is a crucial stage of removal proceedings for immigrants who the government seeks to remove from the United States. Immigration judges advise immigrants of important rights they have during the pendency of removal proceedings and of options immigrants may have to remain in the United States. The first appearance also provides an opportunity for an immigrant in custody to request that the immigration judge review custody decisions by immigration officers. In this case, Plaintiffs allege that the Defendants[2]—various national and local immigration officials overseeing immigration enforcement—have a policy and practice of unreasonably delaying an immigrant's first appearance before an immigration judge, and do not promptly seek judicial review of the justification to keep immigrants in custody pending removal. Plaintiffs claim that the one to three months they remain in custody is due to this policy, in violation of the Fourth and Fifth Amendments to the United States Constitution and the Administrative Procedure Act ("APA"). (*Id.*)

Defendants challenge this Court's jurisdiction over Plaintiffs' claims. This challenge is based on various provisions of the Immigration and Nationality Act ("INA") enacted by Congress in 1996 and 2005, which affect the jurisdiction of federal courts over and the scope of judicial review of claims raised by immigrants in removal proceedings. These provisions dictate what, when, and how certain claims can be raised as well as the particular court where an immigrant may raise his or her claims. Defendants argue that three jurisdictional provisions of the INA in particular—8 U.S.C. §§1252(a)(5) and (b)(9) as well as §1252(g)—deprive this Court of jurisdiction over Plaintiffs' claims. (ECF No. 28-1.) Defendants also seek dismissal of the Complaint on the ground that Plaintiffs have failed to state a plausible

---

[2] Defendants are: Kirstjen Nielsen, Secretary of the U.S. Department of Homeland Security ("DHS"); Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); Gregory Archambeault, Field Office Director for the San Diego Field Office of ICE; Jefferson B. Sessions III, Attorney General of the United States; and Juan P. Osuna, Director of the Executive Office for Immigration Review ("EOIR") (collectively, the "Defendants"). (ECF No. 1.)

legal claim that the Constitution requires "prompt" presentment to an immigration judge and review by that judge of the justification to keep immigrants in custody beyond 48 hours after their initial apprehension. (*Id*.)

For the reasons stated herein, the Court grants Defendants' motion to dismiss for lack of jurisdiction.

# I.     BACKGROUND

## A.     Statutory and Regulatory Background[3]

Congress, by statute, and DHS, by regulation, have configured the scheme by which immigrants subject to removal are initially apprehended, placed into the custody of immigration officers, and presented to an immigration judge. The Court briefly outlines aspects of these nascent stages of the removal process.

### 1.     Initial Arrest and Custody Pending Removal Hearing

Generally, apprehension of an alien may occur in one of two ways. A DHS agent may arrest a person alleged to be an alien under an administrative warrant signed by another DHS official. *See* 8 U.S.C. §1226(a); 8 C.F.R. §1236.1. Under Section 1357 of the INA, immigration officers may arrest without a warrant "[a]ny alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. §1357(a)(2).

After apprehension, immigration officers make determinations about whether to place an alien in removal proceedings and whether to maintain the alien in custody pending the first removal hearing. Section 1357 of the INA requires that an alien arrested without a warrant "shall be taken without unnecessary delay . . . before an officer of the Service having authority to examine aliens as to their right to enter or

---

[3] Like the Complaint (ECF No. 1), both parties discuss the statutory and regulatory background that provides the context for Plaintiffs' claims. (ECF No. 28-1 at 3–7; ECF No. 35 at 4–6.) Although the parties highlight different aspects of this background, there is no fundamental disagreement between the parties and the Court herein relies on the background the parties describe.

remain in the United States." *Id.* By regulation, "an alien arrested without a warrant . . . will be examined by an officer other than the arresting officer" but "the arresting officer" may conduct the examination "if taking the alien before another officer would entail unnecessary delay." 8 C.R.F. §287.3(a). If the examining officer is satisfied that there is "prima facie evidence that the arrested alien was entering, attempting to enter, or is present in the United States in violation of the immigration laws," the officer must refer the case to an immigration judge for further inquiry, or take any action that may be appropriate or required under applicable law and regulations. 8 C.R.F. §287.3(b). If the alien is not subject to expedited removal, was arrested without a warrant, and is placed in formal removal proceedings, the examining officer advises the alien of the reasons for his or her arrest, the right to representation at no expense to the Government, and provides a list of *pro bono* legal services. 8 C.R.F. §287.3(c). The officer also advises the alien that any statement the alien makes may be used against him or her in a subsequent proceeding. *Id.*

The examining officer also makes a determination about whether the alien will remain in custody. Unless voluntary departure has been granted and in the absence of "an emergency or other extraordinary circumstances" requiring "an additional reasonable period of time," "a determination will be made within 48 hours of the arrest . . . whether the alien will be continued in custody or released on bond or recognizance" subject to the standards for release established by 8 C.F.R. part 236. 8 C.R.F. §287.3(d). For an alien who is eligible for release, the officer must consider, *inter alia*, whether the alien will appear for any future removal proceeding. *See* 8 C.F.R. §§236.1; 1236.1.

Lastly, the examining officer also determines whether a notice to appear ("NTA") and warrant of arrest will be issued under the standards set forth in 8 C.R.F. part 239. *Id*. At the time an NTA is issued, DHS regulations authorize an immigration officer to formally arrest and take the alien into custody under a Form I-200 Warrant of Arrest. 8 C.F.R. §236.1(b); *see also* 8 C.F.R. §1236.1(b) (same).

## 2. Commencement of Removal Proceedings and First Removal Hearing

With certain exceptions, including for aliens subject to expedited removal, removal proceedings under Section 240 of the INA are the "sole and exclusive procedure" to determine whether an alien is removable from the United States. 8 U.S.C. §1229a(a)(3). Every removal proceeding under this section commences when immigration officers file an NTA against an alien with the immigration court, an entity which is part of EOIR. 8 C.F.R. §1239.1(a); *see also* 8 C.F.R. §1003.14. Immigration officers provide the time, place and date of the initial removal hearing in the NTA "where practicable." 8 C.F.R. §1003.18(b). If this information is not contained in the NTA, the immigration court has responsibility for providing the government and the alien notice of the time, place, and date of the initial removal hearing. *Id.* The immigration court is otherwise responsible for scheduling removal hearings. 8 C.F.R. §1003.18(a).

Certain statutory provisions and regulations govern the timing of the removal hearing. As a general matter, the INA requires that "in order that an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings . . ., the hearing date shall not be scheduled earlier than 10 days after service of the [NTA], unless the alien requests in writing an earlier hearing date." 8 U.S.C. §1229(b)(1). In certain circumstances, removal hearings must be commenced expeditiously, if possible. For example, the Attorney General must commence removal proceedings "as expeditiously as possible after the date of conviction" for an alien who is convicted of an offense making the alien removable. 8 U.S.C. §1229(d)(1).

The initial Master Calendar Hearing ("MCH") is the first removal hearing and is conducted by an immigration judge. (ECF No. 1 ¶¶21, 29–30; ECF No. 28-1 at 6.) At the initial MCH, the IJ "explains the nature of the removal proceeding, the contents of the [NTA] 'in non-technical language,' an alien's right to representation

at his or her own expense, and the availability of pro bono legal services." (ECF No. 1 ¶29 (citing 8 C.F.R. §1240.10(a)).) The hearing provides an opportunity for the IJ to verify service of the NTA, provide the NTA if service was not made, and examine the NTA for and demand correction of any defects. (*Id*. ¶30 (citing IJ Benchbook, Introduction to the Master Calendar 3).) Where there are otherwise no issues with the NTA, "the [IJ] shall require the [alien] to plead to the [NTA] by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." 8 C.F.R. §1240.10(c). The IJ advises the alien of his or her opportunity to examine and object to evidence of removability. *Id*. The IJ may identify several forms of relief from removability for which the alien may be eligible. (ECF No. 1 ¶32.) The IJ does all of this in the native language of the alien through an interpreter. (*Id*. ¶29 (citing Immigration Court Practice Manual, Chapter 4.15(f).) The initial MCH also provides an IJ the "first opportunity to speak with and observe aliens who may be eligible for appointed counsel as a result of incapacity due to mental health." (*Id*. ¶33.)

At the initial MCH, aliens may also orally request a bond hearing to seek release from DHS custody. (*Id*. ¶31.) Following such a request, the IJ must schedule the bond hearing at "the earliest possible date." (*Id*. (quoting Immigration Court Practice Manual, Chapter 9.3(d).) For detained aliens who DHS asserts are ineligible for bond hearings because they are subject to mandatory detention, the initial MCH provides an opportunity to challenge that mandatory detention. (*Id*. (citing *In re Joseph*, 22 I. & N. Dec. 799, 800 (BIA 1999)).) Under DHS regulations, custody redetermination proceedings before the IJ are "separate" from removal proceedings. 8 C.F.R. §§1003.19, 1236.1.

## B. The Complaint

### 1. Defendants' Alleged Policy and Practice

Plaintiffs allege that Defendants have a policy and practice of detaining immigrants for an extended period after their apprehension without promptly

presenting them to an immigration judge for a first appearance and without promptly seeking judicial review of probable cause to keep the immigrant in custody. (ECF No. 1 ¶¶1, 5, 58.) "'Judicial review' in this context includes . . . review by an immigration judge." (*Id.* ¶4.) Defendant DHS is alleged to rely solely on its officers to make decisions about whether an immigrant should remain in custody. (*Id.* ¶¶4, 22.) Defendant EOIR, which operates the immigration courts, is made aware when an NTA is filed against an immigrant and is informed about whether that immigrant is in the custody of immigration officers. (*Id.* ¶28.) EOIR generates the hearing date for an immigrant's initial MCH and allegedly "does not schedule more expeditious initial Master Calendar Hearings for detainees." (*Id.*) As a result, Plaintiffs allege that immigrants "routinely languish" in DHS custody for one to three months before they ever see an immigration judge, "including people with claims to U.S. citizenship, long[-]time lawful permanent residents, individuals who have been in the United States since childhood, and asylum seekers fleeing persecution." (*Id.* at ¶¶1, 5.) The alleged delay in first appearance or presentment to an IJ prevents immigrants in custody from receiving "important protections and advisals" regarding the charges against them; their rights to relief from removal; their ability to contest allegations about their status, custody, or bond; and their ability to secure *pro bono* counsel. (*Id.* ¶3.)

### 2. Defendants' Conduct in the Southern District of California

Plaintiffs describe the application of Defendants' alleged policy and practice in the Southern District of California (the "District"). Plaintiffs allege that around 1,500 immigrants are detained by DHS in the District on any given day with "the vast majority" having waited or currently "waiting" between one to three months for a first hearing before an immigration judge. (ECF No. 1 ¶¶5, 58–59.) Many are indigent and without counsel. (*Id.* ¶5.)

Defendant ICE, a component of DHS, is alleged to operate two immigration detention centers in the District: the Otay Mesa Detention Facility ("Otay") and the

Imperial Regional Detention Facility ("Imperial"). (*Id.* ¶¶5, 58.) Defendant CBP, a component of DHS, is alleged to operate several additional "short term" detention centers and keeps in custody beyond 48 hours immigrants without final removal orders who will be placed in removal proceedings. (*Id.* ¶¶5, 60.) DHS purportedly makes decisions to maintain in custody "alleged noncitizens pending removal decisions without regard" to the ability of the immigration court to commence removal cases promptly. (*Id.* ¶62.) DHS's alleged policy "results in detention centers being flooded with more individuals than the immigration court can reasonably handle and, as such, significantly delays the initial [MCH]." (*Id.* ¶63.) DHS allegedly fails to provide the time, place and date of the initial MCH in an NTA, instead relying on EOIR to schedule the hearing. (*Id.* ¶64.)

Authority over removal cases at Otay and Imperial falls under the San Diego Immigration Court, which Defendant EOIR is alleged to operate, control and supervise. (*Id.* ¶61.) EOIR allegedly frequently sets the initial MCH for an immigrant in custody for one to three months after receipt of the NTA. (*Id.* ¶28.) Plaintiffs further allege that EOIR has not structured or allocated the resources, staffing, scheduling, or operations of the immigration courts to prevent the occurrence of unreasonable delays in the initial MCH for immigrants in custody; and has not provided a sufficient number of immigration judges or otherwise taken steps to schedule prompt initial hearings for immigrants in custody. (*Id.* ¶¶65, 67.)

### 3.    The Plaintiffs

Plaintiff Jose Orlando Cancino Castellar ("Cancino") is a native and citizen of Mexico, who is eligible for deferred action from removal under the Deferred Action for Childhood Arrivals program. (ECF No. 1 ¶¶9, 47.) He was taken into DHS custody on February 17, 2017, and his detention at Otay began the next day. (*Id.* ¶47.) On February 21, 2017, an ICE officer issued an NTA against Cancino, executed an arrest warrant, and determined that Cancino should remain in custody; Cancino requested an IJ custody redetermination. (*Id.*; ECF No. 28-2 Exs. A, D.) The NTA

did not set a date for his initial MCH.  (ECF No. 28-2 Ex. A.)  ICE filed the NTA with the immigration court on February 24, 2017.  (*Id*.)  Cancino's initial MCH was scheduled on March 8, 2017 and held on March 23, 2017.  (ECF No. 28-2 Ex. C; ECF No. 35 at 7.)  Cancino then had a bond hearing on March 27, 2017 and was released on bond the following day.  (ECF No. 28-2 Ex. E; ECF No. 35 at 7.)  Although Cancino was released after 39 days in custody, he observes that he was released "a mere 5 days after his first appearance."  (ECF No. 35 at 7.)

Plaintiff Ana Maria Hernandez Aguas ("Hernandez") is a native and citizen of Mexico.  She has two U.S. citizen children and is eligible to apply for cancellation of removal.  (ECF No. 1 ¶¶10, 48.)  DHS initially took Hernandez into custody on February 7, 2017 and her detention at Otay began on February 15, 2017.  (*Id.* ¶48.)  CBP executed an arrest warrant and determined that Hernandez should remain in custody; Hernandez requested an IJ custody redetermination.  (ECF No. 28-2 Exs. F, G.)  An NTA, dated February 7, 2017, was issued against Hernandez and filed with the immigration court on February 21, 2017.  (*Id.* Ex. I.)  At her lawyer's request, the immigration court scheduled an IJ custody redetermination hearing for March 13, 2017.  (ECF No. 1 at ¶48.)  The IJ granted Hernandez release from custody on bond and she was released within a day.  (ECF No. 28-2 Exs. L, M.)  Although Hernandez was released after 35 days in custody, she observes that she was released "just one day after her first appearance."  (ECF No. 35 at 7.)  Her initial MCH was scheduled for July 19, 2017.  (ECF No. 28-2 Ex. J.)

Plaintiff Michael Gonzalez alleges that he is a U.S. citizen, which DHS disputes.  (ECF No. 1 ¶49.)  On November 17, 2016, Gonzalez presented himself at the San Ysidro Port of Entry, expressed a fear of persecution in Mexico, and was taken into custody.  (*Id*.)  CBP placed Gonzalez into expedited removal proceedings the following day.  (ECF No. 28-2 Ex. N.)  Gonzalez's detention at Otay began on November 23, 2016.  (ECF No. 1 ¶49.)  Several weeks later, on December 16, 2016, an asylum officer determined that Gonzalez had a credible fear.  (*Id*.)  ICE revoked

– 9 –

the expedited order of removal against Gonzales and served him with an NTA, dated January 9, 2017. (ECF No. 28-2 Ex. O at 1–2.) The NTA was filed with the immigration court ten days later. (*Id*.) Gonzalez's initial MCH was scheduled for March 14, 2017, but was continued to allow him to obtain counsel. (ECF No. 28-2 Ex. R 102:7–106:16 (Tr. of Mar. 14, 2017 Hr'g).) Gonzalez observes that he "was detained for 117 days before his first appearance." (ECF No. 28-2 Ex. U; ECF No. 35 at 8.)

### C.    Procedural Background

On March 9, 2017, the Plaintiffs filed the Complaint. (ECF No. 1.) Plaintiffs allege that Defendants' policies and practices violate the due process clause of the Fifth Amendment to the United States Constitution, the Fourth Amendment's prohibition on unreasonable searches and seizures without probable cause, and the APA, 5 U.S.C. §§702, 706(1), 706(2)(A)–(D). (*Id.* ¶¶75–80, 81–84, 85–90.) They seek a declaratory judgment that Defendants' policy and practice violates their rights under the Fifth and Fourth Amendments and the APA, an injunction enjoining the Defendants' alleged policy and practice, and the issuance of writs of habeas corpus commanding the release of Plaintiffs and class members from detention "to the extent necessary for the Defendant[s] to comply with their constitutional and statutory obligations." (*Id.* at 23, Prayer for Relief.) Plaintiffs seek to represent a class of "all individuals in the [District], other than those with final orders of removal" who are detained "by DHS more than 48 hours without a hearing before an immigration judge or judicial review of whether their detention is justified by probable cause." (ECF No. 1 ¶68.) A day after filing the Complaint, Plaintiffs filed a motion for class-certification, which remains pending. (ECF No. 2.)

On May 22, 2017, Defendants filed their motion to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6). (ECF No. 28.) Plaintiffs have opposed (ECF No. 35) and Defendants have replied (ECF No. 37). On December 14, 2017, the Court held a hearing on Defendants' motion to dismiss, focusing on the jurisdictional

challenges Defendants raise and Sections 1252(a)(5) and 1252(b)(9) in particular. (ECF Nos. 42, 44 (Hr'g Tr.)  The Court now rules on those challenges.

## II.    LEGAL STANDARD

"It is axiomatic that '[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree.'"  *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.*; *see also Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdiction of a federal court over the subject matter of the complaint.  FED. R. CIV. P. 12(b)(1).  A Rule 12(b)(1) attack may be either facial or factual.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack, where the movant relies on extrinsic evidence, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.  *Id.*  To resolve a factual attack, the district court may review evidence beyond the complaint without converting the motion to one for summary judgment and need not presume the truthfulness of the plaintiff's allegations.  *Id.*

## III.    DISCUSSION

Defendants assert two jurisdictional challenges: (1) Section 1252(g) bars jurisdiction over Plaintiffs' claims and (2) Sections 1252(a)(5) and (b)(9) require Plaintiffs to raise their claims in a petition for review in the court of appeals, and place their claims outside the jurisdiction of this District Court.  The Court addresses each challenge in turn.

**A.      Section 1252(g) Does Not Deprive This Court of Jurisdiction Over All Claims**

Defendants argue that Section 1252(g) precludes jurisdiction over Plaintiffs' claims because the decision to detain "cannot be divorced" from the decision to commence removal proceedings against an alien and therefore this Court lacks jurisdiction.  (ECF No. 28-1 at 13–15.)  In opposition, Plaintiffs argue that Section 1252(g) does not bar review of their claims because they do not challenge any particular decision pertaining to them individually and because Section 1252(g) does not preclude judicial review of class-wide challenges to government procedures.  (ECF No. 35 at 10.)  Plaintiffs further argue that the decision to detain is separate from the decision to commence removal proceedings.  (*Id.* at 12.)  With the exception of Plaintiff Gonzalez's Fourth Amendment claims, the Court concludes that Section 1252(g) does not bar review of Plaintiffs' claims.

**1.      Statutory Text and Interpretation**

The starting point for any statutory interpretation is the language of the statute. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985); *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007).

Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.  8 U.S.C. §1252(g).

Under its plain terms, the provision "applies only to three discrete actions that the Attorney General may take . . ." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525

U.S. 471, 482 (1999) [hereinafter "*AAADC*"]. The provision "does not bar 'all claims relating in any way to deportation proceedings,'" but rather serves to bar "attempts to impose judicial constraints upon prosecutorial discretion" pertaining to the three discrete decisions it enumerates. *Kwai Fun Wong v. United States INS*, 373 F.3d 952, 964 (9th Cir. 2004) (quoting *Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir.) (en banc)); *see also AAADC*, 525 U.S. at 482. The Ninth Circuit has advised district courts in this Circuit of the Supreme "Court's instruction to interpret §1252(g) narrowly." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (acknowledging *AAADC*'s focus on the "particular evil" of imposing judicial constraints on prosecutorial discretion).

In accordance with that instruction, the Ninth Circuit has defined the limits of Section 1252(g) with respect to each discrete decision it covers. For example, the Ninth Circuit has interpreted the scope of Section 1252(g)'s bar on judicial review of a decision to commence proceedings to "include not only a decision in an individual case whether to commence, but also when to commence, a proceeding." *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (no jurisdiction to review claim that INS should have commenced deportation proceedings immediately upon becoming aware alien was unlawfully present in the U.S.). However, Section 1252(g) "does not bar review of actions that occurred *prior* to any decision to commence proceedings." *Wong*, 373 F.3d at 965 (emphasis added). Although Section 1252(g) bars review of a decision to adjudicate a case, it does not bar judicial review of decisions or actions that occur *during* the formal adjudicatory process. *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1120 (9th Cir. 2001). Although Section 1252(g) bars review of a decision to execute an order of removal, the provision does not bar review of the underlying merits of a removal decision. *Maharaj v. Ashcroft*, 295 F.3d 963, 965 (9th Cir. 2002). These decisions reinforce the principle that while a federal court cannot exercise jurisdiction over claims arising from the discrete decisions Section 1252(g) identifies, a federal court's construction and consequent

application of Section 1252(g)'s jurisdictional bar must be narrow.

With this principle in mind, the Court turns to the Plaintiffs' claims and Defendants' jurisdictional challenge. Although neither side has addressed how Section 1252(g) applies based on the types of claims at issue, it is appropriate to address Plaintiffs' Fourth and Fifth Amendment claims independently.[4]

## 2.    Fourth Amendment Claims

The basis of Plaintiffs' Fourth Amendment claims is that DHS officers make decisions to keep immigrants in custody beyond 48 hours of initial apprehension without prompt judicial review by an immigration judge of the justification for detention. (ECF No. 1 at ¶¶4, 46, 81–84.) Defendants argue that the decision to detain "cannot be divorced" from the decision to commence proceedings because it is based on *prima facie* evidence that the alien is inadmissible or removable from the United States. (ECF 28-1 at 14 (citing 8 U.S.C. §1357(a); 8 C.F.R. §287.3(b).) Therefore, Defendants argue, the claim arises from the decision to commence removal proceedings and this Court lacks jurisdiction. The Court is not convinced.

Defendants' argument would appear to conflate a decision that is covered by Section 1252(g) with a discrete decision that is not. Put simply, the text of Section 1252(g) provision does not refer to the decision to detain.

Nevertheless, the Ninth Circuit has interpreted the provision as barring a *Bivens* damages claims for false arrest where detention directly followed from the decision to commence proceedings. *See Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007) ("*Sissoko III*"). This interpretation must be understood in light of the facts of that case. The plaintiff, a native and citizen of Senegal, was taken into custody as an "arriving alien". *Sissoko v. Rocha*, 440 F.3d 1145, 1149 (9th Cir. 2006) ("*Sissoko II*"), *withdrawn by Sissoko III*, 509 F.3d at 948 (incorporating factual background of *Sissoko II*). He indicated that he had a fear of persecution if he was returned to

---

[4] Because Plaintiffs' APA claims turn on the alleged Fourth and Fifth Amendment violations (ECF No. 1 ¶88), the Court does not separately address them.

– 14 –

Senegal and thus was placed into statutorily-mandated detention under 8 U.S.C. 1225(b)(1) pending a final determination of a credible fear of persecution.  *Sissoko III*, 509 F.3d at 949.  Because no expedited order of removal was issued against him, Sissoko could have pursued a habeas remedy under 8 U.S.C. §1252(e)(2), which in part applies to aliens in expedited removal proceedings.  *Id*.  Under these circumstances, the Ninth Circuit found that the *Bivens* damages action was barred by Section 1252(g) because Sissoko's detention directly resulted from the decision to commence proceedings against him and an "alternative remedy directly addressing the claim injury" was available.  *Id.* at 950.

Here, in support of their motion to dismiss, Defendants submit evidence showing that Plaintiff Gonzalez was initially subject to mandatory detention because he was initially placed in expedited removal proceedings.  (ECF No. 28-2 Ex. N.) Like the plaintiff in *Sissoko*, Plaintiff Gonzalez also asserted a fear of persecution, which triggered mandatory detention pending a final determination of a credible fear. *Sissoko III*, 509 F.3d at 949; (*see also* ECF No. 28-1 at 15 (asserting that Plaintiff Gonzalez was initially detained pursuant to 8 U.S.C. §§1225(b)(1) and (b)(2))).  Like the plaintiff in *Sissoko*, Gonzalez would have had a habeas remedy available to seek release from custody to assess whether he was in fact subject to expedited removal. *See* 8 U.S.C. §1252(e).  Given these facts and the striking similarity between Plaintiff Gonzalez and the plaintiff in *Sissoko III*, the Court concludes that Plaintiff Gonzalez's Fourth Amendment claim is barred by Section 1252(g) because his "detention arose from [the] decision to commence expedited removal proceedings." *Sissoko III*, 509 F.3d at 949.  Plaintiffs' argument that their "class-wide" challenge overcomes Section 1252(g)'s bar is unavailing as to this aspect of Plaintiff Gonzalez's detention.  Section 1252(g) expressly applies to "any cause or claim by or on behalf of any alien."  8 U.S.C. §1252(g).  Plaintiff Gonzalez necessarily asserts a claim on behalf of himself that partially falls within the scope of Section 1252(g). Accordingly, the Court grants Defendants' motion to dismiss for lack of jurisdiction

under Section 1252(g) insofar as it concerns Plaintiff Gonzalez's Fourth Amendment claim.

However, for Plaintiffs Cancino and Hernandez, Defendants' "cannot be divorced" argument conflates a decision covered by Section 1252(g)—the decision to commence proceedings—with a decision that is "discrete" from it. Moreover, Defendants' argument seeks to extend *Sissoko III* to circumstances even where a plaintiff is not subject to mandatory detention. The Court rejects Defendants' argument and this unwarranted extension.

Plaintiffs Cancino and Hernandez are not alleged to have been subjected to mandatory detention. Defendants expressly acknowledge that Plaintiffs Cancino and Hernandez were in custody under 8 U.S.C. §1226(a), a statute which does not mandate detention. (ECF No. 28-1 at 7 n.7, 16.) Under that statute, "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a) (emphasis added). By not mandating detention, the statute makes clear that the decision to detain may be "divorced" from the decision to commence removal proceedings. *See Rashad Ahmad Refaat El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d. 249, 266 (D. Conn. 2008) (finding that under Section 1226(a), DHS's decisions to arrest and detain plaintiff "were decisions separate and discrete from the agency's decision to initiate removal proceedings"); *see also Michalski v. Decker*, No. 17-cv-9631, 2018 U.S. Dist. LEXIS 2309 (S.D.N.Y. Jan. 4, 2018) (same). More directly to Defendants' argument concerning detention based on *prima facie* evidence of removability, the regulation establishing this standard addresses removability separately from custody determinations and related custody procedures, much like the statute. *Compare* 8 C.F.R. §287.3(b) (identifying *prima facie* standard for determination of future removal proceedings) *with* 8 C.F.R. §287.3(d) (requiring custody decision within 48 hours of arrest). In fact, no part of the regulation mandates detention of an alien simply because there is "*prima facie*" evidence of removability. Instead, custody

– 16 –

determinations are premised on distinct considerations, such as whether the alien poses a danger to another or will appear for any future proceeding. *See* 8 C.F.R. §236.1. That regulation further provides that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent *may* be arrested and taken into custody." 8 C.F.R. §236.1. The fact that the regulations and the statute treat custody decisions separately from the decision to commence removal proceedings is fatal to Defendants' argument. The notion implicit in the statute and the regulations is that the Attorney General's decision to commence removal proceedings is not called into question by consideration of whether the alien shall remain in custody. Therefore, addressing Plaintiffs Cancino and Hernandez's claims of whether an immigration judge should promptly review the decision to keep an alien in custody pending removal proceedings does not impermissibly "impose judicial constraints on prosecutorial discretion." *AAADC*, 525 U.S. at 485 n.9. The Court's conclusion is reinforced by Plaintiffs' disavowal (ECF No. 35 at 11–12) of any challenge to the commencement of removal proceedings against them. *See Wong*, 373 F.3d at 964 (Section 1252(g) did not bar claims where plaintiff asserted that her claims "implicate only actions *other than* that removal, or the commencement or proceedings" (emphasis in original).

Defendants' argument would extend Section 1252(g)'s scope to preclude jurisdiction even when detention is not mandatory, as reflected in Defendants' reliance on *MacDonald v. United States*, No. 11–cv–1088–IEG (BLM), 2011 WL 6783327 (S.D. Cal. Dec. 23, 2011). In that case, the court found the plaintiff's Fourth Amendment *Bivens* claim for unlawful confinement was premised on a decision to commence proceedings against him and barred by Section 1252(g) in light of *Sissoko III*. *Id.* at *6. However, the *MacDonald* court relied on a broader interpretation of *Sissoko* than the decision warrants, finding that *Sissoko* "makes clear that a Fourth Amendment challenge to confinement during removal proceedings . . . stems directly

from the Attorney General's decision to commence the removal proceedings." *Id.* (citing *Sissoko III*, 509 F.3d at 950). This Court does not find persuasive this interpretation of *Sissoko III*. As discussed, *Sissoko III*'s application of Section 1252(g) was limited to the *mandatory* detention of an alien subject to expedited removal proceedings who failed to avail himself of the alternative remedy available to him. *Sissoko III*, 509 F.3d at 950 ("*In this limited context*, we hold that 8 U.S.C. §1252(g)'s jurisdiction-stripping language covers the Sissokos' false arrest claim." (emphasis added)). This Court declines to apply *Sissoko III* beyond the limitations the Ninth Circuit acknowledged in that case. Accordingly, Section 1252(g) cannot bar jurisdiction over the Fourth Amendment claims asserted by Plaintiffs Cancino and Hernandez.

Moreover, as is relevant to Plaintiff Cancino in particular, Section 1252(g) "does not bar review of actions that occurred *prior* to any decision to commence proceedings." *Wong*, 373 F.3d at 965 (emphasis added). Defendants recognized at oral argument that removal proceedings commence when an NTA is issued. The Ninth Circuit has similarly recognized the issuance of an NTA as the commencement of removal proceedings. *See Hovsepian*, 359 F.3d at 1165 ("[A] removal proceeding does not 'commence' against an alien until the INS actually files a Notice to Appear with the immigration court."); *Jimenez-Angeles*, 291 F.3d at 600 (removal proceedings commence when the NTA is filed with the immigration court). Here, Plaintiff Cancino alleges that he was in custody for four days after he was apprehended by immigration officials and before he was issued an NTA. *Wong* counsels that his claims concerning conduct that occurred before the issuance of the NTA are not barred. Defendants, however, argue that *Wong* is limited to the circumstances faced by the plaintiff in that case. The Court does not agree. In *Wong*, the plaintiff challenged the INS officials' allegedly discriminatory decisions regarding advance parole, adjustment of status, and revocation of parole. *Wong*, 373 F.3d at 959. Defendants argue that whereas these decisions are "easily divorced"

from the decision to commence proceedings, the initial decision to detain cannot be divorced from the *prima facie* evidence of removability. (ECF No. 28-1 at 14.) Defendants' argument is unsupported by *Wong*, which did not inquire about whether a decision may be "divorced" from a decision specifically identified in Section 1252(g), but rather whether challenged conduct arose before a decision to commence removal proceedings. Under those circumstances, a claim simply cannot arise from something that has not yet occurred. *See Wong*, 373 F.3d at 965 ("[W]e would defy logic by holding that a claim for relief somehow 'aris[es] from' decisions and actions accomplished only after the injury allegedly occurred." (quoting *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 944 (5th Cir.1999))). Moreover, as the Court has concluded, the applicable statute and regulations do, in fact, divorce the decision to commence proceedings from the decision to detain. Accordingly, the Court rejects Defendants' Section 1252(g) challenge against Plaintiff Cancino for this additional reason.

### 3.    Fifth Amendment Due Process Claims

The basis of Plaintiffs' Fifth Amendment challenge is that the unreasonable delay in their presentment to an immigration judge results in prolonged detention and prevents them from accessing important rights and remedies available. (ECF No. 1 ¶¶1–3, 24–34, 75–80.) Defendants make no argument as to why the fact an alien is detained should bar review of constitutional due process claims under Section 1252(g). In opposition to Defendants' motion to dismiss, Plaintiffs argue that Section 1252(g) does not bar their challenge to a "class-wide policy and practice" and identify Ninth Circuit authorities permitting constitutional due process claims to proceed notwithstanding Section 1252(g). (ECF No. 35 at 10–11.) The Court concludes that Section 1252(g) is no bar to Plaintiffs' due process claims.

Multiple decisions of the Ninth Circuit support Plaintiffs' argument insofar as it concerns constitutional due process challenges to policies and practices. The Ninth Circuit has repeatedly appreciated the distinction between challenges to individual

decisions covered by Section 1252(g) and broader due process challenges to policies and procedures employed by immigration officials. Section 1252(g) does not apply to challenges that "do[] not arise from a 'decision or action by the Attorney General to commence proceedings' . . . but instead constitute 'general collateral challenges to unconstitutional *practices and policies* used by the agency.'" *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir. 1998) (emphasis added); *see also Catholic Soc. Servs. v. INS*, 232 F.3d 1139 (9th Cir. 2000) (same); *Barahona-Gomez*, 167 F.3d at 1234 (same). The Ninth Circuit has further cautioned that "any legislation that completely immunizes an agency's practices and procedures from due process challenges 'would raise difficult constitutional issues.'" *Walters*, 145 F.3d at 1052 (quoting *Catholic Soc. Servs. v. Reno*, 134 F.3d 921, 927 (9th Cir. 1997)).

Here, the Plaintiffs allege substantive and procedural due process violations of the Fifth Amendment. These claims arise from the treatment of the Plaintiffs after their initial apprehension and during their custody, including alleged delays in their presentment to an immigration judge and the scheduling of the initial Master Calendar Hearing. (ECF No. 1 at ¶¶29, 43, 47–48, 50–60, 62–65, 67.) Consideration of such issues simply does not arise from the decision to commence removal proceedings against the Plaintiffs and does not undermine the Attorney General's prosecutorial discretion to commence those proceedings. *See Walters*, 145 F.3d at 1052; *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 125 (D. Conn. 2010). Accordingly, Section 1252(g) does not bar review of Defendants' policies and practices that allegedly violate Plaintiffs' constitutional right to due process.

**B.  Sections 1252(a)(5) and 1252(b)(9) Channel Jurisdiction Over Plaintiffs' Claims to the Court of Appeals**

That Section 1252(g) does not deprive this Court of jurisdiction over all claims does not end the Court's jurisdictional inquiry. Defendants argue that Sections 1252(a)(5) and 1252(b)(9) channel jurisdiction over Plaintiffs' claims exclusively to the court of appeals because Plaintiffs' claims arise from removal proceedings. (ECF

No. 28-1 at 11–13.)  Plaintiffs assert that this Court has jurisdiction because their claims are "collateral to their substantive eligibility for relief" from removal.  (ECF No. 35 at 13–14 (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1028, 1032 (9th Cir. 2016).)  They argue that applying Sections 1252(a)(5) and 1252(b)(9) to their claims would foreclose all possibility of judicial review.  (*Id.* at 14–15.)  Further, Plaintiffs argue that because they assert challenges to detention, their claims are independent of removal proceedings.  (*Id.* at 14.)  The Court concludes that Sections 1252(a)(5) and 1252(b)(9) do not permit this Court to exercise jurisdiction.

## 1.    Statutory Text and Interpretation

The text of the statutory provisions is once more the relevant starting point for the Court's analysis.

Section 1252(a)(5) establishes the exclusive vehicle for judicial review: "[A] petition for review . . . shall be the sole and exclusive means for judicial review of an order of removal."  8 U.S.C. §1252(a)(5).  Section 1252(b)(9) in turn defines the scope of judicial review: "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order" of removal.  8 U.S.C. §1252(b)(9).

The Supreme Court has characterized Section 1252(b)(9) as an "unmistakable zipper clause," *AAADC*, 525 U.S. at 471, by which judicial review of immigration proceedings is consolidated into one action brought before a court of appeals in a petition for review.  *INS v. St. Cyr*, 533 U.S. 289, 313 & n.37 (2001).  The Ninth Circuit has interpreted the scope of both provisions.  In the context of an APA challenge, the Ninth Circuit has held that "[w]hen a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."  *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012).  The Ninth Circuit has

instructed that Section 1252(b)(9) applies even when a plaintiff asserts a policy and practice challenge if that challenge arises from removal proceedings or any action taken to remove an alien. *See J.E.F.M.,* 837 F.3d at 1035. "Taken together, Sections 1252(a)(5) and 1252(b)(9) mean that *any* issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process." *Id.* at 1031 (emphasis in original).

Notwithstanding its "breath-taking scope," Section 1252(b)(9) "has built-in limits" under which "claims that are independent of or collateral to the removal process" are not channeled into a petition for review before the court of appeals. *Id*. The Ninth Circuit has provided guidance on when claims fall outside the scope of Section 1252(b)(9). For example, claims that arise *after* a final order of removal has issued are not subject to Section 1252(b)(9)'s channeling strictures because such claims cannot be raised in the administrative proceeding. *See Singh*, 499 F.3d at 979 (permitting ineffective-assistance-of-counsel claim concerning conduct occurring after final order of removal, but barring similar claim for conduct that arose before order). The Ninth Circuit has also found that an alien who has "prevailed at every administrative level" and been granted asylum, yet remained in administrative detention for five years could file a habeas petition in district court notwithstanding Section 1252(b)(9). *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006). The Ninth Circuit determined that, under those circumstances, the habeas petition did not involve a final order of removal and Section 1252(b)(9) did not channel jurisdiction to the courts of appeals. *Id.* at 1076. Beyond these limited and unusual circumstances, however, claims arising from any removal-related activity must be raised through the petition for review process.

### 2.    Plaintiffs' Claims Arise from Removal Proceedings

To resolve the jurisdictional challenge Defendants raise under Sections 1252(a)(5) and 1252(b)(9), the key issue this Court must determine is whether Plaintiffs' claims arise from, or are inextricably linked with, removal proceedings or

are independent of, or wholly collateral to, those proceedings. The Court concludes the former.

### a.    Fifth Amendment Due Process Claims

Plaintiffs' Fifth Amendment due process claims center on Defendants' alleged delay in promptly presenting immigrants in custody to an immigration judge "for an initial hearing." (ECF No 1. ¶¶1, 3, 24–34, 44.) Because Plaintiffs' due process claims are "inextricably linked" with an integral feature of removal proceedings, Sections 1252(a)(5) and 1252(b)(9) require Plaintiffs to raise their claims in a petition for review.

The "initial" or "first hearing" repeatedly referenced throughout the Complaint is not some yet-to-exist feature of the removal process. Rather, it is the "crucial stage of the removal proceedings" already known as the initial Master Calendar Hearing, where an immigrant makes his or her "first appearance" before an immigration judge. (*Id.* ¶¶2, 24–34.) Plaintiffs' opposition to Defendants' motion to dismiss concedes this point. (ECF No. 35 at 7.) The initial Master Calendar Hearing stems from statute and regulations, which form the removal process. Section 1229a of the INA establishes removal hearings before an immigration judge as "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. §§1229a(b)(1), (3). The initial Master Calendar Hearing is the first hearing in removal proceedings. (ECF No. 1 ¶¶27, 29); 8 C.F.R. §1003.18(b).

Plaintiffs' allegations regarding the importance of this hearing "to ensuring due process" are not written on a blank canvas of what constitutional due process should aspire to for immigrants in removal proceedings. (ECF No. 1 ¶3.) Rather, the rights to which immigrants are entitled at that first removal hearing and subsequent hearings during the removal process are established by statute and crystallized in regulation. Section 1229a(b)(4), titled "alien's rights in proceeding," requires that an immigrants have: "the privilege of being represented . . . by counsel

of the alien's choosing"; "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government"; and the creation of "a complete record" of the proceeding. 8 U.S.C §§1229a(b)(4)(A)–(C).[5] The "advisals" by the immigration judge to which Plaintiffs refer (ECF No. 1 ¶3) stem from a DHS regulation, which additionally requires the immigration judge to advise the immigrant of: "the availability of pro bono legal services for the immigration court location" and "the factual allegations and charges in the [NTA] . . . and explain them in non-technical language." 8 C.F.R. §1240.10(a). In aid of an immigrant's statutory right of counsel, the INA creates a default statutory floor for the timing of the "first hearing date" in removal proceedings. That hearing "shall not be scheduled earlier than 10 days after the service of the [NTA]" unless an immigrant requests an earlier date. 8 U.S.C. §1229(b)(1). It is only against the backdrop of an immigrant's statutory and regulatory rights in removal proceedings that Plaintiffs' claims of constitutional due process violations by the Defendants' alleged delay in an immigrant's "first appearance" or "initial hearing" are intelligible.

Although Plaintiffs allege that the delay in an immigrant's first appearance is attributable to all Defendants, Plaintiffs' allegations concern decisions or actions by Defendants DHS and EOIR that allegedly delay an immigrant's first appearance. (ECF No. 1 ¶¶29, 43, 47–48, 50–60, 62–65, 67.) Plaintiffs' focus on these two Defendants' roles in the timing of the initial Master Calendar Hearing is not happenstance. Applicable statutory provisions and regulations define the roles of DHS and EOIR in the scheduling of removal hearings generally and the scheduling of the initial removal hearing in particular. The immigration court is generally

---

[5] The statutory provision also requires that these rights be established "under regulations of the Attorney General." 8 U.S.C. §1229a(b)(4). This echoes the preceding provision in Section 1229a, under which "the Attorney General shall prescribe safeguards to protect the rights and privileges of" an immigrant who cannot be present for a removal hearing "by reason of an alien's mental incompetency." 8 U.S.C. §1229(b)(3).

"responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings." 8 C.F.R. §1003.18(a). DHS's more limited role pertains to giving notice of the initial removal hearing. Section 1229 of the INA, titled "initiation of removal proceedings" requires that an NTA identify "the time and place at which [removal] proceedings will be held." 8 U.S.C. §1229(a)(1)(G)(i). By regulation, however, DHS "shall provide in the [NTA], the time, place and date of the initial removal hearing, *where practicable*." 8 C.F.R. §1003.18(b) (emphasis added). When that information is not contained in the NTA, "the Immigration Court *shall be responsible for scheduling the initial removal hearing* and providing notice to the government and the alien of the time, place, and date of hearing." *Id.* (emphasis added). Statutory provisions and regulations also contemplate "change or postponement in the time and place of [the initial removal hearing]," with the immigration court providing "written notice to the alien" of the new time and place. 8 U.S.C. §1229(a)(2)(A), 8 C.F.R. §1003.18(b). By negative inference, the statute and regulation account for detained immigrants, by specifying that no notice is required for "an alien not in detention" who has not provided an address. 8 U.S.C. §1229(a)(2)(B), 8 C.F.R. §1003.18(b).

At each point, applicable statutory and regulatory provisions define the existence of the initial removal hearing, its timing and the provision of notice regarding its timing by particular Defendants, and the rights of an immigrant during the removal hearing and subsequent removal proceedings. The delay Plaintiffs allege is caused by the Defendants—and the harms they and other immigrants in custody pending removal proceedings face from that delay—cannot be extricated from the removal proceedings. Accordingly, the Court has little hesitation in concluding that their due process claims are subject to Sections 1252(a)(5) and 1252(b)(9)'s jurisdiction channeling.

### b. Fourth Amendment Claims

Plaintiffs' Fourth Amendment claims regarding Defendants' alleged failure to

promptly present them to an immigration judge for a probable cause determination are similarly "inextricably linked" with removal proceedings. The specific actions that Plaintiffs allege violate their Fourth Amendment rights are "decisions to keep persons in custody *beyond 48 hours and before their initial Master Calendar Hearing* . . . made by DHS officers alone without prompt judicial review" of probable cause. (*Id.* ¶¶1, 46 (emphasis added).) The statutory and regulatory scheme compels this Court to conclude that the pre-hearing custody decisions are "inextricably linked" with removal proceedings. DHS regulations require that an alien arrested without a warrant must be examined by an immigration officer other than the arresting officer to make two determinations: (1) whether the case should be referred to an immigration judge for removal proceedings and (2) whether the alien should remain in custody. 8 C.F.R. §287.3(a). Plaintiffs' selection of the 48 hour time period is not happenstance either. That time period is expressly referenced in the regulation. *Id.* Under the regulation, the officer refers the case to an immigration judge if he is "satisfied" there is "prima facie evidence" of removability. 8 C.F.R. §287.3(b). It is clear that if the officer has determined that there is *prima facie* evidence of removability, the future removal proceeding is the initial Master Calendar Hearing. For an alien eligible for release, the officer must consider, *inter alia*, whether the alien will appear for any future proceeding. *See* 8 C.F.R. §§287.3(d) (custody determination made based on standards in 8 C.F.R. part 236), 236.1; 1236.1. Pre-hearing custody is therefore based in part on securing presentment of the immigrant at an initial Master Calendar Hearing. Under these circumstances, the Court concludes that Plaintiffs' claim that DHS officers fail to seek promptly an immigration judge's review of probable cause for an alien to remain in DHS custody arises from an action that is "inextricably linked" with the removal proceedings. The claim, therefore, is subject to Sections 1252(a)(5) and 1252(b)(9)'s jurisdiction channeling.

The inevitable nature of the injunctive relief Plaintiffs seek further confirms

that their Fourth Amendment claims are inextricably linked with the removal process. Plaintiffs request injunctive relief permanently enjoining Defendants from engaging in their alleged existing policy and practice. (ECF No. 1 at 23, Prayer for Relief.) Plaintiffs offer scant guidance on what this injunctive relief would entail, but if Defendants are enjoined from engaging in their allegedly unlawful current policy and practice, then they would be required to present aliens in custody to an immigration judge "promptly" to ensure access to the Plaintiffs' statutory and regulatory rights and to receive a "probable cause" determination. Plaintiffs effectively define "promptly" as a point beyond 48 hours of initial arrest and custody by immigration officials and some point before the initial Master Calendar Hearing, which allegedly occurs during one to three months after initial arrest. (*Id.* ¶¶1, 5, 46.) The presentment Plaintiffs request cannot possibly occur without confirmation by an immigration judge of the charges of removability against an immigrant, even if the probable cause determination ultimately concerns whether an immigrant should continue to remain in DHS custody. That confirmation inevitably bleeds into aspects of the initial removal hearing. 8 C.F.R. §1240.10(c). Any injunctive relief in this case would effectively result in a process virtually indistinguishable from or substantially similar to the Initial Master Calendar Hearing, with the only difference being the timing of that hearing. That difference is an insufficient basis to conclude that Plaintiffs' Fourth Amendment claims are independent of or collateral to removal proceedings. Accordingly, the Court concludes that Plaintiffs Cancino and Hernandez's Fourth Amendment claims are subject to Sections 1252(a)(5) and 1252(b)(9)'s jurisdiction channeling.

**c.      Sections 1252(a)(5) and 1252(b)(9) Do Not Permit Exceptions for Claims Within Their Scope**

Even if their claims fall within the sweep of Sections 1252(a)(5) and 1252(b)(9)'s jurisdiction-channeling, Plaintiffs argue that this Court may nevertheless exercise jurisdiction for three reasons, all of which are effectively

premised on purported exceptions to the scope of these provisions. The Court finds none of these reasons persuasive.

First, Plaintiffs argue that their claims are independent of the substantive merits of their removal proceedings and, therefore, this Court has jurisdiction. (ECF No. 35 at 15.) Neither the statute, nor its interpretation by the Ninth Circuit identifies an exception to the channeling function of Section 1252(b)(9) based on whether the asserted claims go to the "substantive merits" of a removal proceeding. Although the proposition that claims going to the substantive merits of a removal proceedings are channeled by Section 1252(b)(9) is obvious, it does not follow that Section 1252(b)(9) only channels such claims. To the contrary, the Ninth Circuit has clarified, "Congress intended to channel *all claims arising from the removal proceedings* . . . to the federal courts of appeals." *J.E.F.M.*, 837 F.3d at 1033 (emphasis added). So long as the claims arise from the removal proceeding or any action taken to remove an alien, they are swept up by Section 1252(b)(9). Such is the result with Plaintiffs' claims here.

Second, Plaintiffs argue that because their claims do not require judicial review of a final order of removal, they may assert them now. (ECF No. 35 at 15.) This argument fails to appreciate the proper function of Section 1252(b)(9). Along with the other judicial provisions with which it was enacted, Section 1252(b)(9) "make[s] perfectly clear . . . that 'review of a final order of removal is the only mechanism for reviewing any issue raised in a removal proceeding'. . ." *J.E.F.M.*, 837 F.3d at 1034 (quoting H.R. Rep. No. 109–72, at 173). The jurisdictional channeling function of Section 1252(b)(9) is not defeated simply because Plaintiffs are at a stage of the removal proceedings at which no final order of removal has issued against them. Aliens cannot "bypass the immigration courts and directly proceed to district court," but rather "must exhaust the administrative process before they can access the federal courts" when their claims arise from removal proceedings. *Id.* at 1029. Indeed, in its most recent application of Section 1252(b)(9), the Ninth Circuit required such

exhaustion for immigration minors who were "at various stages of the removal process" preceding the issuance of a final order of removal, including aliens "waiting to have their first removal hearing." *Id.* As with the due process right-to-counsel claims raised by the immigrant minors in *J.E.F.M.*, Plaintiffs must exhaust the administrative process available to them in their immigration proceedings before they can turn to the federal courts.

Plaintiffs also argue that "section 1252(b)(9) does not bar claims that cannot be meaningfully heard in the administrative process." (ECF No. 35 at 14). The Court rejects this argument. The argument relies heavily on the First Circuit's *Aguilar v. ICE* decision. 510 F.3d 1 (1st Cir. 2007).[6] In *Aguilar*, the First Circuit addressed whether Sections 1252(a)(5) and 1252(b)(9) channeled jurisdiction to the court of appeals over certain constitutional due process claims. Under its interpretation of Section 1252(b)(9), the First Circuit opined that the provision does not apply to

---

[6] Plaintiffs also assert that "[w]here a plaintiff 'would have no legal avenue to obtain judicial review' of his claims, section 1252(b)(9) does not bar those claims." (ECF No. 35 at 15 (quoting *J.E.F.M.*, 837 F.3d at 1032).) Contrary to the suggestion of this selective reading, the Ninth Circuit clarified in *J.E.F.M.* why Section 1252(b)(9) did not apply to an ineffective assistance of counsel claim in the "unique situation" presented in *Singh v. Gonzales*, 499 F.3d 969 (9th Cir. 2007). The Ninth Circuit explained that the district court had jurisdiction over that claim because Singh's "claim could not have been raised before the agency because it was entered after a final order of removal and, absent habeas review, [he] would have no legal avenue to obtain judicial review of this claim." *J.E.F.M.*, 837 F.3d at 1032 (citing *Singh*, 499 F.3d at 979–80).

One district court in this Circuit has opined that there is a possible "conflict" between *J.E.F.M.*'s understanding of Section 1252(b)(9) and other language of *Nadarajah* and *Singh*, which appears to limit the application of the provision to instances where there is a final order of removal. *See Medina v. United States Dep't of Homeland Sec.*, No. C17-218-RSM-JPD, 2017 U.S. Dist. LEXIS 114477, at *38 (W.D. Wash. Mar. 14, 2017), *adopted in part by*, 2017 WL 1101370 (W.D. Wash. Mar. 24, 2017). This Court, however, sees no true conflict. Both *Nadarajah* and *Singh* underscore that when claims cannot be reviewed in a petition for review of a final order of removal, they are not subject to Sections 1252(a)(5) and 1252(b)(9). *See Nadarajah*, 443 F.3d at 1075–76 (immigrant who had prevailed "at every stage", yet remained in detention could bring habeas petition); *Singh*, 499 F.3d at 978 (alien's claim arose after final order issued). Plaintiffs' claims do not raise either of these issues.

"certain claims, [which] by reason of the nature of the right asserted, cannot be raised efficaciously within the administrative proceedings delineated in the INA." *Id.* at 11 (citing, *inter alia*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991)). Framing its construction of Section 1252(b)(9) in this manner, the First Circuit determined that the provision did not bar review by a district court of the petitioners' substantive due process claim alleging violations of the Fifth Amendment right of parents to make decisions about the care, custody, and control of their children. *Id.* at 19. The First Circuit first determined that although such due process claims "bear some relation to removal," they are only "marginally related" to removal and are not ordinarily addressed by immigration courts. *Id.* The First Circuit further opined that to require channeling of such claims through the administrative process "likely would sound the death knell for meaningful judicial review," which would be inconsistent with Congress's intent to channel claims, not bar them. *Id.* Accordingly, it read Section 1252(b)(9) not to channel due process family integrity claims.[7] *Id.*

The problem with Plaintiffs' reliance on *Aguilar* is the Ninth Circuit's explicit rejection of that argument. Like the Plaintiffs argue here, the plaintiffs in *J.E.F.M.* argued that because their "claims w[ould] never see the light of day through the PFR process, the panel should construe §1252(b)(9) as not covering these claims." *J.E.F.M.*, 837 F.3d at 1035. The Ninth Circuit recognized that this lack of meaningful review argument "stems from dicta in *McNary*" and distinguished *McNary* as a "statutory interpretation case involving a completely different statute" and declined to apply its interpretation to Section 1252(b)(9). *Id.* at 1035–36. The Ninth Circuit further explained that notwithstanding the inability of an immigration judge or the

---

[7] Because the First Circuit had already determined that the claims were only "marginally related" to removal proceedings, *Aguilar*, 510 F.3d at 19, it is not clear that this discussion was necessary to the determination that Section 1252(b)(9) did not channel review over the family integrity claims to courts of appeals. Indeed, under the Ninth Circuit's construction of Section 1252(b)(9), for a claim to fall outside Section 1252(b)(9)'s strictures, the claim need only be independent or collateral to the removal proceedings. *J.E.F.M.*, 837 F.3d at 1032.

BIA to order court-appointed counsel and notwithstanding a failure to raise such a claim in removal proceedings, the court of appeals would have authority to consider such a constitutional claim. *Id*. at 1038. An alien raising such a claim in a petition for review would be exempted from an administrative exhaustion requirement. *Id*. In accordance with *J.E.F.M.*, the Court rejects Plaintiffs' argument and declines to apply *Aguilar*'s construction of Section 1252(b)(9).

Contrary to Plaintiffs' suggestion that they would have no legal avenue to obtain judicial review of the particular claims raised in the Complaint if Section 1252(b)(9) applies, the provision, along with Section 1252(a)(5), expressly provides for judicial review in a petition for review. *See* 8 U.S.C. §§1252(a)(5), (b)(9). That review includes "policy and practice" challenges, like the ones Plaintiffs raise here. *J.E.F.M.*, 837 F.3d at 1035. Plaintiffs' inability to seek immediate review of their claims in this Court should not be confused with the absence of any legal avenue to obtain judicial review.

The Court acknowledges that there is a paucity of petitions for review raising the precise claims Plaintiffs press here.[8] However, the Court does not view this paucity of petitions as affirmatively showing that the Plaintiffs cannot raise in a petition for review claims based on the conduct at issue in the Complaint. The lack of direct examples may be more attributable to the particular framing of the pleadings before this Court or the novelty of the challenges Plaintiffs raise, rather than an inability of or refusal by the courts of appeals to address their challenges through petition for review process. Moreover, at a certain level of generality, as Defendants suggest (ECF No. 45), there are examples of petitions for review challenging Fourth Amendment and Fifth Amendment violations resulting from the actions of immigration officers during initial arrest and detention, and violations of regulatory

---

[8] The Court requested supplemental briefing from Defendants to identify such examples and the examples provided did not necessarily present the claims pressed by Plaintiffs in the Complaint. (*See* ECF Nos. 43, 45.)

rights afforded to immigrants in removal proceedings. *See, e.g., Sanchez v. Sessions*, 870 F.3d 901 (9th Cir. 2017) (challenge to denial of petitioner's motion to suppress and terminate proceedings for violations of Fourth Amendment and immigration regulation during initial apprehension); *Armas-Barranzuela v. Holder*, 566 Fed. App'x 603 (9th Cir. 2014) (challenge to denial of petitioner's motion to suppress evidence of alienage and terminate proceedings based on Fourth Amendment challenge to lawfulness of federal arrest); *Puc-Ruiz v. Holder*, 629 F.3d 771 (8th Cir. 2010) (challenge of denial  of petitioner's motion to suppress based on Fourth Amendment violations during arrest, post-arrest Fifth Amendment violations by immigration officers, and violation of 8 C.F.R. §§287.3(a),(c) where arresting officer interviewed petitioner); *Leslie v. A.G.*, 611 F.3d 171 (3d Cir. 2010) (Fifth Amendment challenge based on IJ's alleged failure to advise petitioner of availability of free legal services as required by immigration regulations).[9]  To the extent Plaintiffs assert that Defendants' alleged policy and practice violates or denies them statutory or regulatory rights under the INA and its implementing regulations, these examples confirm that Plaintiffs have recourse to the courts of appeals through the petition for review process.

Finally, the Court's conclusion that Plaintiffs' claims are subject to the jurisdiction-channeling of Section 1252(a)(5) and 1252(b)(9) should also not be read to suggest that the Plaintiffs are without the ability to assert challenges that are independent of or collateral to the removal process.  Although the Complaint does not seek relief based on the conditions of Plaintiffs' detention, the Complaint contains

---

[9] The Court further observes the oddity of the notion that the conduct Plaintiffs challenge here would fall outside the expansive scope of judicial review in the petition for review process.  These examples show that petitioners regularly assert constitutional and regulatory challenges to conduct occurring at the point of initial arrest and detention by immigration officers and conduct by immigration judges during the removal hearing itself. It is hard to imagine how or why claims concerning these two points in the removal process would be cognizable in a petition for review, but conduct occurring at an intermediate point while immigrants in custody are awaiting the initial Master Calendar Hearing would not.

several allegations touching on such conditions. In particular, Plaintiffs allege that: individuals detained at Otay and Imperial are detained in pods or units of 60 to 80 individuals, where they spend most of their day and cannot leave without permission; detainees have limited "yard" time; calls from the detention centers to family, friend, and counsel are expensive and require an account with the centers; detainees may work but do not receive more than $1 dollar per day; the facility schedule dictates detainees' meals, bedtime, and wakeup time; the remote location of the Imperial facility prevents non-legal visits from family and friends; the Otay facility requires detainees to agree to a strip search to be with visitors in the same room. (ECF No. 1 ¶¶50–57.) To the extent Plaintiffs believe that these detention conditions violate any constitutional or statutory rights, the Court readily acknowledges that such claims are collateral to removal proceedings and grants Plaintiff leave to amend their Complaint to seek corresponding relief.

### 3. Section 1252(b)(9) and Detention Challenges

Notwithstanding that their claims arise from the removal process, Plaintiffs contend that because they raise a detention challenge, the strictures of Section 1252(b)(9) are inapplicable. (ECF No. 35 at 14.) At oral argument, counsel for Plaintiffs clarified the extent of their assertion: it is their position that detention challenges always fall outside the scope of Section 1252(b)(9). (ECF No. 44 at 6:15–20.) This broad assertion has given the Court pause because of the important questions it raises about the scope of Section 1252(b)(9) and detention challenges, and the fact that Plaintiffs invoke habeas jurisdiction under 28 U.S.C. §2241. The Court concludes that Plaintiffs' artful framing of their claims as a "detention challenge" cannot save their claims from the jurisdiction-channeling of Sections 1252(a)(5) and Section 1252(b)(9).

### a. Statutory Text and Interpretation

Addressing Plaintiffs' argument regarding detention challenges requires a review of the purpose and legislative history underlying Section 1252(b)(9) in

relation to habeas jurisdiction. Mindful that interpretation of the relevant words in a statute cannot be conducted in a vacuum, this Court looks to the statutory history and purpose underlying Section 1252(b)(9) on this issue. *See Cty. of Amador v. United States Dep't of the Interior*, 872 F.3d 1012, 1021 (9th Cir. 2017).

Section 1252(b)(9) expressly circumscribes the availability of federal habeas jurisdiction:

> Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review [a final order of removal] or such questions of law or fact.[10] 8 U.S.C. §1252(b)(9).

When Section 1252(b)(9) was initially enacted with the Illegal Immigration Reform and Immigrant Responsibility Act, PUB. L. NO. 104–208, 110 STAT. 3546 (1996), it did not contain this language, but rather contained only the language regarding the scope of judicial review over final orders of removal. In reviewing the original language in *I.N.S. v. St. Cyr*, the Supreme Court determined that this prior version of Section 1252(b)(9) did not clearly strip the courts of habeas jurisdiction over immigrants who had committed crimes. 533 U.S. at 314. In the 2005 REAL ID Act, Congress amended Section 1252(b)(9) with the foregoing text to address "anomalies created by *St. Cyr*" which permitted criminal aliens to seek review in district court while limiting other aliens to review in the courts of appeals. *See* H.R. REP. NO. 109–72, at 174. The amendment "eliminate[s] federal habeas corpus jurisdiction over final orders of removal *in favor of* petitions for review that raise 'constitutional claims or questions of law.'" *Nadarajah v. Gonzales*, 443 F.3d 1069,

---

[10] The phrase "such questions of law or fact" plainly refers to Section 1252(b)(9)'s preceding sentence regarding consolidation of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions" arising from removal proceedings. 8 U.S.C. §1252(b)(9).

– 34 –

1075 (9th Cir. 2006) (quoting 8 U.S.C. §1252(b)(9)) (emphasis added).  Under the REAL ID Act's amendment, all aliens are limited "to one bite of the apple with regard to challenging an order of removal."  *Singh*, 499 F.3d at 977.[11]

Plaintiffs' argument follows not from the statutory text, but from the House Report accompanying the 2005 REAL ID Act amendments.  The House Report states that the amendment to Section 1252(b)(9) "would not preclude habeas review over challenges to detention that are *independent of* challenges to removal orders."  *Id.* at 978 (quoting H.R. REP. NO. 109–72, at 175, 2005 U.S.C.C.A.N. 240, 299) (emphasis added)).  It is this language and its interpretation by the First Circuit in *Aguilar* on which Plaintiffs rely. (ECF No. 35 at 14.)  Although *Aguilar* was not a detention challenge, the First Circuit opined *in dicta* that "when it passed the REAL ID Act, Congress stated unequivocally that the channeling provisions of section 1252(b)(9) should not be read to preclude 'habeas review over challenges to detention.'"  *Aguilar*, 510 F.3d at 11 (citing H.R. REP. NO. 109–72, at 175).  This reading of the relevant legislative history appears to omit the qualifying language used in the House Report, which centers the inquiry on whether the detention challenge is "independent of" an order of removal. [12]  The Ninth Circuit's review of the 2005 REAL ID Act amendment to Section 1252(b)(9) expressly acknowledges the qualification set forth

---

[11] The Court observes that at least two prior cases in this District determined that Section 1252(b)(9) did not affect habeas jurisdiction and, therefore, the provision did not affect their jurisdiction to consider the detention challenges raised in those cases.  *See Nguyen v. Fasano*, 84 F. Supp. 2d 1099, 1105–07 (S.D. Cal. 2000); *Duong v. INS*, 118 F. Supp. 2d 1059, 1063 (S.D. Cal. 2000).  The cases, however, preceded the 2005 REAL ID Act amendment to Section 1252(b)(9).

[12] The First Circuit's discussion in *Aguilar* regarding Section 1252(b)(9) and habeas jurisdiction also appears to be broader than the First Circuit precedent on which it relied.  *Aguilar* cited *Hernandez v. Gonzales*, 424 F.3d 42, 42 (1st Cir. 2005), for the proposition that detention challenges are always independent of removal.  *Aguilar*, 510 F.3d at 11.  However, *Hernandez* quoted the relevant text of the House Report on the 2005 amendment to Section 1252(b)(9) limiting habeas review to those challenges that are independent of a final order of removal.  424 F.3d at 32.

in the legislative history. *See Singh*, 499 F.3d at 978 (quoting H.R. REP. NO. 109–72, at 175); *see also, J.E.F.M.*, 837 F.3d at 1034 n.6. The Ninth Circuit was well-aware of *Aguilar* in its most recent interpretation of the scope of Section 1252(b)(9)'s jurisdiction-channeling language. While agreeing with *Aguilar*'s holding that due process right-to-counsel claims must be raised in a petition for review in light of Section 1252(b)(9), the Ninth Circuit did not endorse *Aguilar*'s discussion regarding the impact of Section 1252(b)(9) on detention challenges. *See id.* at 1031–33. Rather, the Ninth Circuit recognized that in amending Section 1252(b)(9), Congress intended "to clarify that federal courts lack habeas jurisdiction over orders of removal . . . *but the operative jurisdiction-channeling language has not changed*. . ." *Id.* at 1034 n.6 (emphasis added). That operative language concerns the channeling of claims "arising from *any* removal-related activity" into the petition for review process. *Id*. at 1031 (emphasis in original).

The congressional purpose underlying Section 1252(b)(9)'s amendment to habeas jurisdiction cannot be divorced from this overarching purpose of Section 1252(b)(9). Plaintiffs' argument, however, would suggest that although Congress intended to preclude habeas review of a final order of removal and consolidate judicial review over all legal questions arising from the removal proceedings solely into a petition for review of that order, Congress nevertheless also intended to permit habeas challenges raising claims arising from removal proceedings prior to the issuance of a final order of removal. This argument falls flat in the face of Section 1252(b)(9)'s text and legislative history. "In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously held sway in regard to removal proceedings." *Aguilar*, 510 F.3d at 9 (citing H.R. Rep. No. 109–72, at 174). Accordingly, the Court does not find persuasive Plaintiffs' argument that detention challenges are categorically outside the scope of the Section 1252(b)(9). The inquiry under Section 1252(b)(9) remains whether Plaintiffs' detention challenge arises from removal proceedings or

is independent of them. *See, e.g., Medina*, 2017 U.S. Dist. LEXIS 114477, at *39–40 (even in a habeas case, the relevant "distinction [is] between claims that are independent of removal proceedings . . . and claims that arise from removal proceedings"). The Court has already answered this inquiry in its earlier analysis.

### b.    Plaintiffs' Request for Habeas Relief

This Court recognizes the fundamental importance of the availability of habeas relief as an important check on unbridled assertions by the legislative and executive branches of the power to detain immigrants. The Court would be remiss not to acknowledge that the Federal Judiciary plays an important role in safeguarding the availability of habeas relief where appropriate.

On repeated occasions, the Supreme Court has been called upon to address whether certain immigration detention statutes may authorize indefinite or prolonged detention of immigrants and whether the statutes may do so without providing a bond hearing. For example, in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court addressed statutory and due process challenges to indefinite detention under 8 U.S.C. §1231(a)(6), which governs detention beyond the ninety-day removal period, where removal is not practicable. The Supreme Court determined that Section 1231(a)(6) does not authorize indefinite detention without a bond hearing and recognized six months as a "presumptively reasonable period of detention." *Id*. at 701. In *Demore v. Kim*, the Supreme Court addressed a due process challenge to mandatory detention under 8 U.S.C. §1226(c), which governs the detention of immigrants convicted of certain crimes. 538 U.S. 510, 517–18 (2003). The Supreme Court determined that detention under Section 1226(c) has "a definite termination point," which is typically "less than the 90 days" identified in *Zadvydas*. *Id*. at 529. Most recently, the Supreme Court has been called upon to address whether immigrants seeking admission to the United States and criminal or terrorist immigrants who are subject to mandatory detention must be afforded bond hearings if detention lasts more than six months as a matter of constitutional due process. *See Jennings v. Rodriguez*, 136

S. Ct. 2489, No. 15-1204, 2016 WL 1182403 (June 20, 2016) (granting writ of certiorari).

The Ninth Circuit has similarly recognized limits to the authority of the government to detain immigrants indefinitely and without certain procedural requirements. For example, in *Casas-Castrillon v. Department of Homeland Security (Casas)*, 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit concluded that Section 1226(c)'s mandatory detention provision applies only during administrative removal proceedings and thereafter the government has discretionary authority under Section 1226(a) to detain non-citizens. *Id.* at 948, 951. The Ninth Circuit concluded that the government may not detain a legal permanent resident for a prolonged period of time without providing a neutral forum, *i.e.* a *Casas* hearing, to contest the necessity of continued detention. *Id.* at 949. The Ninth Circuit has further fleshed out the procedural protections a *Casas* hearing requires and extended the protections to prolonged detention under Section 1231(a)(6). *See Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) (requiring contemporaneous record of *Casas* hearing and establishing clear and convincing evidence standard); *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (extending procedural protections established in Casas to individuals detained under Section 1231(a)(6)).[13] Most recently, the Ninth Circuit has held that certain criminal immigrants initially subject to prolonged mandatory detention under Section 1226(c) are entitled to a bond hearing after six months in detention. *Rodriguez v. Robbins*, 715 F.3d 1127, 1137–39 (9th Cir. 2013); *upheld by Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

Implicit in these Supreme Court and Ninth Circuit decisions is the notion that these are challenges to immigration detention which are collateral to removal proceedings. In these instances, whether Sections 1252(a)(5) and 1252(b)(9) apply

---

[13] In *Diouf*, the Ninth Circuit adopted a definition of "prolonged detention" as detention that "has lasted six months and is expected to continue more than minimally beyond six months." *Diouf*, 634 F.3d at 1092 n.13. By comparison, Plaintiffs allege that they have been in custody less than one to three months. (ECF No. 1 ¶5.)

is simply not a question. Indeed, not a single one of these decisions raised the issue of whether these statutory provisions would preclude habeas review. However, the habeas relief requested by the Plaintiffs here is *fundamentally different* from these decisions and cannot save claims that are otherwise subject to Sections 1252(a)(5) and 1252(b)(9)'s jurisdiction-channeling.[14]

A careful review of the Complaint counsels that while the shell of Plaintiffs' claims is partially in the guise of habeas, the substance of their claims is far from a habeas challenge to the legality of their detention. The Complaint does not identify the statutory basis for any Plaintiff's detention[15], it does not challenge the lawfulness of any immigration detention statute or regulation under which the Plaintiffs may be detained, nor does it assert a challenge to prolonged detention.[16] Rather, the theory underlying the Complaint is that Defendants' policy and practice unreasonably delays immigrants' access to the initial Master Calendar Hearing, at which an

---

[14] Plaintiffs also invoke 8 U.S.C. §1252(e)(2) as a basis for habeas relief, which permits judicial review, in habeas proceedings, of any determinations made under Section 1225(b)(1), limited to three identified determinations: (1) whether the petitioner is an alien, (2) whether the petitioner was ordered removed under Section 1225(b)(1), and (3) whether the petitioner can prove by a preponderance of the evidence that he is a lawful permanent resident, was admitted as a refugee, or was granted asylum. *See* 8 U.S.C. §1252(e)(2). Section 1225(b)(1) in turn concerns inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled. *See* 8 U.S.C. §1225(b)(1). The Complaint does not request review of any of the determinations identified in Section 1252(e)(2).

[15] The statutory basis for an alien's detention is a crucial consideration for a court considering a habeas challenge because "*where an alien falls within the statutory scheme* can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) (emphasis added).

[16] The Defendants have readily acknowledged on multiple occasions that a challenge to prolonged detention post-arrest may be raised in a habeas petition. (ECF No. 44 at 11:22–12:3; ECF No. 45 at 3 n.2 (citing *Miller v. Johnson*, No. 3:14-cv-02263, 2016 WL 4059698 (M.D. Pa. July 5, 2016)).) The Court, likewise, agrees and notes that this case does not present that issue.

immigration judge can advise immigrants of their statutory and regulatory rights and set in motion the scheduling of a custody redetermination. (ECF No. 1 ¶¶5, 58, 68, 78–79, 83, 87–88.) The purported habeas relief Plaintiffs seek is release from custody *only* "to the extent it is necessary for Defendants to comply with their constitutional and statutory obligations." (ECF No. 1 at 23 Prayer for Relief (g).) The exceedingly limited nature of this relief and its inextricable connection with claims that substantively arise from removal proceedings confirms to this Court that Plaintiffs' asserted detention challenge is merely a challenge in the abstract. This is an insufficient basis for the Court to conclude that their claims are collateral to the removal proceedings.

This Court is aware of one federal habeas case in which the court concluded that a detained immigrant's claims of unlawful detention without a prompt assessment of probable cause to arrest and detain in violation of the Fourth and Fifth Amendments were not subject to Section 1252(b)(9). *See Michalski v. Decker*, No. 17-cv-9631, 2018 U.S. Dist. LEXIS 2309 (S.D.N.Y. Jan. 4, 2018). In analyzing whether Section 1252(b)(9) channeled review over the petitioner's claims, the court determined that the provision did not apply because the petitioner was not yet subject to an order of removal. *Id.* at *9. For reasons this Court has already discussed, the Court disagrees with this determination as contrary to the text of Section 1252(b)(9), its underlying purpose, and Ninth Circuit precedent that is binding on this Court. The *Michalski* court further reasoned that its conclusion was confirmed by a DHS regulation, which instructs that consideration by an immigration judge of an application or request "regarding custody or bond . . . shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." *Id.* at *10 (quoting 8 C.F.R. §1003.19(d)). The Court acknowledges that this regulation treats the immigration judge custody redetermination process as separate from removal proceedings. However, the applicable DHS regulations concerning initial custody determinations by DHS officers are based on securing the alien's

appearance at the initial Master Calendar Hearing and are not made by an immigration judge. *See* 8 C.F.R. §§287.3(d) (custody determination made based on standards in 8 C.F.R. part 236), 236.1. It is this earlier custody determination which the Court views as "inextricably linked" with removal proceedings, and it is the point at which Plaintiffs' claims in part arise.

Even if Plaintiffs' argument that detention challenges are always independent of removal proceedings is valid, Plaintiffs' request for habeas relief under Section 2241 would nevertheless be premature. Exhaustion of administrative remedies is necessary where a statute or administrative scheme requires exhaustion. *McKart v. United States*, 395 U.S. 185, 193 (1969) ("No one is entitled to judicial relief for a supposed or threatened injury until the pre-scribed . . . remedy has been exhausted."). Where exhaustion is not mandated by a statute, like Section 2241, exhaustion is still a prudential requirement, the waiver of which is within a court's discretion. *See Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Here, Plaintiffs have administrative remedies available to them to obtain release from custody. Although the *Michalski* court determined that the petitioner's habeas claim was not swept up by Section 1252(b)(9), it denied the petitioner's habeas petition because a bond hearing was scheduled and his release under that hearing would moot his constitutional claims. 2018 U.S. Dist. LEXIS 2309, at *14. Any denial of his release at the bond hearing would also be subject to BIA appellate review. *Id.* at *15. The court declined to excuse the petitioner from exhausting these administrative channels notwithstanding the constitutional challenges he raised. *Id.* Like the petitioner in *Michalski*, Plaintiffs have recourse to custody redeterminations by an immigration judge and did receive a bond hearing after the filing of the Complaint, with Plaintiffs Cancino and Hernandez released from custody. (ECF No. 28-1 at 8–10, Ex. E (Cancino's proof of release from custody), Ex. M (Hernandez's proof of release from custody)). Although Plaintiff Gonzalez appears to remain in detention (ECF No. 35 at 8), he does not plead that he requested a custody redetermination and was denied

– 41 –

relief.

Accordingly, the Court rejects the argument that Plaintiffs' invocation of habeas relief saves their claims from application of Sections 1252(a)(5) and 1252(b)(9). In any event, their claims would be premature until they have exhausted the remedies available to them to seek release.

## IV. CONCLUSION & ORDER

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

1. The Court **GRANTS** Defendants' motion to dismiss for lack of jurisdiction under 8 U.S.C. §§1252(a)(5) and (b)(9). Because the Court lacks jurisdiction under these provisions, the Court **DISMISSES** the Complaint.

2. The Court **GRANTS** Plaintiffs leave to amend their Complaint to assert claims over which this Court may properly exercise jurisdiction. Plaintiffs may file an amended Complaint **no later than March 9, 2018**. Failure to file an amended Complaint will result in dismissal of this action.

3. Because the Court concludes that it lacks jurisdiction over the claims asserted in the Complaint, the Court **TERMINATES AS MOOT** Plaintiffs' motion for class-certification. (ECF No. 2.) If Plaintiffs file a new Complaint which asserts claims independent of removal proceedings, they may file a new motion for class-certification based on those claims.

**IT IS SO ORDERED.**

**DATED: February 8, 2018**

Hon. Cynthia Bashant
United States District Judge