# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORLANDO CANCINO-CASTELLAR, *et al.*,<br><br>　　　　Plaintiff-Petitioners,<br><br>v.<br><br>KIRSTJEN NIELSEN, Secretary, U.S. Department of Homeland Security, *et al.*,<br><br>　　　　Defendant-Respondents. | Case No. 17-cv-0491-BAS-BGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION**<br><br>**[ECF No. 50]** |

Before the Court is a motion for reconsideration of the Court's February 8, 2018 order (the "Order") dismissing the Complaint for lack of jurisdiction, filed by Plaintiff-Petitioners Jose Orlando Cancino-Castellar, Ana Maria Hernandez Aguas, and Michael Gonzalez, (collectively, "Plaintiffs"). (ECF No. 50.) Defendants[1]

---

[1] Defendants are: Kirstjen Nielsen, Secretary of the U.S. Department of Homeland Security ("DHS"); Thomas Homan, Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Kevin K. McAleenan, Acting Commissioner of U.S. Customs and Border Protection ("CBP"); Gregory Archambeault, Field Office Director for the San Diego Field Office of ICE; Jefferson B. Sessions III, Attorney General of the United States; and Juan P. Osuna, Director of the Executive Office for

oppose the motion (ECF No. 53) and Plaintiffs have replied (ECF No. 55). For the reasons herein, the Court grants in part and denies in part Plaintiffs' motion.

## RELEVANT BACKGROUND[2]

Plaintiffs filed the putative class action complaint and habeas petition (the "Complaint"), alleging that Defendants have a "policy and practice of detaining individuals for extended periods without promptly presenting them for an initial hearing before an immigration judge or promptly seeking judicial review of probable cause for detention." (Compl. ¶¶ 1, 4–6.) Each Plaintiff was taken into custody by various immigration enforcement agencies and detained pursuant to Defendants' alleged policy. (*Id.* ¶¶ 47–49.) Plaintiffs alleged that "many individuals" who have claims to relief from removal "routinely languish in detention for two months or longer before they see a judge" because of Defendants' alleged policy. (*Id.* ¶ 1.)

The Complaint challenged Defendants' conduct as violating (1) detained individuals' Fifth Amendment procedural and substantive due process rights by causing detention without prompt presentment, (2) their Fourth Amendment rights to a prompt judicial determination of whether probable cause justifies their detention, and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1), 706(2)(A)–(D). (*Id.* ¶¶ 38–44, 75–80 (Fifth Amendment); *id.* ¶¶ 81–84 (Fourth Amendment); *id.* ¶¶ 85–90 (APA).) Plaintiffs requested declaratory relief, an injunction, and the issuance of a writ of habeas "commanding the release of Plaintiff-Petitioners and class members from detention to the extent necessary for Defendants-Respondents to comply" with Plaintiffs' view of the law. (*Id.* at 23.) Defendants moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 28.)

---

Immigration Review ("EOIR"). (ECF No. 1.)

[2] The Court's Order discusses in detail the factual allegations and history of this case. (ECF No. 49 at 3–11.) The Court does not recount that background here.

On February 8, 2018, the Court granted Defendants' motion to dismiss for lack of jurisdiction. (ECF No. 49.) The Court determined that it lacks jurisdiction over Gonzalez's Fourth Amendment probable cause claim pursuant to 8 U.S.C. § 1252(g) because he was initially placed into mandatory detention as a result of expedited removal proceedings. (*Id.* at 15.) The Court further determined that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) deprive it of jurisdiction over Cancino's and Hernandez's Fourth Amendment claims and all Plaintiffs' Fifth Amendment claims because those claims arise from removal proceedings. (*Id.* at 22–27.) The Court concluded that the statutory provisions require the Plaintiffs to raise these claims in in a petition for review ("PFR"). (*Id.*) Lastly, the Court determined that Plaintiffs' request for habeas relief did not prevent the channeling of their claims. (*Id.* at 33–41.) The Court dismissed the Complaint, but granted Plaintiffs leave to amend "to assert claims over which th[e] Court may properly exercise jurisdiction." (*Id.* at 42.)

On February 27, 2018, the Supreme Court decided *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Because the decision provides new analysis on Section 1252(b)(9), Plaintiffs moved for reconsideration of the Order's Section 1252(b)(9) conclusions. (ECF No. 50.) Plaintiffs' deadline to file an amended complaint is vacated pending resolution of the motion. (ECF No. 51.)

**LEGAL STANDARD**

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. IJ, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion to reconsider must (1) show some valid reason why the court should reconsider its prior decision, and (2) set forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180 (D. Nev. 2003) (citing *All Hawaii Tours Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648-49 (D. Haw. 1987), *rev'd on other grounds*, 855 F.2d 860 (1988)).

# DISCUSSION

**A.  The Scope and Application of Section 1252(b)(9)**

The parties dispute whether *Jennings* supports the Court's conclusion that it lacks jurisdiction over the claims asserted in the Complaint pursuant to 8 U.S.C. § 1252(b)(9). (ECF Nos. 50, 53, 55.) To resolve this dispute, the Court first considers (1) the statutory text and its pre-*Jennings* interpretation, (2) the Supreme Court's analysis in *Jennings*, and (3) *Jennings*' departures from prior Ninth Circuit precedent.

## 1. Statutory Text and Pre-*Jennings* Interpretation

As the Court has observed, Section 1252(a)(5) is central to Section 1252(b)(9)'s scope.  The former establishes that "a petition for review filed with the appropriate court of appeals . . . shall be the sole and exclusive means for review of an order of removal entered or issued under any provision of this chapter[.]"  8 U.S.C. § 1252(a)(5).  Section 1252(b)(9) in turn provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter [including §§ 1225 and 1226] shall be available only in judicial review of a final order[.]"  8 U.S.C. § 1252(b)(9).  Thus, Section 1252(b)(9) consolidates judicial review into a PFR of a final order.  The provisions also expressly preclude habeas jurisdiction as a means of review, outside of a PFR, of a final order of removal.  8 U.S.C. §§ 1252(a)(5), (b)(9).

Prior to *Jennings*, the Supreme Court discussed Section 1252(b)(9) twice.  In its first pass, the Court characterized Section 1252(b)(9) as an "unmistakable zipper clause," which consolidates judicial review of "all decisions and actions" in the removal process.  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) [hereinafter "*AAADC*"].  In its second pass, the Court reaffirmed that the provision's "purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals."  *INS v. St. Cyr*, 533 U.S. 289, 313 (2001).  But, based on its text at the time, the Court also determined that Section 1252(b)(9)

"by its own terms, d[id] not bar habeas jurisdiction over removal orders not subject to judicial review under § 1252(a)(1)" and emphasized that the term "judicial review . . . is a term historically distinct from habeas." *Id.* at 313. The 2005 REAL ID Act superseded *St. Cyr*'s interpretation to address "anomalies created by *St. Cyr*," H.R. Rep. No. 109–72, at 174, by "clarify[ing] that federal courts lack habeas jurisdiction over orders of removal" while leaving intact the "operative jurisdiction-channeling language[.]" *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031, 1034 n.6 (9th Cir. 2016).

The Ninth Circuit's pre-*Jennings* precedent reflects three points. First, pre-*Jennings* Ninth Circuit precedent indicated that Sections 1252(a)(5) and 1252(b)(9) are "not jurisdiction-stripping statutes that, by their terms, foreclose all judicial review," but rather "bypass the district court" and "channel judicial review over final orders of removal to the courts of appeals" in a petition for review ("PFR"). *J.E.F.M.*, 837 F.3d at 1031, 1033; *see also Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (the provisions "limit all aliens to one bite of the apple with regard to challenging an order of removal." (quoting *Singh v. Gonzales*, 499 F.3d 969, 976 (9th Cir. 2007)).

Second, pre-*Jennings* Ninth Circuit precedent noted that the provisions have "built-in limits" "[b]y channeling only those questions 'arising from any action taken or proceeding brought to remove an alien[.]'" *J.E.F.M.*, 837 F.3d at 1032. "[C]laims that are independent of or collateral to the removal process" are not channeled. *Id.* Pre-*Jennings*, the Ninth Circuit provided examples of when claims do and do not "arise from" removal proceedings or an action taken to remove an alien. *Contrast Singh*, 499 F.3d at 979 (permitting ineffective-assistance-of-counsel claim for conduct occurring after final order of removal to be raised in a habeas petition in district court, but barring similar claim for conduct that arose before final order of removal) *and Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006) (permitting habeas claim in district court raised by an alien plaintiff who "prevailed at every administrative level" and was granted asylum, yet remained in

administrative detention for five years) *with J.E.F.M.*, 837 F.3d at 1034 (no district court jurisdiction over due process right-to-counsel claims raised by immigrant minors in removal proceedings prior to the issuance of a final order of removal) *and Martinez*, 704 F.3d at 623 (district court lacked jurisdiction over APA challenge to BIA's denial of removal relief because alien "had his day in court and an opportunity to argue 'all questions of law and fact' arising from his removal proceedings").

Finally, pre-*Jennings* Ninth Circuit precedent broadly held that, "Sections 1252(a)(5) and 1252(b)(9) mean that *any* issue . . . arising from any removal-related activity can be reviewed only through the PFR process." *J.E.F.M.*, 837 F.3d at at 1031 (emphasis in original); *id.* at 1034 (Section 1252(b)(9) "make[s] perfectly clear . . . that 'review of a final order of removal is the only mechanism for reviewing any issue raised in a removal proceeding'[]" (quoting H.R. Rep. No. 109–72, at 173)). The Ninth Circuit expressly rejected the notion that an asserted lack of "meaningful review" of a claim in the PFR process could "circumvent an unambiguous statute." *J.E.F.M.*, 837 F.3d at at 1036.[3]

### 2. *Jennings v. Rodriguez*'s Jurisdictional Analysis

In *Jennings*, the plaintiff aliens sought injunctive and declaratory relief and habeas on behalf of themselves and a class. *Jennings*, 138 S. Ct. at 838. They challenged the government's authority to detain non-citizens for longer than six months pending completion of removal proceedings pursuant to the general

---

[3] The Ninth Circuit viewed the argument as inapposite because "it stem[med] from *dicta* in *McNary* [*v. Haitian Refugee Center*]," which was "a statutory interpretation case involving a completely different statute." *J.E.F.M.*, 837 F.3d at 1035–36. In *McNary*, the Supreme Court determined that the judicial review provisions of the Immigration Reform and Control Act ("IRCA") concerning the Seasonal Agricultural Workers ("SAW") program did not bar jurisdiction over SAW-related pattern and practice claims. *McNary*, 498 U.S. 479, 483–84, 491–94 (1991). The Supreme Court observed that "if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review" of their claims. *Id.* at 496.

immigration detention statutes. *Id.* at 839 ("In their complaint, Rodriguez and the other respondents argued that the relevant statutory provisions—[8 U.S.C.] §§ 1225(b), 1226(a), and 1226(c)—do not authorize 'prolonged' detention in the absence of an individualized bond hearing[.]"). The district court had certified a class and issued an injunction, which the Ninth Circuit affirmed by interpreting the detention statutes as requiring a bond hearing every six months pursuant to the canon of constitutional avoidance. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

Before reversing the Ninth Circuit's interpretation of the detention statutes, the Supreme Court addressed Section 1252(b)(9) as a "potential obstacle[]" to jurisdiction. With only eight justices, the Court was fragmented in its views. *Jennings*, 138 S. Ct. at 839–841 (Alito, J., joined by Roberts, C.J. and Kennedy, J.) (jurisdiction); *id.* at 853–859 (Thomas, J., concurring, joined by Gorsuch, J.) (no jurisdiction); *id.* at 876 (Breyer, J., dissenting, joined by Ginsburg, J. and Sotomayor, J.) (jurisdiction).

Justice Thomas took the broadest view of Section 1252(b)(9). He first observed that, "[i]f an alien raises a claim arising from such an action or proceeding, courts cannot review it unless they are reviewing a 'final order' under § 1252(a)(1) or exercising jurisdiction otherwise provided in § 1252," a limitation that habeas could not avoid. *Id.* at 853–54. Justice Thomas concluded that Section 1252(b)(9) barred jurisdiction because "claims challenging detention during removal proceedings . . . fall within the heartland of § 1252(b)(9)." *Id.* at 854. In contrast, Justice Breyer determined that Section 1252(b)(9) "by its terms applies only '[w]ith respect to review of an order removal under [§ 1252(a)(1)]," but "[r]espondents challenge their detention without bail, not an order of removal." *Id.* at 876.[4]

---

[4] Plaintiffs suggest that the Court could adopt Justice Breyer's view. As Justice Thomas observed, however, "the prefatory clause and § 1252(b)(9) mean that review of all questions arising from removal must occur in connection with review of a final removal order under § 1252(a)(1), which makes sense given that § 1252(b)(9) is meant to '[c]onsolidat[e] . . . questions for judicial review.'" *Jennings*, 138 S. Ct. at

Justice Alito took a middle approach—he did not find jurisdiction simply because there was no final order of removal, nor did he conclude there was no jurisdiction simply because the plaintiffs were in removal-related detention. He first asked what legal question the Court had to decide, which he identified as "whether . . . certain statutory provisions require detention without a bond hearing." *Id.* at 840. "[A]ssum[ing] . . . that the actions taken with respect to all aliens in the certified class constitute 'action[s] taken . . . to remove [them],'" Justice Alito inquired whether the legal question arose from these actions. *Id.*

In concluding that the legal question did not arise from the acts covered by Section 1252(b)(9), Justice Alito first rejected an "expansive" interpretation of "arising from" that would bar jurisdiction simply because the aliens would not be in custody at all if actions to remove them had never been taken. *Id.* at 840. Providing as examples a *Bivens* challenge to inhumane confinement conditions, a state claim against a guard or fellow detainee for assault, and a tort suit, Justice Alito opined that "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* Second, Justice Alito rejected this "extreme way" of interpreting "arising from" because it "would also make claims of prolonged detention effectively unreviewable." *Id.* He explained that a detainee would have no "meaningful chance for judicial review" because a final order might never enter and even if one "eventually" did, the allegedly excessive detention would have already occurred. *Id.* Third, Justice Alito cautioned that "when confronted with capacious phrases like arising from, we have eschewed uncritical literalism leading to results that no sensible person could have intended." *Id.* (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (international quotations omitted)).

Not "attempt[ing] to provide a comprehensive interpretation," Justice Alito concluded it was jurisdictionally "enough" that "respondents are not asking for review

---

856.

of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not challenging any part of the process by which their removability will be determined." *Id.* at 841. He expressly rejected Justice Thomas's view that Section 1252(b)(9) bars jurisdiction over removal-related detention. Justice Alito reasoned that "[t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action," questions which Justice Alito deemed "too remote from the actions taken to fall within the scope of §1252(b)(9)." *Id.* at 841 n.3 (emphasis in original).

### 3. *Jennings*' Relevant Departures from Ninth Circuit Precedent

Justice Alito's view of Section 1252(b)(9) departs from two aspects of pre-*Jennings* Ninth Circuit precedent on which the Court relied when it dismissed the Complaint for lack of jurisdiction. First, the Court expressly relied on prior Ninth Circuit precedent which contemplated a broad scope for Section 1252(b)(9). The Ninth Circuit expressly characterized Section 1252(b)(9) as "'breathtaking' in scope and 'vise-like' in grip," which "swallows up virtually all claims that are tied to removal proceedings." *J.E.F.M.*, 837 F.3d at 1031 (quoting *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)). This precedent may treat Section 1252(b)(9) too broadly in light of the *Jennings* plurality's rejection of an "expansive" interpretation of "arising from" that would sweep a claim into Section 1252(b)(9) simply because an alien is in removal proceedings or a removal action was taken. Pre-*Jennings* Ninth Circuit precedent also instructed that claims "independent of or collateral to the removal process do not fall within the scope of Section 1252(b)(9)," but unlike *Jennings*, it did not identify what such claims would be for aliens with pending removal proceedings. *Contrast Jennings*, 138 S. Ct. at 840 *with J.E.F.M.*, 837 F.3d at 1032.[5] Justice Alito's

---

[5] *J.E.F.M.* relied on First Circuit precedent which expressly identified detention challenges and infringement of the right to family integrity as claims that would not fall within Section 1252(b)(9). *See Aguilar*, 510 F.3d 1, 11–12, 19 (1st Cir. 2007). *J.E.F.M.*, however, did not expressly adopt these examples.

identification of aspects of the immigration removal process over which a court ostensibly lacks jurisdiction and claims that fall outside Section 1252(b)(9)'s scope provides important guidance on the statute's scope.

Second, the Court relied on pre-*Jennings* Ninth Circuit precedent which rejected the argument that Section 1252(b)(9) could not bar district court jurisdiction over a claim that cannot be meaningfully reviewed in the PFR process. (ECF No. 49 at 30–31); *see J.E.F.M.*, 837 F.3d at 1035–38. Justice Alito's analysis counsels that courts should consider whether an "extreme" interpretation of "arising from" in Section 1252(b)(9) would make a claim "effectively unreviewable." *Jennings*, 138 S. Ct. at 840. Justice Alito expressly identified "claims of prolonged detention" as effectively unreviewable, but his analysis did not end there. Rather, he explained further that the *Jennings* plaintiffs did not otherwise challenge the initial decision to detain or remove them or the removal process. *Id.* at 840–841. This elaboration provides context which shows that there is no freestanding exception to Section 1252(b)(9) based on whether claims are effectively unreviewable, as Plaintiffs appear to suggest. (ECF No. 50-1 at 3 ("The issue whether claims are effectively unreviewable is a much easier question to answer than whether they are 'inextricably linked' with removal proceedings.").) Rather, a court must ask whether the claims otherwise challenge issues that are cognizable in the PFR process. With these points in mind, the Court reconsiders whether it has jurisdiction.

## B. Jurisdiction Over the Complaint Post-*Jennings*

Plaintiffs characterize *Jennings* as concerning "prolonged detention without certain procedural safeguards." (ECF No. 50-1 at 1.) Based on this characterization, they contend that their claims are "indistinguishable" from those in *Jennings* "for jurisdictional purposes" and thus *Jennings* "controls" jurisdiction. (ECF No. 50-1 at 1, 7–14; ECF No. 55 at 2–6.) Plaintiffs' characterization of *Jennings*, however, extends it beyond its narrower legal question and elides the case-specific inquiry reflected in Justice Alito's analysis of whether Section 1252(b)(9) bars jurisdiction.

Pursuant to that inquiry, a court should first identify what legal (or factual) question the plaintiff raises and then determine whether that question "arises from" an action taken to remove an alien or removal proceedings. *Jennings*, 138 S. Ct. at 840. With the benefit of Justice Alito's analysis, the Court considers whether Section 1252(b)(9) bars jurisdiction over the particular legal questions raised by Plaintiffs' Fourth and Fifth Amendment claims.

### 1. Fourth Amendment Probable Cause Claim

Plaintiffs' Fourth Amendment claim raises the legal question of whether the Amendment "permit[s] the government to detain individuals without prompt judicial determination of whether probable cause justifies their detention." (Comp. ¶ 82.) Plaintiffs refine this question to be whether such a probable cause determination must occur within 48 hours of an individual being taken into immigration custody by an immigration officer. (*Id*. ¶ 46.) As Defendants recognize (ECF No. 53 at 3), the legal question raised by Plaintiffs' Fourth Amendment claim arises from aspects of the removal process over which Justice Alito indicated Section 1252(b)(9) would bar jurisdiction.

For one, the claim plainly "challeng[es] the decision to detain them in the first place[.]" *Jennings*, 138 S. Ct. at 841. The claim expressly challenges "*decisions* to keep persons in custody beyond 48 hours and before their initial Master Calendar Hearing [that] *are made by DHS officers* alone without prompt judicial review." (Compl. ¶ 46 (emphasis added); *id*. ¶¶ 4, 22.) The question of whether the Fourth Amendment requires "judicial review" of that decision within 48 hours is far from a claim of prolonged detention "remote" from the initial decision to detain. Second, and relatedly, the claim "challeng[es] the decision . . . to seek removal" in the first place. *Jennings*, 138 S. Ct. at 841. The "probable cause" procedure Plaintiffs seek is one in which an immigration officer's determination that an individual is removable from the United States is "promptly reviewable." Plaintiffs recognize that "[n]ot all persons facing removal proceedings are detained" and "the government

– 11 –

17cv491

routinely pursues removal . . . against non-detained individuals[.]" (ECF No. 50-1 at 9; ECF No. 55 at 5.) These points, however, mean little in Plaintiffs' circumstances. The Complaint recognizes that individuals like the Plaintiffs are taken into ICE custody because immigration officers suspect them of being aliens removable from the United States.[6] Even though custody and removability are distinct, Plaintiffs' "probable cause" claim concededly does not involve the former. Plaintiffs aver that none of the purely custodial questions in a bond hearing, such as whether an alien is a flight risk or a danger to the community, is "at issue here."[7] (ECF No. 50-1 at 17.) It is clear to the Court that this claim concerns the mere fact that an immigration officer has taken any action at all against the Plaintiffs and the putative class.

For this reason, the Court must reject Plaintiffs' contention that the Court may exercise jurisdiction over their Fourth Amendment claim on the ground that it is effectively unreviewable because it also involves detention. The detention-framing of the Complaint makes addressing the impact of Section 1252(b)(9) on Plaintiffs' Fourth Amendment claim challenging. But, as the Court has explained, Justice Alito's analysis should not be read to fashion a free-standing exception to Section 1252(b)(9) based on the mere assertion that a claim is effectively unreviewable or challenges "prolonged detention." As Justice Alito himself confirmed, a court must decide whether the legal or factual *question* a plaintiff raises arises from an action

---

[6] Plaintiffs do not allege a policy in which individuals are detained without probable cause to believe they are aliens removable from the United States, nor do they seek relief premised on whether an individual is in fact not an alien. The Court does not address whether Section 1252(b)(9) would apply in those circumstances.

[7] Plaintiffs' Fourth Amendment claim is fundamentally different from the bond hearing claim at issue in *Jennings* in this regard. The *Jennings* plaintiffs expressly sought access to bond hearings to justify their continued detention. *Jennings*, 138 S. Ct. at 838, 839. The plaintiffs in *Jennings* did not claim that the government lacked probable cause to detain them in the first place or that the Constitution requires a procedure for determining probable cause to detain with days of an initial apprehension and detention.

taken to remove or the removal process. *Jennings*, 138 S. Ct. at 840. At its core, Plaintiffs' Fourth Amendment probable cause claim does so.

Finally, Plaintiffs cannot tenably argue that the Court may grant a remedy for this claim "without impeding removal proceedings." (ECF No. 50-1 at 1.) Unlike the *Jennings* plaintiffs, Plaintiffs' Fourth Amendment claim does not seek a "procedural safeguard" to justify continued detention *pending removal proceedings*. Instead, Plaintiffs seek a "procedural safeguard" by which a detained individual's removability from the United States is immediately reviewable by an IJ. Although the Court is not insensitive to the notion that the absence of such a procedure unreasonably "extends" detention for individuals detained after being taken into immigration custody, the relief Plaintiffs request is the premise of removal proceedings—assessing whether an individual is removable from the United States and the government's evidence on that issue. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("[W]hether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking."). This issue is clearly cognizable in the PFR process. Accordingly, the Court affirms that it lacks jurisdiction over Plaintiffs' Fourth Amendment probable cause claim pursuant to Section 1252(b)(9).

### 2. Fifth Amendment Prompt Presentment Claim

Plaintiffs' Fifth Amendment claim raises the legal question of whether the Fifth Amendment's Due Process Clause "permit[s] the government to detain Plaintiff-Petitioners or other members of the class without promptly presenting them before a judge." (Compl. ¶ 77.) The claim is premised on the notion that procedural and substantive due process require "prompt presentment" to justify the deprivation of physical liberty that detention represents. (*Id.* ¶¶ 35–39, 41–43.) Based on Justice Alito's analysis in *Jennings*, the Court concludes that Section 1252(b)(9) does not bar jurisdiction over Plaintiffs' Fifth Amendment claim.

At the heart of Plaintiffs' Fifth Amendment claim is the notion that unreasonable delays in the presentment of detained aliens seeing an immigration

judge ("IJ") unconstitutionally extends their detention. (Compl. ¶¶ 40, 44.)[8] As the Court observed in its Order (ECF No. 49 at 5–6, 23–25), the Complaint identifies the initial Master Calendar Hearing ("MCH") as the first appearance before an IJ and a "crucial stage" of removal proceedings. (Compl. ¶¶ 1, 3, 24–34, 44.) The MCH permits an alien to, *inter alia*, learn the charges against him, assess the sufficiency of a Notice to Appear, request a bond hearing, and learn of possible relief from removability. (*Id.* ¶¶ 29–32.) The Court previously understood a claim premised on delays in presentment to an IJ, particularly at the MCH, as swept up by Section 1252(b)(9). (ECF No. 49 at 24–25, 28.) Justice Alito's analysis in *Jennings* alters the Court's conclusion by circumscribing Section 1252(b)(9)'s scope. It is clear to the Court that by challenging Defendants' alleged unreasonable *delays* in presenting detained aliens to an IJ, Plaintiffs' Fifth Amendment claim does not "ask[] for review of an order of removal," or "challeng[e] the decision to detain them in the first place or to seek removal." *Jennings*, 138 S. Ct. at 841. Similarly, they do not "challeng[e] any part of the process by which their removability will be determined," *id.*, but rather the separate conduct of immigration authorities delaying that process and, consequently, the Plaintiffs' detention.

In their motion, Plaintiffs also aver that first presentment need not be an initial MCH. The Complaint expressly alleges that Defendants "confine[] individuals for removal proceedings without . . . [an] automatic custody review hearing before an immigration judge," "commonly called a bond hearing." (Compl. ¶¶ 6, 63.) When Plaintiffs' Fifth Amendment claim is reconsidered in light of this allegation, the claim is more analogous to the bond hearing claim at issue in *Jennings*, with the key

---

[8] In particular, the Complaint alleges that "DHS fails to provide the time, place, and date of the initial [MCH] in the [NTA]" and instead "relies on EOIR to schedule the hearing," which in turn "does not schedule more expeditious initial Master Calendar Hearings for detainees" and "frequently sets the initial Master Calendar Hearing for detained immigration cases in the Southern District of California for one to three months after receiving the Notice to Appear." (Compl. ¶¶ 28, 64–67.)

difference being whether a bond hearing should be "automatic" or more promptly held than it is currently alleged to be.

As in *Jennings*, treating Plaintiffs' Fifth Amendment claim regarding alleged prolonged detention resulting from delays in presentment as "arising from" an action taken to remove an alien would make Plaintiffs' claim "effectively unreviewable." *Jennings*, 138. S. Ct. at 840. Allegedly excessive detention caused by delays in presentment cannot be remedied in a PFR because "by the time a final order was eventually entered, the allegedly excessive detention would have already taken place." *Id.* at 840. And like the plaintiffs in *Jennings*, the Court's analysis shows that Plaintiffs do not challenge aspects of the removal process over which Justice Alito indicated Section 1252(b)(9) would bar jurisdiction. Accordingly, the Court concludes that reconsideration of its dismissal of Plaintiffs' Fifth Amendment claim is warranted, grants Plaintiffs' motion as to that claim, and reinstates the claim.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for reconsideration. (ECF No. 50.) The Court **AFFIRMS** that it lacks jurisdiction over Plaintiffs' Fourth Amendment claim. However, Section 1252(b)(9) does not bar jurisdiction over the Plaintiffs' Fifth Amendment claim and the Court **REINSTATES** the Complaint as to that claim and Plaintiffs' APA claim, to the extent it is based on the same alleged failure to "promptly present."

Consistent with the Court's prior Order, Plaintiffs are nevertheless **GRANTED LEAVE TO AMEND** to assert a challenge to the conditions of confinement at detention facilities in the District. Plaintiffs may file an amended complaint **no later than October 1, 2018**. If they do not file one, Defendants may answer or move to dismiss the Fifth Amendment claim for failure to state a claim pursuant to Rule 12(b)(6) **no later than October 15, 2018**.

IT IS SO ORDERED.

DATED: September 6, 2018

Hon. Cynthia Bashant
United States District Judge