UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE ORLANDO CANCINO
CASTELLAR, et al.,

               Plaintiff-Petitioners,

v.

KEVIN McALEENAN, et al.,

            Defendant-Respondents.

Case No.:  3:17-cv-491-BAS-AHG

**ORDER:**

**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF-PETITIONERS' MOTION TO COMPEL,**

**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT-RESPONDENTS' MOTION FOR PROTECTIVE ORDER,**

**(3) GRANTING PLAINTIFF-PETITIONERS' MOTION TO FILE DOCUMENTS UNDER SEAL, and**

**(4) ISSUING AMENDING SCHEDULING ORDER**

**[ECF Nos. 83, 84, 86]**

Before the Court are Plaintiff-Petitioners' Motion to Compel (ECF No. 86), Defendant-Respondents' Motion for Protective Order (ECF No. 83), and Plaintiff-Petitioners' Motion to File Documents Under Seal (ECF No. 84). For the reasons set forth below, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** and **DENIED IN PART**, Defendant-Respondents' motion for protective order is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff-Petitioners' motion to file documents under seal is **GRANTED**.

## I.    BACKGROUND

This case arises from an alleged policy and practice to delay presentment of detained aliens to an immigration judge. Plaintiff-Petitioners Jose Orlando Cancino Castellar, Ana Maria Hernandez Aguas, and Michael Gonzalez (collectively, "Plaintiff-Petitioners") allege that the Due Process clause requires prompt presentation of aliens in custody, and that the one to three month delay resulting from Defendant-Respondents'[1] policy and practice violates this requirement. Among other things, Plaintiff-Petitioners claim that this delay interferes with aliens' access to a variety of rights, including the right to a hearing to determine whether they can post bond to be released from custody pending the outcome of the proceeding. *See* ECF No. 63 at 1–11 (describing, in depth, the factual and procedural background of the case); *see also* ECF No. 1 at ¶¶ 38–40, 75–78 (procedural due process); *id*. at ¶¶ 41–44, 75–77, 79 (substantive due process). Plaintiff-Petitioners also assert claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(2)(A)–(D). *Id*. at ¶¶ 85–90. Plaintiff-Petitioners challenge what they allege is "Defendant-Respondents' policy and practice of detaining individuals for extended periods of time without promptly presenting them for an initial hearing before an immigration judge[.]" *Id*. at ¶¶ 1, 58. Implementation

---

[1]  Defendant-Respondents are various federal immigration officials who oversee immigration enforcement nationally and locally in the Southern District of California. *See* ECF No. 63 at 1 n.1.

of this policy is allegedly shared by DHS and its components, ICE and CBP, and EOIR—entities over which the named Defendant-Respondents possess authority.

Plaintiff-Petitioners seek to represent a class of "[a]ll individuals in the Southern District of California, other than those with final orders of removal, who are or will be detained by DHS more than 48 hours without a hearing before an immigration judge[.]" *Id.* at ¶ 68. Plaintiff-Petitioners request "declaratory, injunctive, and habeas corpus relief that will prevent Defendant-Respondents from detaining individuals for an unreasonable period before presentment to a judge[.]" *Id.* at ¶¶ 8, 91.

Defendant-Respondents moved to dismiss Plaintiff-Petitioners' Fifth Amendment and corresponding APA claims. ECF No. 60. The Court granted in part and denied in part the motion, dismissing Plaintiff-Petitioner Gonzalez's procedural due process claim and Plaintiff-Petitioners' Section 706(1) APA claims. ECF No. 63 at 41–42. The following claims survived Defendant-Respondent's motion to dismiss:

1. Plaintiff-Petitioners Cancino's, Hernandez's, and Gonzalez's substantive due process claims. ECF No. 63 at 25–27, 41 (holding that all Plaintiff-Petitioners, including Gonzalez, an alien, plausibly alleged substantive due process claims, because "circumstances of Plaintiff-Petitioners' detention show that the Due Process Clause imposes a substantive constraint on the Government's detention of Plaintiff-Petitioners without prompt presentment to an immigration judge" and "Plaintiff-Petitioners have plausibly alleged conduct that 'shocks the conscience' in their continued detention without a prompt first appearance before an immigration judge").

2. Plaintiff-Petitioners Cancino's and Hernandez's procedural due process claims. ECF No. 63 at 31–38 (holding that Plaintiff-Petitioners Cancino and Hernandez plausibly alleged procedural due process claims, because "the risk of an erroneous deprivation of physical liberty[, ] compounded by language barriers, 'lack of sophistication regarding complex immigration laws,' and 'ignorance of procedures for seeking a bond hearing' … plausibly show a

meaningful risk of erroneous deprivation" and the "probative value of the additional safeguard Plaintiff-Petitioners seek" does not seem to "impose a burden on Defendant-Respondents at the motion to dismiss stage.").

3.    Plaintiff-Petitioners' Section 706(2)(A), (B), (C), and (D) APA claims. ECF No. 63 at 42–45 (holding that Plaintiff-Petitioners plausibly alleged Section 706(2) claims because they invoke the APA "as means to seek review of agency action in the context of the claimed due process rights" and because the Court had already "concluded that all Plaintiff-Petitioners state constitutional due process claims.").

## II.    PROCEDURAL POSTURE

On October 11, 2019, pursuant to the Court's Chambers Rules, the parties jointly emailed the Court to request a telephonic conference regarding multiple ongoing discovery disputes. *See* Chmb.R. at 2. In an effort to resolve the disputes, the Court held telephonic discovery conferences on October 16, 2019, October 28, 2019, and November 13, 2019. ECF Nos. 76, 79, 87. The Court found it appropriate to issue a briefing schedule for Plaintiff-Petitioners' motion to compel and Defendant-Respondents' motion for protective order. ECF No. 77. Upon receipt of the responsive briefs, the Court ordered the parties to submit supplemental briefing, in the form of a joint statement. ECF No. 91. The Court then set a hearing on the motions for January 15, 2020, and heard oral argument from both sides. ECF Nos. 93, 95. This order follows.

## III.    DISCOVERY REQUESTS AT ISSUE

The present motions relate to the following 33 discovery requests:

1.    Plaintiff Jose Cancino Castellar's First Set of Interrogatories to Defendant William B. Barr, Attorney General ("DOJ Interrogatories"), Nos. 1, 2, 3, 4, and 5, propounded on August 21, 2019. ECF No. 83-2 at 2–8. Defendant-Respondents timely returned their responses and objections on September 20, 2019. ECF No. 86-1 at 7.

2.  Plaintiff Jose Cancino Castellar's First Set of Requests for Production of Documents to Defendant William P. Barr, Attorney General ("DOJ RFPs"), No. 2, propounded on August 21, 2019. ECF No. 83-2 at 11–18. Defendant-Respondents timely returned their responses and objections on September 20, 2019. ECF No. 86-1 at 7.

3.  Plaintiff Jose Cancino Castellar's Second Set of Requests for Production of Documents to Defendant William P. Barr, Attorney General ("DOJ RFPs"), Nos. 3 and 4, propounded on October 11, 2019. ECF No. 83-2 at 49–56.

4.  Plaintiff Jose Cancino Castellar's First Set of Interrogatories to Defendant Kevin McAleenan, Acting Secretary of Homeland Security ("DHS Interrogatories"), Nos. 1, 2, 3, 4, 5, 6, 8,[2] and 9, propounded on August 21, 2019. ECF No. 83-2 at 20–28. Defendant-Respondents timely returned their responses and objections on September 20, 2019. ECF No. 86-1 at 7.

5.  Plaintiff Jose Cancino Castellar's Second Set of Requests for Production of Documents to Defendant Department of Homeland Security ("DHS RFPs"), Nos. 3, 4, 5, and 6, propounded on October 11, 2019. ECF No. 83-2 at 39–47.

6.  Plaintiff-Petitioners' First Amended Notice of Deposition under Rule 30(b)(6) of Person Most Knowledgeable for Executive Office for Immigration Review, ("EOIR Deposition"), Topic Nos. 2 and 3, served on October 15, 2019. ECF No. 83-2 at 58–64. The "proper procedure to object to a Rule 30(b)(6) deposition notice is not to serve objections on the opposing party, but to move for a protective order[,]" which was done here. *Rembrandt Diagnostics, LP v.*

---

[2] On March 12, 2020, the parties jointly notified the Court that they had resolved their dispute as to DHS Interrogatory No. 8. ECF No. 96 at 1–2 (stating that "[t]he [p]arties now agree that Defendants have provided a full and complete response to Interrogatory No. 8. Accordingly, Plaintiffs have no further dispute regarding Interrogatory No. 8 to DHS"). Thus, the Court will not address this discovery request further within this Order.

5

*Innovacon, Inc.*, No. 16cv698-CAB-NLS, 2018 WL 692259, at *3 (S.D. Cal. Feb. 2, 2018) (internal quotations omitted).

7.     Plaintiff-Petitioners' First Amended Notice of Deposition under Rule 30(b)(6) of Person Most Knowledgeable for Immigration and Customs Enforcement ("ICE Deposition"), Topic Nos. 1, 2, 3, 4, 5, and 6, served on October 15, 2019. ECF No. 83-2 at 66–74. Defendant-Respondents timely objected by moving for a protective order. *See Rembrandt Diagnostics*, 2018 WL 692259, at *3.

8.     Plaintiff-Petitioners' First Amended Notice of Deposition under Rule 30(b)(6) of Person Most Knowledgeable for U.S. Customs and Border Protection ("CBP Deposition"), Topic Nos. 1, 2, 3, 4, and 5, served on October 15, 2019. ECF No. 83-2 at 76–84. Defendant-Respondents timely objected by moving for a protective order. *See Rembrandt Diagnostics*, 2018 WL 692259, at *3.

## IV.    LEGAL STANDARD

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. FED. R. CIV. P. 26(b). Information need not be admissible to be discoverable. *Id.* The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted); *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *see also Youngevity Int'l, Inc. v. Smith*, No. 16cv704-BTM-JLB, 2017 WL 2692928, at *10–*11 (S.D. Cal. June 22, 2017).

When analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563–64, 564 n.1 (D. Ariz. 2016) (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Id*.

Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. FED. R. CIV. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id*

Once the propounding party establishes that the request seeks relevant and proportional information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)

(requiring defendants "to carry a heavy burden of showing why discovery was denied"); *see also Bryant v. Ochoa*, No. 07cv200-JM-PCL, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) ("The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections."). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

District courts have broad discretion to manage discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Hallett*, 296 F.3d at 751. This discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (trial court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *UMG Recordings, Inc. v. Doe*, No. C 08-1038 SBA, 2008 WL 2949427, at *3 (N.D. Cal. Jul. 30, 2008) ("[T]he district courts wield broad discretion" in fashioning discovery orders).

## V. OVERVIEW OF DEFENDANT-RESPONDENTS' OBJECTIONS AND RELEVANT LAW

Defendant-Respondents raise similar objections to Plaintiff-Petitioners' discovery requests. The Court will address the most prevalent ones in turn.

### a. Geographic Scope

Defendant-Respondents have objected to multiple discovery requests on the basis that documents and information regarding the Imperial Detention Center or Imperial Immigration Courts are outside the scope of the case, and thus are not relevant to Plaintiff-Petitioners' claims, because "the scope of the lawsuit is limited to the circumstances of the

three named Plaintiff-Petitioners whose initial hearings and/or bond hearings occurred exclusively at the Otay Mesa Immigration Court." ECF No. 92 at 4; Email to Chambers, Oct. 11, 2019. However, Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id.* at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, Imperial County is clearly within the scope of Plaintiff-Petitioners' claims, and the Court **ORDERS** that, to the extent the Plaintiff-Petitioners' motion to compel is granted below, Defendant-Respondents must produce responsive information and documents that include Imperial County.

### b. Relevance

Defendant-Respondents have objected to multiple discovery requests on the basis that they seek irrelevant information. *See* ECF No. 92 (objecting to at least 18 of the 33 discovery disputes based on relevance). To the extent Defendant-Respondents object based on relevance in a boilerplate, conclusory manner, those objections are overruled. *AMG Servs.*, 291 F.R.D. at 553 (stating that the objecting party must "specifically detail the reasons why each request is irrelevant and may not rely on boilerplate, generalized, conclusory" arguments); *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper"); *see Bryant*, 2009 WL 1390794, at *1 (the party opposing the motion to compel has the "burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections.").

Courts have broad discretion to determine relevance for discovery purposes. *Doherty*, 2017 WL 1885677, at *2 (citing *Hallett*, 296 F.3d at 751); *see also Youngevity Int'l*, 2017 WL 2692928, at *10–*11. When analyzing relevance, Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. at 563–64,

564 n.1 (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard). The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty*, 2017 WL 1885677, at *2 (internal quotation omitted). Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Id*. Thus, courts often link the elements of a cause of action with the discovery sought. Here, Plaintiff-Petitioners' claims involve substantive and procedural due process.

Substantive due process "forbids the government [from] infring[ing] certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986) (explaining that substantive due process will "bar certain government actions regardless of the fairness of the procedures used to implement them."). Substantive due process analysis entails two elements. First, "[a]s a threshold matter, 'to establish a substantive due process claim a plaintiff must show a government deprivation of life, liberty, or property.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 948 (9th Cir. 2004) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)); *see also Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015). Second, whether substantive due process is violated turns on the nature of the challenged government conduct. "[P]laintiffs must allege conduct that 'shock[s] the conscience and offend[s] the community's sense of fair play and decency.'" *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 518 (9th Cir. 2018) (quoting *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013)). Any "shock the conscience" analysis necessarily requires consideration of the justification the government offers, if any, for the alleged infringement. *See Reno*, 507 U.S. at 301–02.

Procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 322 (1976). Procedural due process does not forbid the government from depriving individuals of a protected interest, but rather requires the government to employ adequate procedures that ensure the fairness of any deprivation. *See McNabb v. United States*, 318 U.S. 332, 347 (1943). To assess procedural due process claims, courts employ the test set forth in *Mathews*. This test involves a balancing of three factors: (1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements. *Turner v. Rogers*, 564 U.S. 431, 444–45 (2011) (alterations and internal quotation marks omitted). The second *Mathews* factor "has two components: the risk that the procedures used will erroneously deprive [the] plaintiff of his liberty interest, and the value of additional or alternate procedural safeguards." *Oviatt v. Pearce*, 954 F.2d 1470, 1476 (9th Cir. 1992). The final *Mathews* factor concerns "the government's interest, including the additional costs and administrative burdens that additional procedures would entail." *Buckingham v. Secretary of the U.S. Dep't. of Agriculture*, 603 F.3d 1073, 1082 (9th Cir. 2010).

Thus, information that Plaintiff-Petitioners seek that relates to any of the aforementioned elements of substantive or procedural due process claims will be deemed relevant by this Court.

### c. Undue Burden

Defendant-Respondents have objected to multiple discovery requests on the basis that responding would impose an undue burden. *See* ECF No. 92 (objecting to at least 19 of the 33 discovery disputes based on undue burden).

The party "claiming that a discovery request is unduly burdensome must allege specific facts which indicate the nature and extent of the burden, usually by affidavit or

other reliable evidence." *Laryngeal Mask Co. v. Ambu A/S*, No. 07cv1988-DMS-NLS, 2009 WL 10672487, at *2 (S.D. Cal. Jan. 27, 2009) (quoting *Jackson v. Montgomery Ward & Co.*, 173 F.R.D. 524, 528–29 (D. Nev. 1997). Furthermore, "boiler plate objections that a request for discovery is overbroad and unduly burdensome . . . are improper unless based on particularized facts*." Vietnam Veterans of Am. v. CIA*, No. C 09-37-CW-JL, 2010 U.S. Dist. LEXIS 143865, at *32 (N.D. Cal. Nov. 12, 2010) (internal quotations omitted); *A. Farber & Ptnrs.*, 234 F.R.D. at 188 (stating that "general or boilerplate objections such as 'overly burdensome …' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections" and collecting cases with similar holdings); *accord Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358–59 (D. Md. 2008) (collecting cases from multiple circuits).

"Just because complying with a discovery request will involve expense or may be time consuming, does not make it unduly burdensome." *Jackson*, 173 F.R.D. at 528–29. Further, "[c]onclusory or speculative statements of harm, inconvenience, or expense are plainly insufficient." *Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016).

Thus, in analyzing whether Defendant-Respondents' undue burden objections should be sustained, the Court will closely scrutinize Defendant-Respondents' description of the alleged burden and disregard conclusory speculation.

### d. Subparts Exceed Limit of Interrogatories

Defendant-Respondents have objected to multiple discovery requests on the basis that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. *See* ECF No. 92 (objecting to at least 9 of the 13 interrogatories at issue for this reason); ECF No. 89 at 9–10.

"Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CIV. P. 33(a)(1). Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term. *Safeco Ins. Co. of Am. v. Rawstron*,

181 F.R.D. 441, 442–43 (C.D. Cal. 1998) (noting that the extensive use of subparts could defeat the purpose of the numerical limit contained in Rule 33(a) by rendering it meaningless, while also recognizing that if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted). However, "courts generally agree that 'interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question.'" *Trevino v. ACB Am.*, Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) (quoting *Safeco*, 181 F.R.D. at 445); *Makaeff v. Trump Univ., LLC*, No. 10cv940-GPC-WVG, 2014 WL 3490356, at *4 (S.D. Cal. July 11, 2014); *see, e.g.*, *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co*., 315 F.R.D. 191, 196 (E.D. Tex. 2016) (collecting cases from numerous circuits to show a general consensus on the "related question" approach, i.e., "subparts that are logically or factually subsumed within and necessarily related to the primary question should not be treated as separate interrogatories"). "Subparts asking for facts, documents, and witnesses relating to a primary contention or allegation are logically or factually related, and [] should be construed as subsumed in the primary question" and therefore do not count as separate interrogatories. *Synopsys, Inc. v. Atoptech, Inc.*, 319 F.R.D. 293, 297 (N.D. Cal. 2016). Such an inquiry requires a case-specific and interrogatory-specific assessment. *Id*. at 295.

### e. Rule 30(b)(6) Depositions

Federal Rule of Civil Procedure 30(b)(6) allows a party to depose an entity by identifying a set of topics for the deposition. FED. R. CIV. P. 30(b)(6). The deponent-entity is responsible for selecting and presenting witnesses who are prepared to testify on those topics. *See Jones v. Hernandez*, No. 16cv1986-W-WVG, 2018 WL 539082, at *1 (S.D. Cal. Jan. 23, 2018) (citing *Updike v. Clackamas County*, No. 15cv723-SI, 2016 WL 111424, at *2 (D. Or. Jan. 11, 2016)). Because the entity must "present witnesses who are capable of providing testimony on the noticed topics, regardless of whether the information was in the specific witness's personal knowledge," the party requesting the deposition "must describe with reasonable particularity [or as another court explained, "with painstaking specificity,"] the matters for examination." *Updike*, 2016 WL 111424, at *2–

*3 (internal quotations omitted). On the other hand, "a party responding to discovery has 'an obligation to construe ... discovery requests in a reasonable manner.'" *Westmoreland v. Regents of the Univ. of Cal.*, No. 17cv1922-TLN-AC, 2019 WL 932220, at *3 (E.D. Cal. Feb. 26, 2019) (internal quotations omitted). The plain language of Federal Rule 30 permits such depositions in actions against a government agency. *See* FED. R. CIV. P. 30(b)(6) ("In its notice or subpoena, *a party may name as the deponent . . . a governmental agency*, or other entity and must describe with reasonable particularity the matters for examination.") (emphasis added).

"Federal district courts have been divided on whether a Rule 30(b)(6) deposition is an appropriate vehicle to obtain the factual basis for a party's legal claims or defenses, or whether such information can be better and more fairly obtained through contention interrogatories." *Bank of Am., N.A. v. SFR Invs. Pool 1 LLC*, No. 15cv1042-APG-GWF, 2016 WL 2843802, at *3 (D. Nev. May 12, 2016); *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475-PJH-MEJ, 2012 WL 1413368, at *2 (N.D. Cal. Apr. 23, 2012) (collecting cases). Some courts contend that "[i]t is of no consequence that contention interrogatories may be the more appropriate route to obtain the information as nothing precludes a deposition either in lieu of or in conjunction with such interrogatories." *Security Ins. Co. of Hartford v. Trustmark Ins.*, 218 F.R.D. 29, 34 (D. Conn. 2003); *but see Bank of Am., N.A.*, 2016 WL 2843802, at *3 (noting that line of thinking "no longer has substantial weight given the emphasis placed on proportionality and the tailoring of discovery under amended Rule 26(b)"). Other courts have required a party to serve contention interrogatories in lieu of a Rule 30(b)(6) deposition where the topic requires the responding party to provide its legal analysis on complex issues, such as in patent cases; those courts consider, "based on the facts of each case, [whether] contention interrogatories are a more appropriate discovery tool." *TV Interactive Data Corp.*, 2012 WL 1413368, at *2; *Gen-Probe Inc. v. Becton, Dickinson & Co.*, No. 09cv2319-BEN-NLS, 2012 WL 12845593, at *1–*2 (S.D. Cal. Mar. 28, 2012). "Courts have also recognized that properly timed contention interrogatories 'may in certain cases be the most reliable and cost-effective

discovery device, which would be less burdensome than depositions . . . '" *Lexington Ins. Co. v. Commonwealth Ins. Co.*, No. C98-3477-CRB-JCS, 1999 WL 33292943, at *7 (N.D. Cal. Sept. 17, 1999) (quoting *Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc.*, 175 F.R.D. 646, 652 (C.D. Cal. 1997)).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . .(C) prescribing a discovery method other than the one selected by the party seeking discovery." FED. R. CIV. P. 26(c)(1). Thus, the Court will assess each Rule 30(b)(6) deposition topic and will decide whether those "inquiries can clearly be provided more efficiently and fairly through answers to interrogatories prepared by [Defendant-Respondents'] counsel." *See Bank of Am., N.A.*, 2016 WL 2843802, at *3.

## VI.    DISCUSSION

In lieu of segregating by motion, the Court will rule on Defendant-Respondents' objections to Plaintiff-Petitioners' discovery requests in the order presented in the parties' joint supplemental briefing. *See* ECF No. 92.

### a.  DHS RFP No. 3:

All DOCUMENTS, including electronic DATABASE information, sufficient to demonstrate, calculate, and/or break down the data and information requested in Plaintiff's Interrogatories Nos. 1-6. To the extent this involves production of DOCUMENTS regarding individuals and physical files or DATABASE entries regarding such individuals across multiple agencies, the DOCUMENTS must contain a unique identifier, such as an "alien number," that allows for calculation of the relevant data for that individual.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) information relating to custody determinations or custody hearings is not relevant, and (2) that production is burdensome and not proportional to the needs of the case. ECF No. 83-1 at 12–19; ECF No. 92 at 2–3.

The Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, is

relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator).

The Court finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2; *A. Farber & Ptnrs.*, 234 F.R.D. at 188; *Jackson*, 173 F.R.D. at 528–29.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED** as to this discovery request. Defendant-Respondents must produce the database information requested, including a unique identifier for each individual to whom information pertains. The Court does not require production of personal identification information at this time.

### b. DHS RFP No. 4:

All DOCUMENTS CONCERNING YOUR policies and practices for the process of initiating and/or informing the immigration court of the initiation of removal proceedings against DETAINEES, including for issuing, serving, and filing NTAs.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) CBP is not responsible for filing NTAs, and (2) Plaintiff-Petitioners' use of vague and ambiguous language. ECF No. 92 at 3.

Based on the Defendant-Respondents' representations, the Court sustains Defendant-Respondents' objections to the extent that Plaintiff-Petitioners seek to compel production from CBP.

The Court agrees that the request is vague and ambiguous, because the phrase "the process of initiating and/or informing the immigration court of the initiation of removal proceedings" is undefined. Defendant-Respondents interpret that phrase to "encompass

DHS's procedures for initiating an NTA and informing the immigration court of the initiation of removal proceedings, rather than DHS's substantive decision-making process for initiating removal proceedings[,]" and the Court hereby adopts Defendant-Respondents' proposed interpretation.

Notwithstanding the objections, Defendant-Respondents "have identified certain documents they believe are responsive to this request and are making arrangements to produce them to Plaintiffs." ECF No. 92 at 3. Federal Rule of Civil Procedure 34 requires Defendant-Respondents to either produce documents by the date stated in the request, or provide a reasonable time for production. FED. R. CIV. P. 34(b)(2)(b).

Thus, the Defendant-Respondents' motion for protective order is **DENIED** and Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. Defendant-Respondents shall produce responsive documents within the above-defined scope.

### c. DHS RFP No. 5:

> All DOCUMENTS CONCERNING YOUR policies and practices for making custody determinations of alleged non-citizens in YOUR custody and for initiating CUSTODY HEARINGS or informing the immigration court of DETAINEES' requests for CUSTODY HEARINGS, as well as any DOCUMENTS CONCERNING any changes in such policies and practices since March 2017.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) that the information relating to custody determinations or custody hearings is not relevant, and (2) that production is burdensome and not proportional to the needs of the case. ECF No. 83-1 at 12–19; ECF No. 92 at 3.

The Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, are relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience"

factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that documents regarding the reasoning why a particular custody determination was made are not relevant. Thus, the Court overrules Defendant-Respondents' objection, and grants Plaintiff's motion to the compel to the extent that the request seeks information regarding the fact of, and the timing of, custody hearings.

The Court finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2; *A. Farber & Ptnrs.*, 234 F.R.D. at 188; *Jackson*, 173 F.R.D. at 528–29.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** and permits Defendant-Respondents to withhold information regarding the reasoning why a particular custody determination was made. Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** to the extent that the request seeks information regarding the fact of, and the timing of, custody hearings.

### d. DHS RFP No. 6:

All DOCUMENTS demonstrating or sufficient to calculate all the primary languages spoken by DETAINEES who have appeared on the DETAINED DOCKET, as well as DOCUMENTS demonstrating or sufficient to calculate the number of DETAINEES who spoke each language, as reflected in YOUR records or DATABASES.

As to this discovery request, Defendant-Respondents object that production of these documents would impose an undue burden and is not proportional to the needs of the case. ECF No. 83-1 at 20 n.10; ECF No. 92 at 4. Plaintiff-Petitioners contend that any burden is outweighed by the fact that the responses are relevant to their claims that detainees do not have a meaningful opportunity to have their rights explained to them in their language before their first hearing, where an interpreter is present. ECF No. 86-1 at 12-15.

The Court finds that information regarding languages spoken is relevant to the Plaintiff-Petitioners' procedural due process claims. *See* ECF No. 63 at 31 (stating that language barriers could impact the discussion of "meaningful risk of erroneous deprivation" in procedural due process analysis). Since this information is plainly relevant, it is proportional to the needs of the case. The Court also finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. ECF No. 92 at 4 (objecting with boilerplate, identical language to at least four interrogatories, contending that Plaintiff-Petitioners "seek[s] production of a vast number of documents relating to potentially thousands of individuals"); *see Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2; *A. Farber & Ptnrs.*, 234 F.R.D. at 188; *Jackson*, 173 F.R.D. at 528–29.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED** as to this discovery request.

### e. DHS Interrogatory No. 1:

For each fiscal year SINCE 2016, please state the mean and median number of days that elapsed between when DETAINEES were taken into custody and when they had their INITIAL MCH on the DETAINED DOCKET, broken down to also show such mean and median number of days for subcategories of DETAINEES based on the statutory authority for their detention (*e.g.*, 8 U.S.C. §§ 1225(b), 1226(a), 1226(c)) and the facility in which they were detained at the time of their INITIAL MCH, as well as the number of DETAINEES in each category or subcategory. Per Instruction Number 1, if YOU lack complete information based on the date DETAINEES were taken into custody, provide the mean and median number of days elapsed until the INITIAL MCH from the earliest date for which YOU have information and state any facts CONCERNING the time periods covered and the information YOU lack.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause

the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 83-1 at 20; ECF No. 92 at 4–5.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' Fifth Amendment claims.

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### f. DHS Interrogatory No. 2:

For each fiscal year SINCE 2016, please state the mean and median number of days that elapsed between when YOU issued an NTA to a DETAINEE and when the NTA for that DETAINEE was filed with the immigration court, broken down to also show such mean and median number of days for subcategories of DETAINEES based on the statutory authority for their detention (*e.g.*, 8 U.S.C. §§ 1225(b), 1226(a), 1226(c)) and the immigration court where the NTA was filed, as well as the number of DETAINEES in each subcategory.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 5–6; ECF No. 83-1 at 20.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 16–17 (analyzing cases that examined different lengths of detention and whether they violated substantive due process, and stating that the "duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions").

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### g. DHS Interrogatory No. 3:

> For each fiscal year SINCE 2016, please state the mean and median number of days that elapsed for DETAINEES waiting for a Credible Fear Interview ("CFI") to first receive the CFI, broken down to also show such mean and median number of days for subcategories of DETAINEES based on whether they presented themselves at a Port of Entry or allegedly entered the United States without inspection and on where they were detained at the time they received the CFI, as well as the number of DETAINEES in each subcategory.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 6–7; ECF No. 83-1 at 20.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 16–17 (analyzing cases that examined different lengths of detention and whether they violated substantive due process, and stating that the "duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions"). The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal*

*Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### h. DHS Interrogatory No. 4:

> For each fiscal year SINCE 2016, please state the mean and median number of days DETAINEES spent in CBP custody in the Southern District of California, broken down to also show such mean and median number of days for subcategories of DETAINEES at each CBP facility in the Southern District of California, as well as the number of DETAINEES in each subcategory.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 8–9; ECF No. 83-1 at 20.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 16–17 (analyzing cases that examined different lengths of

detention and whether they violated substantive due process, and stating that the "duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions").

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases, subject to further meet and confer as ordered below.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases. The parties are ordered to meet and confer further regarding whether a sampling of records should be produced if Defendant-Respondents, in particular CBP, cannot access or match up the records in its databases without manually pulling apprehension dates. *See* ECF No. 89-1, Ex. 2, at ¶ 5.

### i. DHS Interrogatory No. 5:

For each fiscal year SINCE 2016, please state the number of DETAINEES released from YOUR custody after passing a Credible Fear Interview pursuant to YOUR parole authority under the ICE Parole Directive, ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 2009), as well as the total number of DETAINEES who passed their Credible Fear Interviews, broken down based

on the DHS facility where the DETAINEE was in custody at the time of the Credible Fear Interview.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 9–10; ECF No. 83-1 at 20.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' Fifth Amendment claims. The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### j. DHS Interrogatory No. 6:

> For each fiscal year SINCE 2016, please state the number of DETAINEES in YOUR custody pursuant to 8 U.S.C. § 1226(a), broken down to show the number of DETAINEES who, prior to any custody determination by an immigration judge, (a) YOU determined could be released without payment of bond, (b) YOU determined could be released with payment of bond, as well as the mean and median amount of that bond, and (c) YOU determined should remain in custody and that no bond could secure their release.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant due to the date range, (2) that production is burdensome and not proportional to the needs of the case, and (3) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 10–11; ECF No. 83-1 at 20. Plaintiff-Petitioners contend that "[i]f in practice these alleged safeguards do not commonly result in eligible detainees securing their release, that is highly relevant to both Plaintiff-Petitioners' substantive due process argument that Defendant-Respondents' practices "shock the conscience" and procedural due process claims about the risk of erroneous deprivation of liberty and the insufficiency of existing procedural safeguards." ECF No. 86-1 at 12

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this date range, the Court finds that the information is relevant to Plaintiff-Petitioners' Fifth Amendment claims. The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court

must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

The Court overrules Defendant-Respondents' objection and finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

Thus, Defendant-Respondents' motion for protective order is **DENIED IN PART** and Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### k. ICE Deposition Topic No. 1:

> Policies, practices and procedures for ICE within the geographical region of the United States District Court for the Southern District of California, CONCERNING the process of initiating and/or informing the immigration court of the initiation of REMOVAL PROCEEDINGS against DETAINEES, including for issuing, serving, and filing NTAs or other charging documents, as well as any differences in those policies, practices, and procedures based on charges of removability, bases for detention or arrest, or location of confinement.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 13; ECF No. 12–19. Defendant-Respondents argue that "to the extent that Plaintiffs seek discovery, through this deposition topic, into how immigration judges interpret and

implement the statutes and regulations governing an alien's statutory and regulatory right for an 'opportunity to be heard' such discovery is impermissible." ECF No. 83-1 at 23. Plaintiff-Petitioners argue that this information "will shed light on the comparative value of a prompt first appearance in securing the release of qualified detainees" and "is necessary to probe any differences between policy and practice." ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." *Id*. at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id*. at 9.

The Court finds that information regarding custody hearings, custody determinations, and parole decisions, other than the reasons for the determination, such as the fact or timing of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the reasoning why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

/ /

/ /

### l. ICE Deposition Topic No. 2:

Policies, practices, and procedures for ICE within the geographical region of the United States District Court for the Southern District of California CONCERNING apprehension, confinement, or detention of suspected noncitizens, excluding those with existing FINAL ORDERS OF REMOVAL, from the moment of apprehension until the initial MASTER CALENDAR HEARING—as well as any differences in those policies, practices, and procedures based on charges of removability, bases for detention or arrest, or location of confinement—including policies, practices, and procedures for: a. CUSTODY DETERMINATIONS for individuals in DHS custody, including determinations made under 8 C.F.R § 287.3(d) and 8 U.S.C. §§ 1225, and 1226; b. initiating CUSTODY HEARINGS or informing the immigration court of DETAINEES' requests for CUSTODY HEARINGS; c. parole determinations involving individuals in DHS custody pursuant to 8 U.S.C. § 1182(d)(5); d. implementing or acting pursuant to 8 C.F.R. § 287.3(d) or 8 U.S.C. § 1357(a)(2); e. transfers of DETAINEES; and f. conditions under which DETAINEES are held.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to apprehension, confinement, or detention of suspected non-citizens. ECF No. 83-1 at 23–25; ECF No. 92 at 13–16. They also argue that Plaintiff-Petitioners have not raised challenges to detainees' conditions of confinement, and thus the topic is irrelevant. ECF No. 83-1 at 23–24. Plaintiff-Petitioners counter that, "simply because Plaintiffs do not specifically challenge the harsh conditions of their confinement, those conditions are [] discoverable… [because t]he severity of the deprivation of detainees' liberty is central to due process analysis—at minimum for the first *Mathews* factor—making the conditions in ICE detention and CBP and Border Patrol stations discoverable." ECF No. 88 at 5–7. Additionally, Defendant-Respondents argue that the burden to produce a witness for such an overbroad topic of "conditions of confinement" is not proportional to the needs of the case. ECF No. 83-1 at 24–25. In response, Plaintiff-Respondents contend that "'conditions' of confinement is a reasonably specific topic, [and] the government has not met its obligation to construe the term reasonably." ECF No. 88 at 5–7.

The Court finds that information regarding confinement is relevant to Plaintiff-Petitioners' due process claims, to the extent alleged in paragraphs 50–57 of the complaint. *See* ECF No. 63 at 28–29 (explaining that, when assessing procedural due process claims, the *Mathews* test balances "the nature of the private interest that will be affected" against two other factors, finding that the "due process clause protects a liberty interest in freedom from bodily restraint"); *see id*. at 24–25, 32 (stating that continued detention relates to the substantive due process "shocks the conscience" factor, and courts focus on the totality of the circumstances). However, the Court finds that apprehension of suspected noncitizens is not relevant to Plaintiff-Petitioners' due process claims. Additionally, the Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See id*. at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART**. This deposition topic can be reasonably construed and should be limited as follows:

(a)     Testimony is not required regarding apprehension of suspected noncitizens;

(b)     Testimony is not required regarding the reasoning behind custody determinations;

(c)     Testimony regarding conditions of confinement is limited to the conditions alleged in paragraphs 50–57 of the complaint; and

(d)     To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### m. ICE Deposition Topic No. 3:

> Policies, practices, and procedures for ICE within the geographical region of the United States District Court for the Southern District of California for transporting and producing individuals (whether in-person, telephonically, and/or by video conference) who are in DHS custody for immigration court hearings, including initial MASTER CALENDAR HEARINGS and CUSTODY HEARINGS and any burdens to ICE in doing so, as well as any differences in those policies, practices, and procedures based on the different charges of removability and different bases or locations of detention.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 16; ECF No. 83-1 at 12–19. Plaintiff-Petitioners argue that this information "will reveal the extent to which any alleged burdens are of Defendants' own making" and "is necessary to probe any differences between policy and practice." ECF No. 86-1 at 15; ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." ECF No. 88 at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id.* at 9.

The Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as the fact or timing of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the reasoning why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### n. ICE Deposition Topic No. 4:

> Economic costs or expense to ICE within the geographical region of the United States District Court for the Southern District of California of confining alleged non-citizens in ICE detention centers, as well as such costs or expense to ICE of ALTERNATIVES TO DETENTION.

Defendant-Respondents object to this topic on the grounds that it is vague and overly broad, and would be overly burdensome to prepare a witness to address such a broad range. ECF No. 83-1 at 25–26; ECF No. 92 at 17–18. Plaintiff-Petitioners respond that this topic is clearly relevant because it directly relates to their claim of procedural due process, and thus purported burden does not outweigh the Plaintiff-Petitioners' need for the information. The Court agrees that this topic is clearly relevant. *See Buckingham*, 603 F.3d at 1082 (explaining that the third *Mathews* factor concerns "the government's interest, including the additional costs and administrative burdens that additional procedures would entail"). However, the Court finds that the topic is not sufficiently specific, and as a result, no agency witnesses could likely testify to the requested information.

During oral argument, the Court pressed the parties regarding the appropriateness of a deposition on this topic. Upon review of the record and considering the arguments of counsel, the Court finds a 30(b)(6) deposition would be unduly burdensome and the discovery would be more efficiently conducted through traditional interrogatories or contention interrogatories. *See, e.g.*, *Gen-Probe Inc.*, 2012 WL 12845593, at *1–*2; *TV Interactive Data Corp.*, 2012 WL 1413368, at *2. The Court finds that responses to these inquiries can clearly be provided more efficiently and fairly through answers to

interrogatories prepared by Defendant-Respondents' counsel. *See Bank of Am., N.A.*, 2016 WL 2843802, at *3.

Thus, Defendant-Respondents' motion for protective order is **GRANTED**.

### o. ICE Deposition Topic No. 5:

Resources and support available to DETAINEES in ICE custody within the geographical region of the United States District Court for the Southern District of California to assist them in their REMOVAL PROCEEDINGS, CUSTODY DETERMINATIONS, or CUSTODY HEARINGS, including legal and translation resources.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 18; ECF No. 83-1 at 12–19. Plaintiff-Petitioners argue that this information "is necessary to probe any differences between policy and practice." ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." *Id.* at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." ECF No. 88 at 9.

The Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as availability of legal and translation resources, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25 (noting that plaintiff-petitioners' unrepresented status, i.e., lack of counsel, impacts the substantive due process "shocks the conscience" analysis); *id.* at 31 (stating that language barriers could impact the discussion of "meaningful risk of erroneous deprivation" in procedural due process analysis). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding

the reasoning why a particular custody determination was made. To the extent information regarding the resources and support described in this topic have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### p. ICE Deposition Topic No. 6:

Policies, practices, and procedures – including knowledge of databases with relevant information – for monitoring, tracking, and/or limiting the duration of detention of DETAINEES prior to initial MASTER CALENDAR HEARINGS on the DETAINED DOCKET, as well for identifying any differences in those detention times based on the different charges of removability, bases for detention, or location of detention.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 18; ECF No. 83-1 at 12–19. Defendant-Respondents argue that "to the extent that Plaintiffs seek discovery, through this deposition topic, into how immigration judges interpret and implement the statutes and regulations governing an alien's statutory and regulatory right for an 'opportunity to be heard' such discovery is impermissible." ECF No. 83-1 at 23. Plaintiff-Petitioners argue that this information "will shed light on the comparative value of a prompt first appearance in securing the release of qualified detainees" and "is necessary to probe any differences between policy and practice." ECF No. 88 at 8–9. Plaintiff-Petitioners contend that this topic probes "the extent to which any alleged burdens are of Defendants' own making. If the information reveals a large number of individuals eligible and suitable for release whom Defendant-Respondents nevertheless refuse to release, it would be relevant to whether any such self-imposed burden based on the number of detainees could permissibly trump detainees' constitutional rights to prompt presentment." ECF No. 86-1 at 15. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." ECF No. 88 at 4–5. Plaintiff-Petitioners

further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id*. at 9.

The Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as the fact or timing of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the reasoning why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### q. CBP Deposition Topic No. 1:

> Policies, practices and procedures – or the extent to which CBP lacks any such policies, practices and procedures – for CBP within the geographical region of the United States District Court for the Southern District of California, CONCERNING the process of initiating and/or informing the immigration court of the initiation of REMOVAL PROCEEDINGS against DETAINEES, including for issuing, serving, and filing NTAs or other charging documents with the immigration court or for sending NTAs or other charging documents to ICE.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 19; ECF No. 83-1 at 12–19. Defendant-Respondents argue that "to the extent that Plaintiffs seek discovery, through this deposition topic, into how immigration judges interpret and

implement the statutes and regulations governing an alien's statutory and regulatory right for an 'opportunity to be heard' such discovery is impermissible." ECF No. 83-1 at 23. Plaintiff-Petitioners argue that this information "will shed light on the comparative value of a prompt first appearance in securing the release of qualified detainees" and "is necessary to probe any differences between policy and practice." ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." *Id*. at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id*. at 9.

The Court finds that information regarding custody hearings, custody determinations, and parole decisions, other than the reasons for the determination, such as the fact or timing of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the reasoning why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

//

//

### r. CBP Deposition Topic No. 2:

Policies, practices and procedures for CBP within the geographical region of the United States District Court for the Southern District of California CONCERNING apprehension, confinement, or detention of suspected noncitizens, excluding those with existing FINAL ORDERS OF REMOVAL, from the moment of apprehension until the initial MASTER CALENDAR HEARING—as well as any differences in those policies, practices, and procedures based on charges of removability, bases for detention or arrest, or location of confinement—including policies, practices, and procedures for: a. CUSTODY DETERMINATIONS involving DETAINEES, including determinations made under 8 C.F.R. § 287(d) and 8 U.S.C. §§1225, 1226, 1231; b. initiating CUSTODY HEARINGS or informing the immigration court or ICE of DETAINEES' requests for CUSTODY HEARINGS; c. parole determinations involving DETAINEES pursuant to 8 U.S.C § 1182(d)(5); d. implementing or acting pursuant to 8 C.F.R. § 287(d) or 8 U.S.C. § 1357(a)(2); e. transfers of DETAINEES to other CBP facilities or ICE custody; and f. duration of confinement and conditions under which DETAINEES are held.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to apprehension, confinement, or detention of suspected non-citizens. ECF No. 83-1 at 23–25; ECF No. 92 at 19–22. They also argue that Plaintiff-Petitioners have not raised challenges to detainees' conditions of confinement, and thus the topic is irrelevant. ECF No. 83-1 at 23–24. Plaintiff-Petitioners counter that, "simply because Plaintiffs do not specifically challenge the harsh conditions of their confinement, those conditions are [] discoverable… [because t]he severity of the deprivation of detainees' liberty is central to due process analysis—at minimum for the first *Mathews* factor— making the conditions in ICE detention and CBP and Border Patrol stations discoverable." ECF No. 88 at 5–7. Additionally, Defendant-Respondents argue that the burden to produce a witness for such an overbroad topic of "conditions of confinement" is not proportional to the needs of the case. ECF No. 83-1 at 24–25. In response, Plaintiff-Respondents contend that "'conditions' of confinement is a reasonably specific topic, [and] the government has not met its obligation to construe the term reasonably." ECF No. 88 at 5–7.

The Court finds that information regarding confinement is relevant to Plaintiff-Petitioners' due process claims, to the extent alleged in paragraphs 50–57 of the complaint. *See* ECF No. 63 at 28–29 (explaining that, when assessing procedural due process claims, the *Mathews* test balances "the nature of the private interest that will be affected" against two other factors, finding that the "due process clause protects a liberty interest in freedom from bodily restraint"); *see id.* at 24–25, 32 (stating that continued detention relates to the substantive due process "shocks the conscience" factor, and courts focus on the totality of the circumstances). However, the Court finds that apprehension of suspected noncitizens is not relevant to Plaintiff-Petitioners' due process claims. Additionally, the Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART**. This deposition topic can be reasonably construed and should be limited as follows:

(a)   Testimony is not required regarding apprehension of suspected noncitizens;

(b)   Testimony is not required regarding the reasoning behind custody determinations;

(c)   Testimony regarding conditions of confinement is limited to the conditions alleged in paragraphs 50–57 of the complaint; and

(d)   To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

3:17-cv-491-BAS-AHG

### s. CBP Deposition Topic No. 3:

> Policies, practices, and procedures – or the extent to which CBP lacks any such policies – for CBP within the geographical region of the United States District Court for the Southern District of California for transporting and producing individuals (whether in-person, telephonically, and/or by video conference) who are in DHS custody for immigration court hearings, including initial MASTER CALENDAR HEARINGS and CUSTODY HEARINGS and any burdens to ICE in doing so, as well as any differences in those policies, practices, and procedures based on the different charges of removability and different bases or locations of detention.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 92 at 22; ECF No. 83-1 at 12–19. Plaintiff-Petitioners argue that this information "will reveal the extent to which any alleged burdens are of Defendants' own making" and "is necessary to probe any differences between policy and practice." ECF No. 86-1 at 15; ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." ECF No. 88 at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id.* at 9.

The Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as the fact or timing of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator).

However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the reasoning why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### t. CBP Deposition Topic No. 4:

> Economic costs or expense to CBP within the geographical region of the United States District Court for the Southern District of California of confining alleged non-citizens in CBP or Border Patrol facilities, as well as such costs or expense to CBP of ALTERNATIVES TO DETENTION.

Defendant-Respondents object to this topic on the grounds that it is vague and overly broad, and would be overly burdensome to prepare a witness to address such a broad range. ECF No. 83-1 at 25–26; ECF No. 92 at 23–24. Plaintiff-Petitioners respond that this topic is clearly relevant because it directly relates to their claim of procedural due process, and thus purported burden does not outweigh the Plaintiff-Petitioners' need for the information. The Court agrees that this topic is relevant. *See Buckingham*, 603 F.3d at 1082 (explaining that the third *Mathews* factor concerns "the government's interest, including the additional costs and administrative burdens that additional procedures would entail"). However, the Court finds that the topic is not sufficiently specific, and as a result, no agency witnesses could likely testify to the requested information.

During oral argument, the Court pressed the parties regarding the appropriateness of a deposition on this topic. Upon review of the record and considering the arguments of counsel, the Court finds a 30(b)(6) deposition would be unduly burdensome and the discovery would be more efficiently conducted through traditional interrogatories or contention interrogatories. *See, e.g.*, *Gen-Probe Inc.*, 2012 WL 12845593, at \*1–\*2; *TV Interactive Data Corp.*, 2012 WL 1413368, at \*2. The Court finds that responses to these

inquiries can clearly be provided more efficiently and fairly through answers to interrogatories prepared by Defendant-Respondents' counsel. *See Bank of Am., N.A.*, 2016 WL 2843802, at *3.

Thus, Defendant-Respondents' motion for protective order is **GRANTED**.

### u. CBP Deposition Topic No. 5:

> Resources and support available to DETAINEES in CBP custody within the geographical region of the United States District Court for the Southern District of California to assist them in their REMOVAL PROCEEDINGS, CUSTODY DETERMINATIONS, or CUSTODY HEARINGS, including legal and translation resources.

As to this deposition topic, Defendant-Respondents object to the extent it includes matters relating to DHS custody determinations and custody hearings. ECF No. 83-1 at 26 n.13; ECF No. 92 at 24. Plaintiff-Petitioners argue that this information "is necessary to probe any differences between policy and practice." ECF No. 88 at 8–9. Plaintiff-Petitioners also argue that they "do not seek judicial review of any 'discretionary judgment' in individual custody determinations [], but only discovery into the government's policies and practice in exercising that judgment, which is central to establishing their claims." *Id.* at 4–5. Plaintiff-Petitioners further explain that "[t]his does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." *Id.* at 9.

The Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as availability of legal and translation resources, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25 (noting that plaintiff-petitioners' unrepresented status, i.e., lack of counsel, impacts the substantive due process "shocks the conscience" analysis); *id.* at 31 (stating that language barriers could impact the discussion of "meaningful risk of erroneous deprivation" in procedural due process analysis). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the *reasoning* why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### v. DOJ RFP No. 2:

> All DOCUMENTS CONCERNING policies and practices for scheduling and conducting an INITIAL MCH, and for scheduling and conducting CUSTODY HEARINGS, as well as any DOCUMENTS CONCERNING any changes in such policies and practices SINCE fiscal year 2016.

As to this discovery request, Defendant-Respondents object for three main reasons: (1) that the information sought is not relevant, (2) that the request is overbroad because it seeks every document *concerning* policies and practices, (3) that production is burdensome and not proportional to the needs of the case because it is not limited in geographic scope, and (4) that the EOIR is not presently aware of any non-privileged, responsive documents. ECF No. 83-1 at 12–20; ECF No. 92 at 25–26. Plaintiff-Petitioners contend that "[c]ustody data and policies are also critical for analysis into the value of existing safeguards, which Defendants have put at issue, such as whether existing procedures provide detainees with a meaningful opportunity to seek release and the extent to which DHS exercises its discretion to release eligible detainees.[] If in practice these alleged safeguards do not commonly result in eligible detainees securing their release, that is highly relevant to both Plaintiff-Petitioners' substantive due process argument that Defendant-Respondents' practices 'shock the conscience' and procedural due process claims about the risk of erroneous deprivation of liberty and the insufficiency of existing procedural safeguards." ECF No. 86-1 at 12.

The Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF

No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator).

The Court sustains in part and overrules in part Defendant-Respondents' undue burden objections and overbreadth objections. The Court will compel production of any written policies, practices, but not "any documents that concern them." It is unreasonable to ask to search emails that may discuss them without providing detail for that request. Further, the Court limits production to policies implemented in the Southern District of California.

The Court notes that if Defendant-Respondents do not have responsive documents, they should simply say so.

Thus, Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** and **DENIED IN PART** as to this discovery request. Court limits production to policies in the Southern District of California, and Defendant-Respondents must produce any written policies or practices, but not "any documents that concern them."

### w. DOJ RFP No. 3:

All DOCUMENTS, including electronic DATABASE information, sufficient to demonstrate, calculate, and/or break down the data and information requested in Plaintiffs' Interrogatories Nos. 1-4. To the extent this involves production of DOCUMENTS regarding individuals and physical files or DATABASE entries regarding such individuals across multiple agencies, the DOCUMENTS must contain a unique identifier, such as an "alien number," that allows for calculation of the relevant data for that individual.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) information relating to custody determinations or custody hearings is not relevant, and (2) that production is burdensome and not proportional to the needs of the case. ECF No. 83-1 at 12–16; ECF No. 92 at 26.

The Court finds that information regarding custody hearings, other than the reasons for the custody determination, such as the fact of a hearing and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator).

The Court finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. ECF No. 92 at 26 (objecting with boilerplate, identical language to at least four interrogatories, contending that Plaintiff-Petitioners "seek[s] production of a vast number of documents relating to potentially thousands of individuals"); *see Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2; *A. Farber & Ptnrs.*, 234 F.R.D. at 188; *Jackson*, 173 F.R.D. at 528–29.

Thus, Defendant-Respondents' motion for protective order is **DENIED** and Plaintiff-Petitioners' motion to compel is **GRANTED** as to this discovery request. Defendants-Respondents must produce the database information requested, including a unique identifier for each individual to whom information pertains. The Court does not require production of personal identification information at this time.

### x. DOJ RFP No. 4:

All DOCUMENTS demonstrating or sufficient to calculate all the primary languages spoken by DETAINEES who have appeared on the DETAINED DOCKET, as well as DOCUMENTS demonstrating or sufficient to calculate the number of DETAINEES who spoke each language, as reflected in YOUR records or DATABASES. To the extent this involves production of DOCUMENTS regarding individuals and physical files or DATABASE entries regarding such individuals across multiple agencies, the DOCUMENTS must contain a unique identifier, such as an "alien number," that allows for calculation of the relevant data for that individual.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) production is burdensome and not proportional to the needs of the case, and (2) the burden is increased because Defendant-Respondents are providing the same data in aggregated form in response to Plaintiff-Petitioners' interrogatories. ECF No. 83-1 at 20; ECF No. 92 at 26–27.

The Court finds that Plaintiff-Petitioners are not entitled to identification at the individual level. However, the remainder of Plaintiff-Petitioners' request seems to be data that Defendant is likely to have, and thus overrules Defendant-Respondents' burden objection.

Thus, Defendant-Respondents' motion for protective order is **GRANTED IN PART** and Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. Defendant-Respondents are compelled to produce "all documents demonstrating or sufficient to calculate all the primary languages spoken by detainees who have appeared on the detained docket, as well as documents demonstrating or sufficient to calculate the number of detainees who spoke each language, as reflected in your records or databases."

### y. DOJ Interrogatory No. 1:

For each fiscal year SINCE 2016, please state the mean and median number of days that elapsed between when an NTA for the DETAINED DOCKET was filed with the immigration court and when the corresponding INITIAL MCH on the DETAINED DOCKET was held, broken down to also show the mean and median number of days for subcategories based on whether the INITIAL MCH occurred on the DETAINED DOCKET for the Otay Mesa Detention facility or the DETAINED DOCKET for the Imperial Regional Detention Facility, as well as the number of INITIAL MCHs in each category or subcategory.

As to this discovery request, Defendant-Respondents object for two main reasons: (1) that the information sought is premature and beyond the scope of the lawsuit, and (2) that production is potentially unduly burdensome. ECF No. 83-1 at 19–20; ECF No. 92 at 27–28.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this stipulated date range, the Court finds that information is relevant to Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 16–17 (analyzing cases that examined different lengths of detention and whether they violated substantive due process, and stating that the "duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions"). The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court also finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id.* at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, Imperial County is clearly within the scope of Plaintiff-Petitioners' claims.

The Court overrules Defendant-Respondents' undue burden objections and finds that Defendant-Respondents have failed to make a sufficient showing to support their objections based on burden. *See Nationstar Mortg., LLC*, 316 F.R.D. at 334; *Laryngeal Mask Co.*, 2009 WL 10672487, at *2. However, to avoid Defendant-Respondents "conducting a manual case-by-case review of thousands of physical case files and electronic records" (ECF No. 92 at 5), the Court orders Defendant-Respondents to produce responsive information to the extent it is available in databases.

Thus, Defendant-Respondents' motion for protective order is **GRANTED IN PART** and Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this

3:17-cv-491-BAS-AHG

discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### z. DOJ Interrogatory No. 2:

> For each fiscal year SINCE 2016, please state the number of individuals who had a CUSTODY HEARING prior to their INITIAL MCH on the DETAINED DOCKET and the number of individuals who had a CUSTODY HEARING on the same day as or after their INITIAL MCH on the DETAINED DOCKET, both broken down based on whether the CUSTODY HEARING occurred on the DETAINED DOCKET for the Otay Mesa Detention facility or the DETAINED DOCKET for the Imperial Regional Detention Facility.

As to this discovery request, Defendant-Respondents object that the information sought is premature and overbroad as to the scope of the lawsuit. ECF No. 83-1 at 20; ECF No. 92 at 28.

In this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this stipulated date range, the Court finds that information is relevant to Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 16–17 (analyzing cases that examined different lengths of detention and whether they violated substantive due process, and stating that the "duration of the detention and the burden placed on state officials in providing procedural safeguards are highly relevant to a constitutional examination of post-arrest detentions"). The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court also finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County.

ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id.* at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, Imperial County is clearly within the scope of Plaintiff-Petitioners' claims.

Thus, Defendant-Respondents' motion for protective order is **DENIED** and Plaintiff-Petitioners' motion to compel is **GRANTED** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### aa. DOJ Interrogatory No. 3:

> For each fiscal year SINCE 2016, please state the number of individuals who were unrepresented by counsel at their INITIAL MCH on the DETAINED DOCKET but who were represented by counsel at their SECOND MCH, whether or not on the DETAINED DOCKET, both based on whether the INITIAL MCH occurred on the DETAINED DOCKET for the Otay Mesa Detention facility or the DETAINED DOCKET for the Imperial Regional Detention Facility.

As to this discovery request, Defendant-Respondents object for four main reasons: (1) that the information sought is overbroad to the scope of the lawsuit because it seeks information from Otay Mesa and Imperial Immigration Courts since 2016, (2) that the information sought is irrelevant to the issues in this lawsuit, (3) that production is unduly burdensome and not proportional to the needs of the case, and (4) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 83-1 at 19–20; ECF No. 92 at 29–30. Plaintiff-Petitioners argue that the requested "information is relevant to determine whether a prompt first appearance is a meaningful safeguard in assisting detainees to obtain counsel." ECF No. 86-1 at 14-15.

As to overbreadth and relevance, in this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this stipulated date range, the Court finds that information is relevant to

Plaintiff-Petitioners' substantive due process claims. *See* ECF No. 63 at 25 (noting that plaintiff-petitioners' unrepresented status impacts the substantive due process "shocks the conscience" analysis). The Court agrees with Plaintiff-Petitioners that "[i]nformation regarding the duration of each step in the process from apprehension to first appearance is also crucial because the Court must determine whether the overall delay in presentment is reasonable and has "sufficient justification." ECF No. 86-1 at 12 (citing ECF No. 63 at 27).

The Court also finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id*. at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, Imperial County is clearly within the scope of Plaintiff-Petitioners' claims. Thus, the Court overrules Defendant-Respondents' overbreadth objections as well.

The Court finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

As to burden, Defendant-Respondents argue that "this information is not captured or organized in EOIR's electronic database in a manner that would readily allow EOIR to completely and accurately provide this information without conducting a manual case-by-case review of thousands of ROPs and electronic records to definitively determine each individual's representation status at an initial or subsequent master calendar hearing." ECF No. 92 at 29; ECF No. 89 at 8–10. At oral argument, the Court sought clarification as to whether the information is readily available within the EOIR databases. Based on counsel's representations, the Court agrees that Defendant-Respondents have made a sufficient showing that it would be unduly burdensome for Defendant-Respondents to produce this information.

Thus, Defendant-Respondents' motion for protective order is **GRANTED** and Plaintiff-Petitioners' motion to compel is **DENIED** as to this discovery request.

### bb. DOJ Interrogatory No. 4:

> For each fiscal year SINCE 2016, please state the number of CUSTODY HEARINGS at which an immigration judge rendered a determination regarding custody, broken down to show the number of such hearings at which an immigration judge (a) ordered a DETAINEE released without payment of bond, (b) ordered a reduction in the bond amount set by the Department of Homeland Security ("DHS") or set a bond if DHS did not set one, and (c) did not alter the custody and bond determination made by DHS, further broken down by whether the CUSTODY HEARING occurred on the DETAINED DOCKET for the Otay Mesa Detention facility or the DETAINED DOCKET for the Imperial Regional Detention Facility.

As to this discovery request, Defendant-Respondents object for four main reasons: (1) that the information sought is overbroad to the scope of the lawsuit because it seeks information from Otay Mesa and Imperial Immigration Courts since 2016, (2) that the information sought is irrelevant to the issues in this lawsuit, (3) that production is unduly burdensome and not proportional to the needs of the case, and (4) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 83-1 at 19–20; ECF No. 92 at 30–31. Plaintiff-Petitioners argue that "Custody data and policies are also critical for analysis into the value of existing safeguards, which Defendants have put at issue, such as whether existing procedures provide detainees with a meaningful opportunity to seek release and the extent to which DHS exercises its discretion to release eligible detainees. If in practice these alleged safeguards do not commonly result in eligible detainees securing their release, that is highly relevant to both Plaintiff-Petitioners' substantive due process argument that Defendant-Respondents' practices 'shock the conscience' and procedural due process claims about the risk of erroneous deprivation of liberty and the insufficiency of existing procedural safeguards." ECF No. 86-1 at 12.

As to overbreadth and relevance, in this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this stipulated date range, the Court finds that information regarding the number of hearings in which the Immigration Judge confirmed, modified, or vacated bond or custody determinations made by DHS is relevant to Plaintiff-Petitioners' substantive due process claims. As Plaintiff-Petitioners explained in oral argument, this information is probative as to whether DHS custody determinations are so ineffective that people were detained who should not have been detained in the first place, which impacts the substantive due process "shocks the conscience" analysis.

The Court also finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id*. at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, both Otay Mesa and Imperial County is clearly within the scope of Plaintiff-Petitioners' claims. Thus, the Court overrules Defendant-Respondents' overbreadth objections as well.

The Court finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

As to burden, Defendant-Respondents argue that "EOIR would be required to conduct a manual case-by-case review of thousands of ROPs and electronic records to definitively determine whether DHS set an initial bond, the initial bond set (if any), and whether the immigration judge altered that bond amount." ECF No. 92 at 30–31; ECF No. 89 at 8–10. The Court finds that the purported burden does not outweigh the Plaintiff-Petitioners' need for the information. Thus, the Court grants Plaintiff-Petitioners' motion

to compel as to this interrogatory, but only to the extent that the information is available in Defendant-Respondents' databases.

Thus, Defendant-Respondents' motion for protective order is **DENIED IN PART** and Plaintiff-Petitioners' motion to compel is **GRANTED IN PART** as to this discovery request. The Court orders Defendant-Respondents to produce responsive information from March 9, 2017 to the present, to the extent it is available in databases.

### cc. DOJ Interrogatory No. 5:

> State all facts CONCERNING any burdens to YOU CONCERNING the provision of an initial hearing before an immigration judge more promptly than the INITIAL MCH YOU provided to PLAINTIFFS, including all facts CONCERNING any differences between those burdens and the burdens of providing an initial hearing before an immigration judge more promptly than the INITIAL MCH provided to other DETAINEES.

This interrogatory appears nowhere in the text of Plaintiff-Petitioners' motion to compel or Defendant-Respondents' motion for protective order, yet it was included in the parties' supplemental briefing as still at issue. *See* ECF No. 92. For completeness, the Court will address it.

As to this discovery request, Defendant-Respondents object for four main reasons: (1) that the information sought is overbroad to the scope of the lawsuit because it seeks information from Otay Mesa and Imperial Immigration Courts since 2016, (2) that the information is not relevant, (3) that production is unduly burdensome and not proportional to the needs of the case, and (4) that the subparts cause the number of interrogatories to exceed the limit imposed by the Federal Rules. ECF No. 92 at 31–32.

As to relevance, the Court finds that the burdens Defendant-Respondents cite for providing an initial hearing more promptly are clearly relevant to the Plaintiff-Petitioners' procedural due process claims. To prevail in a procedural due process analysis, Plaintiff-Petitioners must show that the burdens do not outweigh the third factor of the *Mathews* test, i.e., the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements. *See Buckingham*, 603 F.3d at 1082 (explaining that

the third *Mathews* factor concerned "the government's interest, including the additional costs and administrative burdens that additional procedures would entail"). Thus, Plaintiff-Petitioners' request is squarely relevant.

As to overbreadth, in this discovery request, Plaintiff-Petitioners request information beginning in 2016, the year that Plaintiff-Petitioner Gonzalez was detained. At oral argument, the parties represented to the Court that they had negotiated and jointly agreed to limit the date range to begin in March 2017, when the complaint was filed. Given this stipulated date range, the Court finds that information is relevant to Plaintiff-Petitioners' Fifth Amendment claims. The Court also finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id*. at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, both Otay Mesa and Imperial County is clearly within the scope of Plaintiff-Petitioners' claims. Thus, the Court overrules Defendant-Respondents' overbreadth objections as well.

The Court finds that the subparts of the interrogatory do not count as separate interrogatories because they relate to the overall subject matter of the interrogatory. Asking for a breakdown of categories does not create discrete subparts that should be treated as separate interrogatories.

As to burden, Defendant-Respondents argue that a manual case-by-case review "is completely unnecessary to the resolution of Plaintiffs' claims." ECF No. 92 at 31. The Court finds that Plaintiff-Petitioners' interrogatory is essentially a "contention interrogatory," and that Defendant-Respondents need to address its contents in their defense of this case. *See* FED. R. CIV. P. 33(a)(2); *Largan Precision Co. v. Samsung Elecs. Co.*, No. 13cv2740-DMS-NLS, 2015 WL 11251730, at *9 (S.D. Cal. May 5, 2015) (explaining that contention interrogatories are "not to obtain facts, but rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the

proof required to rebut the respondent's position"). Furthermore, in light of the interrogatory's clear relevance, as explained above, Defendant-Respondents' burden in answering does not outweigh the benefit.

Thus, Defendant-Respondents' motion for protective order is **DENIED** as to this discovery request.

### dd. EOIR Deposition Topic No. 2:

> EOIR policies, practices, and procedures – or the extent to which EOIR lacks any such policies, practices, or procedures – for advising individuals with cases on the DETAINED DOCKETS of their rights and providing them an opportunity to be heard at their immigration court hearings, including at their MASTER CALENDAR HEARINGS and CUSTODY HEARINGS.

Defendant-Respondents object to this deposition topic because "any such 'policies, practices, and procedures' are simply those provided for by statute and regulation, as well as those set forth in the publicly available Immigration Court Practice Manual," and therefore testimony on the topic would be unnecessarily duplicative. ECF No. 83-1 at 22–23; ECF No. 92 at 32–34 Plaintiff-Petitioners counter that production of documents on a topic does not render a deposition duplicative, because "Among other things, testimony could confirm the extent to which Defendants actually comply with the Manual's policies, fill gaps not addressed in the Manual, or put application of the Manual into meaningful context for the factfinder. In short, testimony is necessary to probe any differences between policy and practice." ECF No. 88 at 8. Defendant-Respondents additionally argue that "to the extent that Plaintiffs seek discovery, through this deposition topic, into how immigration judges interpret and implement the statutes and regulations governing an alien's statutory and regulatory right for an 'opportunity to be heard' such discovery is impermissible." ECF No. 83-1 at 23. Plaintiff-Petitioners respond that their inquiry "does not require 'probing into the mental process' of the immigration judge in any 'case-specific' matter." ECF No. 88 at 9.

First, the Court agrees with Plaintiff-Petitioners that "[t]he fact that the [Defendant-Respondents] have produced documents on a topic is irrelevant to their obligation to

provide testimony at a 30(b)(6) deposition." *Westmoreland*, 2019 WL 932220, at *7. Plaintiff-Petitioners should not be foreclosed from asking for explanation of policies in the manual and whether the rules are generally followed, for example.

Second, the Court finds that information regarding custody hearings and custody determinations, other than the reasons for the determination, such as the fact or timing of a hearing, when detainees were advised of their rights, and the ultimate decision, is relevant to Plaintiff-Petitioners' substantive and procedural due process claims. *See* ECF No. 63 at 25, 32 (stating that "continued detention without a prompt first appearance before an immigration judge" relates to the substantive due process "shocks the conscience" factor, and that "determinations regarding initial custody and detention are made by officers of the arresting agency" relates to the recognized procedural due process value of presentment to a neutral adjudicator); *see also id.* at 25 (noting that plaintiff-petitioners' unrepresented status impacts the substantive due process "shocks the conscience" analysis). However, the Court finds that testimony regarding the reasoning why a particular custody determination was made is not relevant.

Thus, the Defendant-Respondents' motion for protective order is **GRANTED IN PART** insofar as Defendant-Respondents need not prepare a witness to testify regarding the *reasoning* why a particular custody determination was made. To the extent the policies, practices, or procedures have been produced in document discovery, Plaintiff-Petitioners shall identify the document(s) they seek to question the witness about.

### ee. EOIR Deposition Topic No. 3:

> Staffing levels, available resources, and administrative burdens for immigration courts within the geographical region of the United States District Court for the Southern District of California.

Defendant-Respondents object to the extent this topic seeks information relating to Imperial Detention Center and Immigration Court. ECF No. 92 at 34. However, the Court finds that information regarding Imperial Immigration Courts is clearly within the scope of the lawsuit. Plaintiff-Petitioners define their putative class as "individuals in the Southern

District of California . . .," which includes Imperial County. ECF No. 1 at ¶¶ 58, 68. Further, Plaintiff-Petitioners alleged specific allegations regarding Imperial County in the complaint. *See, e.g.*, *id.* at ¶¶ 5, 15, 40, 50–56, 59, 66. Therefore, Imperial County is clearly within the scope of Plaintiff-Petitioners' claims. The Court also finds that this topic is clearly relevant. *See Buckingham*, 603 F.3d at 1082 (explaining that the third *Mathews* factor concerns "the government's interest, including the additional costs and administrative burdens that additional procedures would entail"). However, the Court finds that the topic is not sufficiently specific, and as a result, no agency witnesses could likely testify to the requested information.

During oral argument, the Court pressed the parties regarding the appropriateness of a deposition on this topic. Upon review of the record and considering the arguments of counsel, the Court finds a 30(b)(6) deposition would be unduly burdensome and the discovery would be more efficiently conducted through traditional interrogatories or contention interrogatories. *See, e.g.*, *Gen-Probe Inc.*, 2012 WL 12845593, at *1–*2; *TV Interactive Data Corp.*, 2012 WL 1413368, at *2. The Court finds that responses to these inquiries can clearly be provided more efficiently and fairly through answers to interrogatories prepared by Defendant-Respondents' counsel. *See Bank of Am., N.A.*, 2016 WL 2843802, at *3.

Thus, Defendant-Respondents' motion for protective order is **GRANTED**.

### ff.  DHS Interrogatory No. 9:

State all facts CONCERNING what constitutes "an emergency or other extraordinary circumstance," as contemplated by 8 C.F.R. § 287.3(d), including whether any such circumstances existed in PLAINTIFFS' cases.

ECF No. 83-2 at 26.

There is an exception to the 48-hour requirement in 8 C.F.R. § 287.3(d) for "an emergency or other extraordinary circumstance," the parameters of which are the subject of a discovery request. ECF No. 86-1 at 9 n.2. In an email dated October 30, 2019, counsel for Defendant-Respondents "disavowed any intention to use this emergency exception in

defending this action." *Id*. Thus, as to this discovery request, Plaintiff-Petitioners request that the period for resolving disputes be tolled until a formal stipulation can be negotiated and submitted to the Court for approval.

This interrogatory is mentioned within Plaintiff's motion to compel, however, it does not appear in the parties' supplemental briefing table of applicable requests at issue. *Compare* ECF No. 86-1 at 9 n.2 *with* ECF No. 92. Thus, at the hearing, the Court inquired as to whether the request was still at issue. Plaintiff-Petitioners responded that they still request an order from the Court tolling the time to bring a discovery dispute regarding this discovery request to the Court's attention. Defendant-Respondents did not oppose. Thus, the Court **GRANTS** Plaintiff-Petitioners' request and orders that any dispute regarding DHS Interrogatory No. 9 be brought to the Court's attention no later than **May 1, 2020**.

## VII.  MOTION TO FILE DOCUMENTS UNDER SEAL

On November 4, 2019, Plaintiff-Petitioners filed a motion for an order to file portions of certain documents related to Plaintiff-Petitioners' Response in Opposition to Defendant-Respondents' Motion for Protective Order under seal. ECF No. 84. Defendant-Respondents do not oppose the motion. *Id*. at 2. Specifically, Plaintiff-Petitioners seek to file under seal the following documents:

1.    Ex. A to the Declaration of Bardis Vakili: an email dated October 11, 2019 between counsel for the parties referencing designated materials.

2.    Ex. B to the Declaration of Bardis Vakili: excerpts of production documents produced and designated under the Protective Order by Defendants in this action.

*Id*. These exhibits "reference and contain documents from Defendants' databases pertaining to Plaintiffs." *Id*.

Courts have historically recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point."

*Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm. Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to overcome this strong presumption, a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure. *See Kamakana*, 447 F.3d at 1178; *see also Mezzadri v. Medical Depot, Inc.*, No. 14cv2330-AJB-DHB, 2015 WL 12564223, at *3 (S.D. Cal. Dec. 18, 2015).

A party requesting that the court seal materials attached to a non-dispositive motion must make a particularized showing of good cause. *Kamakana*, 447 F.3d at 1180. Here, Plaintiff-Petitioners contend that the exhibits should be sealed because "Defendants produced these documents in discovery and designated them as confidential and subject to the Protective Order in this case." ECF No. 84 at 2. This reason is itself not sufficient to constitute good cause. *See San Diego Comic Convention v. Dan Farr Prods.*, No. 14cv1865-AJB-JMA, 2018 WL 1744536, at *3 (S.D. Cal. Apr. 10, 2018) ("Indeed, some district courts have declined to seal documents when the sole basis for the request is a protective order that covers them"); *Cortina v. Wal-Mart Stores, Inc.*, No. 13cv02054-BAS-DHB, 2016 WL 4556455, at *1 (S.D. Cal. Sept. 1, 2016) ("[P]arty's designation of documents as 'confidential' pursuant to such [protective] order, is not itself sufficient to show good cause"); *Durham v. Halibrand Performance Corp.*, No. 14cv1151-DMS-JLB, 2014 WL 12520130, at *1 (S.D. Cal. Dec. 12, 2014) ("That a document is designated confidential pursuant to a protective order is of little weight when it comes to sealing documents which are filed with the Court").

Plaintiff-Petitioners also articulated, however, specific reasons why these documents should be sealed. *See Kamakana*, 447 F.3d at 1178 (explaining a party seeking to seal a judicial record must articulate justifications for sealing that outweigh the public policies favoring disclosure). Exhibits A and B "are printouts from various law enforcement databases, and include information that does not belong in the public domain." ECF No. 84 at 2. These printouts contain law enforcement notes at the time of detention, timing of welfare checks in the cells, and database codes. *See* ECF No. 85 at 11–14, 19. The exhibits

also contain non-public information regarding the individual Plaintiff-Petitioners, such as height, weight, hair color, eye color, birthdate, birthplace, and marital status. ECF No. 84 at 2; ECF No. 85 at 9–10, 23. The Court agrees that public disclosure of this information could be detrimental to both Plaintiff-Petitioners and Defendant-Respondents. Good cause appearing, the Court **GRANTS** Plaintiff-Petitioners' motion, insofar as it seeks to seal: (1) portions of Exhibit A to the Declaration of Bardis Vakili, and (2) Exhibit B to the Declaration of Bardis Vakili.

Plaintiff-Petitioners have already publicly filed on the docket the necessary redacted version of the papers (ECF No. 86-2), and electronically lodged the unredacted version of the papers under seal (ECF No. 85). Thus, the Clerk's Office is directed to file the lodged documents at ECF No. 85 under seal.

## VIII. SCHEDULING ORDER

In light of the procedural history of this case and the deadlines ordered herein, the Court **VACATES** the deadlines set forth in the Court's September 25, 2019 Scheduling Order (ECF No. 73), and issues the following Amended Scheduling Order:

1. Fact and class discovery are not bifurcated, but class discovery must be completed by **June 26, 2020**.

2. Plaintiff-Petitioners must file a motion for class certification by **July 17, 2020**. Defendant-Respondents' opposition shall be filed no later than **August 14, 2020**. Plaintiff-Petitioners' reply shall be filed no later than **August 28, 2020**. A hearing on the motion for class certification is scheduled for **Monday, September 14, 2020 at 11:00 a.m.** before the Honorable Cynthia Bashant. Counsel shall refer to the Standing Order for Civil Cases for the Honorable Cynthia Bashant for the Court's requirements.

3. The parties shall continue pursuing fact discovery while Plaintiff-Petitioners' motion for class certification is pending before the Court.

4.      Within **three (3) days** of a ruling on the motion for class certification, the parties must jointly contact the Court via email (at efile_goddard@casd.uscourts.gov) to arrange a further case management conference.

5.      The dates set forth herein will not be modified except for good cause shown.

## IX.    CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.      The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff-Petitioners' Motion to Compel (ECF No. 86). Defendant-Respondents shall serve supplemental discovery responses and produce all responsive documents consistent with this Order no later than **May 1, 2020**:

2.      The Court **GRANTS IN PART** and **DENIES IN PART** Defendant-Respondents' Motion for Protective Order (ECF No. 83); and

3.      The Court **GRANTS** Plaintiff-Petitioners' Motion to File Documents Under Seal (ECF No. 84). The Clerk's Office shall file the lodged documents at ECF No. 85 under seal.

**IT IS SO ORDERED**.

Dated:  March 20, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge