UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORLANDO CANCINO CASTELLAR, *et al.*,<br><br>       Plaintiffs,<br><br>   v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>       Defendants. | Case No. 17-cv-00491-BAS-AHG<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION (ECF No. 137)** |

In this motion for reconsideration, Plaintiffs[1] ask the Court to reinstate their Fourth Amendment claims in light of *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020), and *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020). The Court is asked to decide whether the two cases constitute an intervening change in controlling law that requires altering the Court's prior rulings. In the prior rulings, the Court found that: (1) 8 U.S.C. § 1252(b)(9) bars jurisdiction over Plaintiffs' Fourth Amendment claim challenging continued detention beyond 48 hours without a determination of probable cause by a neutral decisionmaker (ECF No. 56 at 11–13) and (2) 8 U.S.C. § 1252(g) bars jurisdiction over Plaintiff Gonzalez's Fourth Amendment claim

---

[1] The parties use the terms "Plaintiff-Petitioners" and "Defendant-Respondents." For ease, the Court uses the terms "Plaintiffs" and "Defendants."

because he was initially placed into mandatory detention as a result of an expedited removal proceeding (ECF No. 49 at 14–15). Because neither *Gonzalez* nor *Regents* is irreconcilable with, or creates a significant shift away from, this Court's reasoning behind the dismissal of Plaintiffs' Fourth Amendment claims, the Court denies Plaintiffs' motion for reconsideration.

## I.   RELEVANT BACKGROUND[2]

Plaintiffs filed the putative class action complaint and habeas petition (the "Complaint"), alleging that Defendants have a "policy and practice of detaining individuals for extended periods without promptly presenting them for an initial hearing before an immigration judge or promptly seeking judicial review of probable cause for detention." (Compl. ¶¶ 1, 4–6.) Each Plaintiff was taken into custody by various immigration enforcement agencies and detained pursuant to Defendants' alleged policy. (*Id.* ¶¶ 47–49.) Plaintiffs alleged that "many individuals" who have claims to relief from removal "routinely languish in detention for two months or longer before they see a judge" because of Defendants' alleged policy. (*Id.* ¶ 1.)

The Complaint challenged Defendants' conduct as violating (1) detained individuals' Fifth Amendment procedural and substantive due process rights by causing detention without prompt presentment, (2) their Fourth Amendment rights to a prompt judicial determination of whether probable cause justifies their detention, and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1), 706(2)(A)–(D). (*Id.* ¶¶ 38–44, 75–80 (Fifth Amendment); *id.* ¶¶ 81–84 (Fourth Amendment); *id.* ¶¶ 85–90 (APA).) Plaintiffs requested declaratory relief, an injunction, and the issuance of a writ of habeas "commanding the release of Plaintiff-Petitioners and class members from detention" to the extent their right to prompt presentment and probable cause determination was violated.

---

[2] The Court's earlier Orders discuss in detail the factual allegations and history of this case. (ECF No. 49 at 3:6–11:2; ECF No. 63 at 3:7–10:3.)

17cv491

(*Id.* at 23.) Defendants moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 28.)

On February 8, 2018, the Court granted Defendants' motion to dismiss for lack of jurisdiction. (ECF No. 49.) The Court determined that it lacks jurisdiction over Gonzalez's Fourth Amendment probable cause claim pursuant to 8 U.S.C. § 1252(g) because he was initially placed into mandatory detention as a result of expedited removal proceedings. (*Id.* at 15.) The Court further determined that 8 U.S.C. §§ 1252(a)(5) and 1252(b)(9) deprive it of jurisdiction over Cancino's and Hernandez's Fourth Amendment claims and all Plaintiffs' Fifth Amendment claims because those claims arise from removal proceedings. (*Id.* at 22–27.) The Court concluded that the statutory provisions require Plaintiffs to raise these claims in in a petition for review ("PFR"). (*Id.*) Lastly, the Court determined that Plaintiffs' request for habeas relief did not prevent the channeling of their claims. (*Id.* at 33–41.) The Court dismissed the Complaint, but granted Plaintiffs' leave to amend "to assert claims over which th[e] Court may properly exercise jurisdiction." (*Id.* at 42.)

On February 27, 2018, the Supreme Court decided *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Plaintiffs moved for reconsideration of the Order's Section 1252(b)(9) conclusions. (ECF No. 50.) The Court applied *Jennings* by asking whether the legal questions raised by Plaintiffs' claims arose from the removal proceedings within the scope of Section 1252(b)(9). (ECF No. 56 at 9:5–8 (citing *Jennings*, at 841 n.3)). As to Plaintiffs' Fourth Amendment claims, the Court identified the following legal question: whether, after 48 hours of arrest and before an initial master calendar hearing, a detainee should be provided an independent probable cause determination of the detainee's removability. (*Id.* at 11:21–22.) Because the probable cause determination requested by Plaintiffs would not concern any purely custodial matters such as flight risk but only scrutinize the individual's removability, the Court concluded that Plaintiffs' Fourth Amendment claims raised legal questions that arose from an action taken or proceeding brought to remove an alien and are thus barred under Section 1252(b)(9). (*Id.* at 12:5–10, n.7.)

As to the Fifth Amendment claims, the Court found that Plaintiffs raised the following legal question: whether the government violates the Fifth Amendment by detaining individuals without promptly presenting them before a judge. (ECF No. 56 at 13:19–22.) Because the resolution of that question would require examining only the "separate conduct" of immigration officials that causes a delay of the process by which the removability is determined and not the detainee's removability itself, the Court concluded that the Fifth Amendment claims were outside the scope of Section 1252(b)(9). Accordingly, the Court reinstated Plaintiffs' Fifth Amendment claims but not the Fourth Amendment claims.

Defendants renewed the motion to dismiss the Complaint. (ECF No. 60.) The Court granted the motion in part and denied it in part. (ECF No. 63.) The Court dismissed Plaintiff Gonzalez's procedural due process claim and all Plaintiffs' Section 706(1) APA claims but declined to dismiss other Plaintiffs' procedural due process claims and all Plaintiffs' substantive due process claims. (*Id.*)

On June 18, 2020, the Supreme Court decided *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020), and on September 11, 2020, the Ninth Circuit decided *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020). Plaintiffs move for reconsideration of the Court's prior rulings dismissing Plaintiffs' Fourth Amendment claims for lack of subject matter jurisdiction. (ECF No. 177.) The Court held an oral argument. (ECF No. 177.) The motion for reconsideration is ripe for decision.

## II.   LEGAL STANDARD

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion to reconsider must (1) show some valid reason why the court should reconsider its prior decision, and (2) set

forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180 (D. Nev. 2003) (citing *All Hawaii Tours Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648–49 (D. Haw. 1987), *rev'd on other grounds*, 855 F.2d 860 (1988)).

## III. ANALYSIS

### A. Section 1252(b)(9)

Section 1252(b)(9) provides, in relevant part:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

The question is whether *Gonzalez* constitutes an intervening change in controlling law that provides a valid reason for the Court to reverse its prior conclusion that Section 1252(b)(9) bars jurisdiction over Plaintiffs' Fourth Amendment claims. The Court finds that it does not.

#### 1. The Ninth Circuit's Ruling in *Gonzalez*

*Gonzalez* was an action challenging Immigration and Customs Enforcement (ICE)'s use of immigration detainers, brought by a class representative who was a United States citizen booked on state law criminal charges by the Los Angeles Police Department. *Gonzalez*, 975 F.3d at 797. An ICE agent erroneously determined that the plaintiff was removeable and issued an immigration detainer against him, requesting up to five more days in jail after when the plaintiff could be released from the county's custody on state criminal charges, so that ICE could take him into custody. *Id.* While the detainer remained pending, the plaintiff sued the government to challenge the legality of the detainer. *Id.*

As relevant to present purposes, the plaintiff argued that the government violated the Fourth Amendment "(1) because a detainer is an unlawful seizure without probable cause or lawful authority, and (2) the Government fails to provide a prompt probable cause determination by a neutral and detached magistrate." *Gonzalez*, 975 F.3d at 800. For each of those claims, the district court certified two separate classes: (1) the "Probable Cause Subclass" and (2) the "Judicial Determination Class." *Id.* at 801. The Probable Cause Subclass raised the following claims: whether (1) "the Government violates the Fourth Amendment by issuing immigration detainers to state and local [law enforcement agencies] in states that do not authorize such . . . enforce[ment of] civil immigration law (the State Authority Claim)" and (2) "whether the databases that ICE uses to issue immigration detainers from the Central District are unreliable sources of information for probable cause determinations (the Database Claim)." *Id.* The Judicial Determination Class raised a claim pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975) (the *Gerstein* claim). *See id.*

The district court *sua sponte* granted summary judgment on the Judicial Determination Class's *Gerstein* claim in favor of the government, holding that *Gerstein* did not extend to the civil immigration context. Only the Probable Cause Subclass proceeded to bench trial. The court amended the definition of the Probable Cause Subclass as follows:

> all current and future persons who are subject to an immigration detainer issued by an ICE agent located in the Central District [ ], where the detainer is not based upon a final order of removal signed by an immigration judge or the individual is not subject to ongoing removal proceedings and the detainer was issued solely on the basis of electronic database checks.

*Gonzalez*, 975 F.3d at 801. Upon the conclusion of the trial, the district court held as to the State Authority Claim that "ICE 'violate[d] the Fourth Amendment by issuing detainers to state and local law enforcement agencies in states that do not expressly authorize civil immigration arrests in state statute.'" *Gonzalez*, 975 F.3d at 801 (citing district court opinion). As to the Database Claim, the court held that ICE violated the Fourth

Amendment by relying on unreliable databases to make probable cause determinations. *Id.* The court entered relevant permanent injunctions. *Id.* at 801–02.

The Government appealed the injunctions, arguing in part that the named class representative was "atypical of unnamed noncitizen class members over whose claims the district court lacked subject matter jurisdiction pursuant to 8 U.S.C. § 1252(b)(9)." *Id.* at 802, 810. Judge Milan Smith, writing for the panel majority, held that Section 1252(b)(9) did not bar jurisdiction over the claims of noncitizen class members. Judge Smith cites two reasons for his conclusion. First, the class members did not "ask[] for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Gonzalez*, 975 F.3d at 810 (cleaned up) (quoting *Regents*, 140 S. Ct. at 1907 and citing *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1269 (9th Cir. 2020)). The panel majority noted "[t]he Probable Cause Subclass is defined to *exclude* individuals against whom there is a final order of removal as well as any individual subject to ongoing removal proceedings" and that "immigration detainer is *not* an administrative warrant for the arrest of an individual on civil immigration charges." *Gonzalez*, 975 F.3d at 810. Second, the panel majority held that "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.* In reaching this conclusion, Judge Smith relied on the First Circuit's interpretation of Section 1252(b)(9)'s "arising from" language as "exclud[ing] claims that are independent of, or wholly collateral to, the removal process." *Gonzalez*, 975 F.3d at 810 (citing *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) and *Hernández v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005)).

Separately, on cross appeal, the panel majority reversed the district court's ruling that the *Gerstein* rule applied only to criminal detentions and not civil immigration detentions. *Gonzalez*, 975 F.3d at 824. The panel majority remanded for the district court to reinstate the *Gerstein* claim but clarified that its ruling was limited to detentions made without an administrative warrant. *Id.* at 826 n.27 (declining the plaintiffs' request to hold that *Gerstein* is also invoked by the government's new policy requiring the issuance of an

administrative warrant alongside any immigration detainer because "the district court never considered that issue" and the Ninth circuit is "a court of review and not first view").

### 2. Whether *Gonzalez* Constitutes a Change in Controlling Law

Plaintiffs argue *Gonzalez* constitutes an intervening change in controlling law that requires reversing this Court's prior application of Section 1252(b)(9) to Plaintiffs' Fourth Amendment claims. An intervening change in controlling law is found where the reasoning or theory of a case "is clearly irreconcilable with the reasoning or theory of intervening higher authority," *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003), or where "a subsequent decision 'creates a *significant shift* in [a court's] analysis,'" *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D. Ariz. 2012) (quoting *Beckstrand v. Elec. Arts Grp. Long Term Disability Ins. Plan*, 2007 WL 177907, at *2 (E.D. Cal. Jan. 19, 2007)). For example, where a new circuit decision adopts and applies otherwise persuasive authority that lower courts previously refused to follow, the new circuit decision is considered an intervening change in controlling law. *See Teamsters Loc. 617*, 282 F.R.D. at 223 (citing *Sequoia Forestkeeper v. U.S. Forest Serv.*, 2011 WL 902120 (E.D. Cal. March 15, 2011)).

Here, *Gonzalez* is not clearly irreconcilable with this Court's application of Section 1252(b)(9), nor does it create a significant shift that requires this Court to change its analysis. The *Gonzalez* court merely followed the holding in *Jennings* that Section 1252(b)(9) applies to challenges against "an order of removal," "the decision to detain [the plaintiffs] in the first place or to seek removal," or "any part of the process by which their removability will be determined." *See Jennings*, 138 S. Ct. at 841. Because the subclass in *Gonzalez* was "defined to exclude individuals against whom there is a final order of removal as well as any individual subject to ongoing removal proceedings," the panel majority concluded that the class did not even "challeng[e] any removal proceedings." *See Gonzalez*, 975 F.3d at 810 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020)).

The legal questions involved in *Gonzalez* were different from those raised by Plaintiffs in this action. In *Gonzalez*, at issue was the legality of ICE's issuance of immigration detainers to state and local law enforcement agencies in jurisdictions where those agencies were not allowed to enforce civil immigration law (the State Authority Claim) and the legality of ICE's use of "unreliable sources of information for probable cause determinations (the Database Claim)." *Gonzalez*, 975 F.3d at 801. Neither the State Authority Claim nor the Database Claim involved the legal question raised by Plaintiffs in this action: whether the Fourth Amendment requires a determination of probable cause supporting the removability of a detained individual.

The *Gonzalez* panel's remand on the Judicial Determination Class's *Gerstein* claim does not require reversing this Court's Section 1252(b)(9) conclusion. Plaintiffs point to no part of the case record in *Gonzalez* that discusses Section 1252(b)(9)'s applicability to the *Gerstein* claim, and the Court's own review shows the issue was not before the Ninth Circuit.

More importantly, Plaintiffs' *Gerstein* is substantially different from the *Gonzalez* plaintiffs' *Gerstein* claim. The Judicial Determination Class in *Gonzalez* was composed of individuals held pursuant to an immigration detainer, "where the detainer is not based upon a final order of removal signed by an immigration judge or **the individual is not subject to ongoing removal proceedings**." *Gonzalez*, 975 F.3d at 801 n.7 (emphasis added). There, "[t]rial evidence . . . indicated that ICE does not take into custody up to 80% of the individuals for whom [the government] issues immigration detainers." *Gonzalez*, at 800. Because no removal proceedings were initiated against the class members, by definition of the class and by practice, there simply was no claim to channel and consolidate for final review as directed by Section 1252(b)(9). The same cannot be said as to the present case, where the proposed class includes individuals subject to ongoing removal proceedings. (*See* Mot. Class Cert., ECF No. 125.) Unlike in *Gonzalez*, in which the *Gerstein* claim that was divorced from the removal proceedings due to the plain fact that the class definition excluded individuals facing ongoing removal proceedings, here, the *Gerstein* claim is not

so divorced from the removal proceedings. Therefore, the *Gonzalez* panel's remand of the *Gerstein* claim does not alter this Court's conclusion that the neutral probable cause review would function as a review of removability, which, under Section 1252(b)(9), must be consolidated with judicial review of a final order of removal.

Accordingly, the Court does not find that *Gonzalez* constitutes an intervening change in controlling authority. Plaintiffs have not otherwise shown that the Court has committed clear error or made a decision that is manifestly unjust. Therefore, the Court affirms its earlier ruling that Section 1252(b)(9) bars Plaintiffs' Fourth Amendment claims.

### B.   Section 1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Ninth Circuit has interpreted Section 1252(g) as barring a *Bivens* claim for false arrest where the detention directly followed from the decision to commence proceedings. *See Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007) ("*Sissoko III*"). As this Court previously summarized, in *Sissoko III*,

> [In *Sissoko III*,] [t]he plaintiff, a native and citizen of Senegal, was taken into custody as an "arriving alien." He indicated that he had a fear of persecution if he was returned to Senegal and thus was placed into statutorily-mandated detention under 8 U.S.C. 1225(b)(1) pending a final determination of a credible fear of persecution. Because no expedited order of removal was issued against him, Sissoko could have pursued a habeas remedy under 8 U.S.C. § 1252(e)(2), which in part applies to aliens in expedited removal proceedings. Under these circumstances, the Ninth Circuit found that the *Bivens* damages action was barred by Section 1252(g) because Sissoko's detention directly resulted from the decision to commence proceedings against him and an "alternative remedy directly addressing the claim injury" was available.

(ECF No. 49 at 14:22–15:9 (omitting citations).) Relying on *Sissoko III*, the Court previously ruled that it lacked jurisdiction to consider Plaintiff Gonzalez's Fourth

Amendment probable cause claim under Section 1252(g) because, much like the plaintiff in *Sissoko III*, Gonzalez was detained as a result of being placed in expedited removal proceedings and had an alternative remedy to challenge the prolonged detention. (ECF No. 49 at 15.)

Plaintiffs argue the Supreme Court's *Regents* decision constitutes an intervening change in controlling law that requires a reversal of this Court's Section 1252(g) conclusion. According to Plaintiffs, the Supreme Court clarified in *Regents* that Section 1252(g) "deprives courts of jurisdiction over a narrow set of claims involving challenges to three discretionary decisions by DHS." (Pls.' Mem. P&A ISO Mot. for Reconsideration, ECF No. 137-1 at 8:14–17.) However, the proposition that Section 1252(g) should be applied narrowly to bar only claims that "aris[e] from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" is not a new interpretation of Section 1252(g). The Supreme Court and the Ninth Circuit has so interpreted the provision for a long time. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Wong v. United States*, 373 F.3d 952, 963–64 (9th Cir. 2004); *see also Barahona–Gomez v. Reno*, 236 F.3d 1115, 1120–21 (9th Cir. 2001) (holding that Section 1252(g) does not bar judicial review of decisions or actions that . . . are separate from the "decision to adjudicate"). This Court considered those precedents and concluded that Plaintiff Gonzalez's Fourth Amendment claim falls under the narrow scope of jurisdictional bar under Section 1252(g) because his claim arose "from the decision to commence expedited removal proceedings." (ECF No. 49 at 15 (citing *Sissoko III*, 509 F.3d at 949).)

Plaintiffs do not argue, and the Court does not find, that *Regents* created a significant shift in the law, much less made *Sissoko III* clearly irreconcilable with the *Regents* decision. The Court finds no reason to alter its application of *Sissoko III* to Plaintiff Gonzalez's Fourth Amendment claim.

Therefore, the Court denies Plaintiffs' request to reverse the dismissal of Plaintiff Gonzalez's Fourth Amendment claim under Section 1252(g).

## IV. CONCLUSION

The Court **DENIES** Plaintiffs' motion for reconsideration. (ECF No. 137.)

**IT IS SO ORDERED.**

DATED: August 30, 2021

Hon. Cynthia Bashant
United States District Judge