**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ORLANDO CANCINO CASTELLAR, *et al.*,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ALEJANDRO MAYORKAS, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 17-cv-00491-BAS-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION (ECF No. 125) AND CERTIFYING THE CLASS FOR DECLARATORY RELIEF** |

　　　In this action, individuals who were held in the custody of Defendants Department of Homeland Security ("DHS") and its agencies challenge Defendants for not providing prompt presentment to an immigration judge within 48 hours of arrest.  Plaintiffs seek to certify a class of individuals, other than unaccompanied minors or individuals with administratively final removal orders, who are or will have been in the civil custody of the San Diego offices of Defendants for longer than 48 hours and have not had a hearing before an immigration judge for declaratory and injunctive relief.

　　　The Court is asked to decide whether it has jurisdiction under Section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, to certify the class.  The Court is also asked to decide whether the proposed class definition in the renewed motion for

class certification improperly broadens the class, as compared to the class definition set forth in the Complaint. After resolving these preliminary issues, the Court must decide whether the proposed class satisfies the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

The Court holds that it lacks jurisdiction under Section 1252(e)(1) to certify the class as to individuals screened for or subject to expedited removal proceedings under Section 1225(b)(1) because the statute requires that those individuals be held in mandatory detention. The Court separately holds that Section 1252(f)(1) strips it of jurisdiction to certify the class for injunctive relief. In addition, the Court finds that Plaintiffs impermissibly broaden the class by including individuals detained outside of the district in the class definition, who were not included in the initial proposed class definition set forth in the Complaint. The Court exercises its jurisdiction to redefine the class as follows:

> All individuals in the Southern District of California—other than individuals subject to expedited removal under 8 U.S.C. § 1225(b)(1), unaccompanied minors, or individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego offices of Defendants for longer than 48 hours and (2) have not had a hearing before an immigration judge.

The Court concludes that it has jurisdiction to certify the class as redefined for declaratory relief and that the redefined class satisfies the requirements of Rule 23(a) and (b)(2). Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' renewed motion for class certification. (ECF No. 125.)

## I.    BACKGROUND

### A.    Named Plaintiffs[1]

Plaintiffs Jose Orlando Cancino Castellar, Ana Maria Hernandez Aguas, and Michael Gonzalez ("Named Plaintiffs") filed the Complaint on March 9, 2017. (Compl.,

---

[1] The Complaint and the parties use the terms "Plaintiff-Petitioners" and "Defendant-Respondents." For ease, the Court uses the terms "Plaintiffs" and "Defendants."

17cv491

ECF No. 1.)  At the time of the filing of the Complaint, Named plaintiffs had been in Defendants' custody for more than 48 hours following their initial arrests without having seen an immigration judge.  (Compl. ¶¶ 9–11, 47–49, ECF No. 1.)

### 1.   Cancino Castellar

The Complaint describes Cancino Castellar as a noncitizen eligible for Deferred Action for Childhood Arrivals (DACA).  (Compl. ¶ 47.)  Cancino Castellar's Form I-213[2] indicates that he was a student with no criminal history and had lived in the United States from 2004, when he was five years old.  (ECF No. 171-9 at 1, 3.)  DHS took Cancino Castellar into custody on February 17, 2017, and detained him at the Otay Mesa Detention Center.  (Compl. ¶ 47.)  On February 21, 2017, ICE issued him a Notice to Appear ("NTA") and a warrant for his arrest and determined that he should not be released from custody.  (ECF 28-2, at 4-5, NTA.)  The NTA was filed with the immigration court on February 24, 2017.  (*Id.*)  At the time of the filing of the Complaint, on March 9, 2017, Cancino Castellar had not seen an immigration judge nor had he been notified of a date for an initial appearance or a bond hearing.  (Compl. ¶ 47; Cancino Castellar Decl. ¶ 8, ECF No. 125-4.)  Cancino Castellar first saw an immigration judge on March 23, 2017.  (ECF No. 28-2 at 9, Notice of Hearing.)

### 2.   Ana Maria Hernandez Aguas

The Complaint describes Hernandez Aguas as a mother of two U.S. citizen children eligible to apply for cancellation of removal.  (Compl. ¶ 48.)  DHS took Hernandez Aguas into custody on February 7, 2017.  (ECF No. 28-2 at 9.)  She was processed at a Border Patrol station in San Clemente and was sent to another station in Chula Vista, where she stayed until February 12, 2017.  (Hernandez Aguas Decl. ¶¶ 5–6, ECF No. 125-5.)

---

[2] Form I-213 is a recorded recollection of immigration officer's interview with a noncitizen individual.  *See Espinoza v. I.N.S.*, 45 F.3d 308, 309 n.1 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1995) (quoting *Bustos–Torres v. INS*, 898 F.2d 1053, 1056 (5th Cir. 1990)).

Hernandez Aguas was detained first at the San Luis Regional Detention Center for two days and then after at the Otay Mesa Detention Center.  (Compl. ¶ 48.)   ICE filed Hernandez's NTA with the immigration court on February 21, 2021.  (Hernandez Aguas NTA, ECF No. 171-7.)  At the time of the filing of the Complaint, she had not seen an immigration judge nor been scheduled for an initial master calendar hearing.  Hernandez Aguas was presented to an immigration judge for the first time at a bond hearing on March 13, 2017.  (Compl. ¶ 48; Hernandez Aguas Decl. ¶¶ 9–11, ECF No. 125-6.)

### 3.     Michael Gonzalez

Michael Gonzalez was taken into custody on November 17, 2016, at the San Ysidro Port of Entry, where he expressed a fear of persecution in Mexico.  (Gonzalez Decl. ¶¶ 4–5, ECF No. 125-7.)  Gonzalez told a CBP official that he is a United States Citizen and that he was fearful of being forced to live in Mexico.[3]  (*Id.* ¶ 5.)  He was transferred to the Otay Mesa Detention Center a week later.  (*Id.*)  An asylum officer conducted a credible fear interview and determined that Gonzalez had a credible fear of persecution.  (*Id.* ¶ 7.)  DHS served Gonzalez with an NTA on January 5, 2017, and his first hearing in immigration court was scheduled for April 5, 2017.  (*Id.* ¶¶ 8, 9.)  At the time of the filing of the Complaint, Gonzalez had been detained at the Otay Mesa Detention Center without seeing an immigration judge.  (Compl. ¶ 49.)

### B.     Custody Determination and Removal Proceedings

The statutory and regulatory framework relevant to this action is set forth in the Court's prior orders.  (ECF Nos. 49, 56, 63.)  The Court briefly summarizes some significant parts here.

---

[3] While the record is not clear whether there was a determination that Gonzalez was not a United States Citizen, Plaintiffs have "effectively concede[d] that Gonzalez is an 'arriving alien' under applicable law."  (ECF No. 63 at 39:22–23 (citing ECF No. 61 at 22 and 8 U.S.C. § 1225(a)(1)).)

17cv491

## 1.    Initial Custody Determination

An immigration officer may arrest a noncitizen individual with or without a warrant. 8 U.S.C. §§ 1226(a) (arrest with a warrant), 1357(a)(2) (arrest without a warrant).   A warrant is required unless the immigration officer apprehends a noncitizen individual while the individual is entering, attempting to enter, or is present in the United States in violation of the immigration laws.  *See* 8 U.S.C. § 1357(a)(2).

If an arrest is made with a warrant, ICE "may" detain or release the arrested noncitizen individual pending the formal removal proceedings before an immigration judge.  8 U.S.C. § 1226(a).  If an arrest is made without a warrant, the government must "without unnecessary delay" have an officer examine the arrested individual "as to [the individual's] right to enter or remain in the United States."  8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.3(a) (providing that "an alien arrested without a warrant . . . will be examined by an officer other than the arresting officer" but "the arresting officer" may conduct the examination "if taking the alien before another officer would entail unnecessary delay").   Upon finding "prima facie evidence that the arrested alien was entering, attempting to enter, or is present in the United States in violation of the immigration laws," the examining officer must: refer the case to an immigration judge; order the individual removed on an expedited basis, pursuant to 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3(b); or take other action as authorized by relevant law and regulations. 8 C.F.R. § 287.3(b).   Within 48 hours of the arrest without a warrant, the officer must determine "whether the individual will be continued in custody or released" and whether to issue an NTA and an arrest warrant.  8 C.F.R. § 287.3(d).

## 2.    Removal Proceedings

Noncitizen individuals that the CBP determines inadmissible are ordinarily placed in a removal proceeding set forth in Section 240 of the INA unless a statutory exception applies. 8 U.S.C. § 1229a(a)(3).  One such exception applies to arriving aliens and "certain other aliens" who recently entered the United States without inspection and lack valid entry

documents or have tried to gain their admission by fraud. *See* 8 U.S.C. § 1225(b)(1). Those noncitizen individuals are placed in expedited removal proceedings under Section 235(b)(1) of the INA. *Id.*

### a. Section 240 Removal Proceeding

A Section 240 removal proceeding is initiated when an immigration officer files an NTA against an alien with the immigration court, an entity within the Executive Office for Immigration Review ("EOIR"). 8 C.F.R. § 1239.1(a); *see also* 8 C.F.R. § 1003.14. By statute, the INA requires that "in order that an alien be permitted the opportunity to secure counsel before the first hearing date in [Section 240 removal proceedings], the hearing date shall not be scheduled earlier than 10 days after service of the [NTA], unless the alien requests in writing an earlier hearing date." 8 U.S.C. § 1229(b)(1).

### b. Expedited Removal Proceeding

If a noncitizen individual "meets the requirements for expedited removal pursuant to 8 U.S.C. § 1225(b), DHS has the discretion to place them in the expedited removal process or to place them in full removal proceedings before an immigration judge pursuant to INA Section 240, 8 U.S.C. § 1229a." (DHS Resp. to RFA No. 3, ECF No. 125-17 at 4.) The expedited removal proceeding can result in a final removal order "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). Once the individual indicates the intention to apply for asylum or a fear of persecution, the individual is referred for a credible fear determination interview. *Id.* § 1225(b)(1)(A)(ii). The statute requires the individual be detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV). Upon a finding of credible fear, the individual is placed in detention and referred to a Section 240 removal proceeding before an immigration judge. *Id.* § 1225(b)(1)(B)(ii) ("[T]he alien shall be detained for further consideration of the application for asylum."); 8 C.F.R.

§ 235.6(a)(1)(ii) (stating the NTA will be issued to initiate a Section 240 proceeding where "an alien subject to expedited removal . . . has been . . . granted asylum").

A final expedited removal order is issued when an individual screened for an expedited removal proceeding waives his or her right to an immigration judge's review of credible fear determination or an immigration judge affirms an individual's lack of credible fear.  8 U.S.C. § 1225(b)(1)(B)(iii)(I).

### 3.    Initial Master Calendar Hearing

The initial Master Calendar Hearing ("IMCH") is the first removal hearing conducted by an immigration judge.  *See* 8 C.F.R. § 1240.10(a).  At the IMCH, detainees may request a bond hearing, in which case the immigration judge must schedule the bond hearing at the earliest possible date.  EOIR Policy Manual, Pt. II, Chs. 4.15(e), 9.3(d), https://www.justice.gov/eoir/eoir-policy-manual/ (last visited Sep. 5, 2021).  In addition, the regulation requires the immigration judge to:

(1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings and require the respondent to state then and there whether he or she desires representation;

(2) Advise the respondent of the availability of pro bono legal services for the immigration court location at which the hearing will take place, and ascertain that the respondent has received a list of such pro bono legal service providers.

(3) Ascertain that the respondent has received a copy of appeal rights.

(4) Advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government (but the respondent shall not be entitled to examine such national security information as the government may proffer in opposition to the respondent's admission to the United States or to an application by the respondent for discretionary relief);

(5) Place the respondent under oath;

17cv491

(6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language; and

(7) Enter the notice to appear as an exhibit in the Record of Proceeding.

8 C.F.R. § 1240.10(a).

The IMCH provides an opportunity for the immigration judge to verify service of the NTA, provide the NTA if service was not made, and examine the NTA for and demand correction of any defects. *See* EOIR Policy Manual, Pt. II, Ch. 4.15. Where there are otherwise no issues with the NTA, "the immigration judge shall require the [individual] to plead to the [NTA] by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein." 8 C.F.R. § 1240.10(c). The immigration judge advises the individual of his or her opportunity to examine and object to evidence of removability. *Id.* § 1240.10(a)(4). "If necessary, an interpreter is provided to an alien whose command of the English language is inadequate to fully understand and participate in the hearing." *See* EOIR Policy Manual, Pt. II, Ch. 4.15(f).

## C.    Relevant Procedural History

Plaintiffs filed this action, alleging that Defendants' policies and practices violate the due process clause of the Fifth Amendment to the United States Constitution, the Fourth Amendment's prohibition on unreasonable searches and seizures without probable cause, and the APA, 5 U.S.C. §§ 702, 706(1), 706(2)(A)–(D). (Compl. ¶¶ 75–80, 81–84, 85–90.) As relief, Plaintiffs seek a declaratory judgment, an injunction barring the Defendants' allegedly unlawful policy and practice, and the issuance of writs of habeas corpus commanding the release of Plaintiffs and class members from detention "to the extent necessary for the Defendant[s] to comply with their constitutional and statutory obligations." (*Id.* at 23, Prayer for Relief.)

Plaintiffs filed their first motion to certify the class, which requested certifying the proposed class set forth in the Complaint:

> All individuals in the Southern District of California, other than those with final removal orders, who are or will be detained by DHS more than 48 hours without a hearing before an immigration judge or judicial review of whether their detention is justified by probable cause.

(Compl. ¶ 68; Mot. for Class Cert., ECF No. 2.)

Defendants moved to dismiss the Complaint for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 28.) The Court granted Defendants' motion and terminated Plaintiffs' motion to certify the class as moot. (ECF No. 49.)

After the Supreme Court decided *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), Plaintiffs moved for a reconsideration of the dismissal. (ECF No. 50.) The Court reinstated Plaintiffs' Fifth Amendment claims but not the Fourth Amendment claims. (ECF No. 56.) Defendants renewed the motion to dismiss the Complaint (ECF No. 60), and the Court dismissed Plaintiff Gonzalez's procedural due process claim and all Plaintiffs' Section 706(1) APA claims. (ECF No. 63.) The Court declined to dismiss other Plaintiffs' procedural due process claims and all Plaintiffs' substantive due process claims raised under the Fifth Amendment. (ECF No. 63.) The Court denied Plaintiffs' second motion for reconsideration. (ECF No. 178.)

Plaintiffs renew their motion for class certification. (ECF No. 125.) Defendants have opposed (ECF No. 133), and Plaintiffs have replied (ECF No. 140). The Court held an oral argument. (ECF No. 177.) The motion is ripe for decision.

## II.   JURISDICTION

Defendants invoke Section 242(e) and (f) of the INA, 8 U.S.C. § 1252(e), (f), to argue that the Court lacks jurisdiction to certify the class or grant class-wide relief.

### A.   Section 1252(e)(1), (3)

Section 1252(e) limits and channels judicial review of expedited removal orders. 8 U.S.C. § 1252(e). Among others, the Court cannot "certify a class under Rule 23 of the

17cv491

Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection." *Id.* § 1252(e)(1).  Defendants argue that the present action falls within the scope of paragraph (e)(3), entitled "[c]hallenges on validity of the system," which channels "[j]udicial review of determinations under section 1225(b) . . . and its implementation" to the United States District Court for the District of Columbia. *Id.* § 1252(e)(3)(A); *see also United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 n. 10 (9th Cir. 2011) ("§ 1252(e)(3) limits jurisdiction over general challenges to expedited removal proceedings to 'action[s] instituted in the United States District Court for the District of Columbia.'" (quoting 8 U.S.C. § 1252(e)(3))).

Claims subject to channeling under Section 1252(e)(3) are "determinations under Section 1225(b) . . . and its implementation."  8 U.S.C. § 1252(e)(3).  The dictionary meaning of the word, "implement" is to "carry out, accomplish" or "provide instruments . . . for."  *Implement*, Merriam-Webster Online Dictionary (Sep. 5, 2021), https://www.merriam-webster.com/dictionary/implement.  Thus, the Court is asked to determine whether the presentment of detainees subject to expedited removal is a means to carry out or accomplish the expedited removal scheme set forth in Section 1225(b).

Plaintiffs' renewed motion proposes certifying a class that includes individuals screened for expedited removal proceedings under Section 1225(b)(1).  "Section 1225(b) generally mandates the detention of aliens seeking admission pending their removal proceedings."  *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013).  "[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," the officer is required to detain the individual for removal proceedings.  8 U.S.C. § 1225(b)(2)(A).  Once the individual invokes a fear of persecution upon return to the originating country or indicates his or her intent to apply for asylum, the individual is detained "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  *Id.* § 1225(b)(1)(B)(iii)(IV).  The statute also requires detaining an individual "for further consideration of the application for asylum," if the interviewing officer determines that the

- 10 -

17cv491

1   individual has a credible fear of persecution.  *Id.* § 1225(b)(1)(B)(ii).  In sum, Section

2   1225(b) mandates that individuals screened for or subject to expedited removal be detained.

3          Whether and when to present a detained individual to an immigration judge—a

4   question invoked by Plaintiffs' Fifth Amendment claim—concerns a means by which to

5   carry out, accomplish, or provide an instrument for a mandatory detention applicable to

6   individuals subject to expedited removal proceedings and thus concerns the

7   implementation of Section 1225(b)(1).  Because Section 1252(e)(3) channels such actions

8   to the United States District Court for the District of Columbia, the Court may not certify

9   the class that includes individuals screened for or subject to expedited removal proceedings

10  under Section 1225(b)(1).

11         That said, the Court's inquiry need not stop here.  "Rule 23 provides district courts

12  with broad authority at various stages in the litigation to revisit class certification

13  determinations and to redefine or decertify classes as appropriate."  *Wang v. Chinese Daily*

14  *News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013).  The Court exercises this discretion to

15  redefine the class to exclude individuals subject to expedited removal proceedings.

16

17         **B.     Section 1252(f)(1)**

18  Section 1252(f)(1) provides in full:

19          Regardless of the nature of the action or claim or of the identity of the party
20          or parties bringing the action, no court (other than the Supreme Court) shall
            have jurisdiction or authority to enjoin or restrain the operation of the
21          provisions of part IV of this subchapter, as amended by the Illegal
            Immigration Reform and Immigrant Responsibility Act of 1996, other than
22          with respect to the application of such provisions to an individual alien against
23          whom proceedings under such part have been initiated.

24  8 U.S.C. § 1252(f)(1).  Part IV includes 8 U.S.C. §§ 1221–32.

25         As an initial matter, Section 1252(f)(1) does not bar jurisdiction to grant class-wide

26  declaratory relief.  *See Nielsen v. Preap*, 139 S. Ct. 954, 962 (2019); *Rodriguez v. Hayes*

27  ("*Rodriguez I*"), 591 F.3d 1105, 1119 (9th Cir. 2010) (holding that § 1252(f)(1) does not

28  limit declaratory relief); *accord Vazquez Perez v. Decker*, No. 18-CV-10683 (AJN), 2019

- 11 -

WL 4784950, at *5 (S.D.N.Y. Sept. 30, 2019) (collecting cases from the First, Third, and Ninth Circuits).

Indeed, the Supreme Court has held that "[b]y its plain terms, and even by its title, [Section 1252(f)(1)] is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*Reno III*"), 525 U.S. 471, 481–82 (1999). "It prohibits federal courts from granting class-wide injunctive relief against the operation of §§ 1221–32, but specifies that this ban does not extend to individual cases." *Id.* "Operation" means "method or manner of functioning." *Operation*, Merriam-Webster Online Dictionary (Sep. 5, 2021), https://www.merriam-webster.com/dictionary/operation; *see Vazquez Perez*, 2019 WL 4784950, at *5.

Thus, under the plain meaning of Section 1252(f)(1), the Court must examine whether the requested class-wide injunctive relief—here, enjoining Defendants to provide class members with a prompt presentment to an immigration judge—would enjoin or restrain the method or manner of functioning of any provision within part IV. If the answer is yes, the Court must analyze whether it has jurisdiction under the the carve-out clause, which applies "with respect to the application of [sections 1221–32] to an individual alien against whom [removal proceedings] have been initiated." 8 U.S.C. § 1252(f)(1).

### 1.   Whether the Requested Relief Enjoins or Restrains the Operation of Part IV

Defendants argue that Plaintiffs' requested relief would enjoin or restrain the operation of two statutory provisions within Part IV: Sections 1225(b)(1)(B)(III) and 1229(b)(1). Section 1225(b)(1)(B)(III) applies only to individuals subject to expedited removal proceedings. The Court has redefined the class to exclude all individuals subject to expedited removal proceedings. *See supra* Part II.A. Thus, the Court need not analyze the operation of Section 1225(b)(1)(B)(III). The Court turns to examine whether the requested injunctive relief would enjoin or restrain the operation of Section 1229(b)(1).

Section 1229(b), entitled "securing of counsel," provides that the first removal hearing, also known as the IMCH, "shall not be scheduled earlier than 10 days after the service of the notice to appear, unless the alien requests in writing an earlier hearing date," to allow the noncitizen individual "the opportunity to secure counsel before the [IMCH]." 8 U.S.C. § 1229(b)(1). In other words, unless the noncitizen individual waives the right, the government must allow at least ten days for an individual to secure counsel before holding an IMCH.

The Court finds instructive a case that construed Section 1252(f)(1) and held that a class-wide injunction similar to the one requested by Plaintiffs in this action would enjoin or restrain the operation of Section 1229(b)(1). *See Vazquez Perez*, 2019 WL 4784950, at *1. In *Vazquez Perez*, the court held that the requested injunction against "ICE's practice of failing to provide initial appearances before an Immigration Judge for up to several months after arrest" would enjoin or restrain the operation of Section 1229(b)(1):

> the Court finds that the requested injunction would enjoin or restrain, at a minimum, the operation of Section 1229(b). That section provides that an initial master calendar "hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear." 8 U.S.C. § 1229(b)(1). By its terms, this provision sets a time before which the initial master calendar hearing may not be scheduled but provides no time beyond which the initial master calendar hearing cannot be scheduled. In other words, it prescribes a floor but no ceiling with respect to the timing of initial master calendar hearings. Because Congress, in its judgment, chose not to mandate a statutory ceiling, an injunction imposing one where the statute is *silent* would displace that judgment in a way that would enjoin or restrain the method or manner of Section 1229(b)'s functioning.

*Id.* at *1, 6. The Court adopts this reasoning and finds that the requested prompt presentment would enjoin or restrain the method or manner of Section 1229(b)(1)'s functioning.

Plaintiffs raise two arguments against this conclusion. First, Plaintiffs argue that their request is to be provided a prompt a presentment hearing after arrest, wherein a detained individual would be provided "meaningful advisals of rights, including the right

specified in § 1229(b)(1) to waive the 10-day grace period, and rights regarding custody issues that are distinct from removal issues." (Pls.' Reply at 3:21–23.) Plaintiffs' argument is unpersuasive. To begin with, Plaintiffs' Complaint challenges the lack of a prompt IMCH, in alleging that "[a]n unreasonable delay before the initial Master Calendar Hearing (such as the current one to three month delay) violates substantive due process rights of immigration detainees." (Compl. ¶ 44.) More importantly, the scope of the requested initial hearing would overlap in significant parts with the IMCH. Under the relevant regulation, the IMCH functions as a first hearing where the immigration judge advises the noncitizen individual subject to a removal proceeding of various rights: the right to counsel and availability of pro bono services; right to appeal; and "opportunity examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government." 8 C.F.R. § 1240.10. Plaintiffs' own Complaint describes the IMCH as "the first time a neutral adjudicator (the immigration judge)" advises a noncitizen individual in a removal proceeding of their rights—a purpose substantially similar to that of the "first hearing" that Plaintiffs request. (Compl. ¶¶ 29–34.) Based on Plaintiffs' pleading and relevant regulation, the Court finds that Section 1229(b)(1) is implicated by Plaintiffs' requested prompt presentment for the proposed class members.

Second, Plaintiffs argue that their requested relief would not restrain or enjoin the operation of Section 1229(b)(1) because the statutory provision anchors the date of the IMCH to the date of the service of the NTA and not to the date of arrest, when in practice an NTA is not served on the person until many days after the initial arrest. (Pls.' Reply at 3:16–19.) Even if Plaintiffs are right, imposing a deadline for an immigration judge to conduct a hearing that serves a purpose substantially similar to that of an IMCH would be to enjoin the method or manner of the functioning of the IMCH.

Therefore, the Court finds that the hearing requested by Plaintiff would enjoin or restrain the operation of Section 1229(b)(1).

17cv491

## 2.      Whether the Carve-Out Clause Applies

Having found that Section 1252(f)(1) is invoked, the Court next analyzes whether the Court has jurisdiction to certify the class under the carve-out clause, which excepts from the jurisdictional bar an action that would enjoin or restrain the operation of the provisions of part IV "with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."   8 U.S.C. § 1252(f)(1).  The question is whether the Congress intended for the carve-out clause's use of the term, "individual alien," to encompass individuals proceeding as a class.

A binding Supreme Court opinion has concluded that it does.   In *Jennings*, five justices interpreted Section 1252(f)(1) as "prohibit[ing] federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2]," interpreting the carve-out clause as applying only to non-class actions brought by a qualifying individual.  *See Jennings*, 138 S. Ct. at 851 (Alito, J.) (plurality opinion).[4]   The Court is bound by this interpretation of the carve-out clause and thus declines to apply it to the present action.

In sum, Section 1252(f)(1) does not bar the Court's jurisdiction to certify the class for declaratory relief, but it does strip the Court of jurisdiction to certify the class for injunctive relief.   Therefore, the Court proceeds with the remaining class analysis as to the certification of the class for declaratory relief only.

## III.   PROPOSED CHANGES TO CLASS DEFINITION

The issue is whether Plaintiffs' new class definition set forth in the motion for class certification impermissibly broadens the class definition set forth in their Complaint.   The definition of the class at the class certification stage may diverge from that set forth in the

---

[4] The plurality opinion authored by Justice Alito was joined by Justices Roberts and Kennedy, and Justice Thomas issued a concurrence in other aspects, joined by Justice Gorsuch.   Dissenting justices, Justices Breyer, Sotomayor, and Ginsburg, opposed such an interpretation by holding: "[e]very one of [the class] is an 'individual alien against whom proceedings under such part have been initiated.'   The Court in [*Reno III*] did not consider, and had no reason to consider, the application of § 1252(f)(1) to such a class."  *See Jennings*, 138 S. Ct. at 875 (Breyer J., dissenting) (citations omitted).  Justice Kagan took no part in the decision of the case.

Complaint, as long as the new class definition is narrower than the original, *see Costello v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009), or the proposed change is minor and non-prejudicial to the defendant, *see Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at *3 (S.D. Cal. Nov. 8, 2013).

Here, the Complaint defines the proposed class as follows:

> All individuals in the Southern District of California, other than those with final removal orders, who are or will be detained by DHS more than 48 hours without a hearing before an immigration judge or judicial review of whether their detention is justified by probable cause.

(Compl. ¶ 68.)  Plaintiffs revise the class definition in their motion for class certification to the following:

> All individuals, other than unaccompanied minors or individuals with administratively final removal orders, who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an immigration judge.

(Mot. for Class Cert., ECF No. 125.)  According to Plaintiffs, there are two changes to the class definition: (1) the new class excludes three categories of individuals who fell within the original definition: unaccompanied minors, people detained in connection with criminal charges, and individuals with administratively final removal orders; and (2) the new class is redefined to "include people detained by the Immigration Agencies operating in this district," which reflects the facts uncovered in discovery that "the San Diego Field Office of ICE detains people in [the San Luis Regional Detention Center] and San Diego Sector of Border Patrol detains people in the Newton and Azrak Border Patrol Station in Murrieta, each just outside this district."  (Pls.' Mem. of P. & A. ISO Mot. for Class Cert. ("Pls.' Mem.") at 15:17–16:16, ECF No. 165.)

Defendants do not challenge the first change, that is exclusion of the three categories of individuals: unaccompanied minors, people detained in connection with criminal charges, and individuals with administratively final removal orders.  (Defs.' Opp'n at 8:2–

3.)  However, Defendants argue that including individuals detained at centers located outside this district is a material and prejudicial change because those centers would need to administer two sets of rules: one for the members of the class and the other for the rest of the individuals held in the respective center.  (Opp'n at 8:17–9:4.)  Plaintiffs argue that the proposed change in the definition is minor because "[t]he new definition removes one Border Patrol station (the Blythe Station, operated by Yuma Sector of Border Patrol) and adds a different one, Murrieta Station."  (Reply at 9:10–12.)  Plaintiffs also argue that "the addition of San Luis [facility] is minor because it is an overflow facility for ICE's San Diego Field Office, which has held a small percentage of class members in the last three years."  (*Id.* at 9:13–15.)  Plaintiffs' response does not address the administrative burden Defendants allege they would face as a result of the inclusion of individuals detained outside of this district.  Consequently, the proposed change is not minor and non-prejudicial to the defendant, and is impermissible under the general rule that "a plaintiff is limited to the class definition in the operative complaint."  *Patten*, 2013 WL 12069031, at *3 (citing *Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009) and *Berlowitz v. Nob Hill Masonic Mgmt.*, 1996 WL 724776 at *2 (N.D. Cal. Dec. 6, 1996).)

Exercising this Court's "broad authority . . . to redefine . . . classes as appropriate," the Court excludes from the class definition the individuals detained outside of this district.

Accordingly, the Court analyzes the following class definition for certification for declaratory relief under Rule 23:

> All individuals **in the Southern District of California**—other than **individuals subject to expedited removal under § 1225(b)(1)**, unaccompanied minors, or individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an immigration judge.

//
//

- 17 -

17cv491

## IV.   RULE 23 ANALYSIS

### A.   Legal Standard

Motions for class certification proceed under Rule 23 of the Federal Rules of Civil Procedure.  Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"), and (4) the representative parties will fairly and adequately protect the interests of the class ("adequate representation").  Fed. R. Civ. P. 23(a).

The proposed classes must also satisfy one of the subdivisions of Rule 23(b).  Here, Plaintiffs seek to maintain the class action under Rule 23(b)(2).  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  "Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Rather, "[the parties] seeking class certification must affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Id.*  The court is "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  A weighing of competing evidence, however, is inappropriate at this stage of the litigation.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

//

//

17cv491

### B.    Rule 23(a) Requirements

#### 1.    Numerosity

Defendants do not challenge the numerosity requirement.  (Opp'n at 11 n.13.)  The Court finds that the numerosity requirement is satisfied.

#### 2.    Commonality

The commonality requirement "serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management."  *Walters v. Reno* ("*Reno II*"), 145 F.3d 1032, 1045 (9th Cir. 1998).  This requirement is construed "permissively."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Not all questions of fact and law need to be common to satisfy the rule.  *Id.*  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*; *see, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.").  Nor does "common" as used in Rule 23(a)(1) mean "complete congruence."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006).

Plaintiffs identify the following legal and factual issues common to the class members that can be resolved on a class-wide basis:

- Whether Defendants have a policy and practice of denying prompt judicial presentment to class members;

- Whether Defendants' other policies and practices contribute to delays in presentment;

- Whether the delays in judicial presentment faced by all class members violate their rights under the substantive component of the Due Process

- 19 -

17cv491

1    Clause of the Fifth Amendment; and

2    
3    • Whether Defendants' policies and practices of delaying judicial
     presentment violate the Administrative Procedure Act.

4    (Pls.' Mem. at 18:10–18.)

5    Defendants argue that the proposed class lacks commonality because the definition

6    encompasses all individuals "subject to divergent statutory authority" and with "varying

7    factual circumstances," which preclude uniform relief.  (Opp'n at 13:12–22:4.)

8    
9                    **a.    Divergent Statutory Authority**

10   In Defendants' view, the different statutes that authorize the class members'

11   detention necessitate the Court to make individual determinations of "the statutory basis

12   that governs the alien's detention and removal process," as well as "whether that specific

13   statute and associated statutory or regulatory procedures violate the Constitution or the

14   APA."  (Opp'n at 13:24–27.)

15   Defendants' argument is foreclosed by the Ninth Circuit's binding precedent,

16   *Rodriguez v. Hayes* ("*Rodriguez I*"), 591 F.3d 1105 (9th Cir. 2010).  In *Rodriguez I*, the

17   proposed class, composed of noncitizen individuals detained in the Central District of

18   California for longer than six months without a bond hearing while subject to immigration

19   proceedings, sought class-wide injunctive and declaratory relief requiring individual bond

20   hearings to all members of the class.  *Id.*  In rejecting the government's argument that the

21   class failed to establish commonality "on the ground that class members suffer detention

22   for different reasons and under the authority of different statutes," the Ninth Circuit held

23   that the dispositive question was whether the "constitutional issue at the heart of each class

24   member's claim for relief is common."  *Id.* at 1123.  The Ninth Circuit in *Rodriguez I* found

25   that it was enough that the plaintiff-petitioners posed the following common question:

26   "may an individual be detained for over six months without a bond hearing under a statute

27   that does not explicitly authorize detention for longer than that time without generating

28   serious constitutional concerns?"  *Id.* (citing *Casas-Castrillon v. Dep't of Homeland Sec.*,

- 20 -

17cv491

535 F.3d 942, 951 (9th Cir. 2008) and *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005).) The common question posed in this action is similar: whether an individual may be detained for more than 48 hours after arrest without being presented to an immigration judge to receive meaningful notice and advisal of rights without generating serious constitutional concerns.

Based on the above, the Court holds that the various statutes that authorize class members' detention do not defeat the commonality requirement.

### b.    Varying Factual Circumstances

Defendants argue that the proposed class members cannot satisfy the commonality requirement because of varying factual circumstances including (1) different DHS subcomponents involved in detaining and processing an individual; (2) specifics of each individual such as medical condition or status as a criminal defendant or a witness; and (3) differences in the individuals' litigation choices in immigration court.  (Defs.' Opp'n at 19:1–20:6.)  This Court denied a similar argument in *Al Otro Lado* and held that "[t]he different factual circumstances between each class member's particular experience does not destroy commonality because there is still a common underlying legal question . . . ." *Al Otro Lado, Inc. v. Wolf* ("*AOL II*"), 336 F.R.D. 494, 503 (S.D. Cal. 2020).  Here, because the Court finds a question of law common to the class, divergent factual circumstances, assuming they exist, do not defeat the commonality requirement.  *See Hanlon*, 150 F.3d at 1019 (holding that "[t]he existence of shared legal issues with divergent factual predicates is sufficient" to satisfy the commonality requirement).

In sum, Plaintiffs have established that the commonality requirement is satisfied.

### 3.    Typicality

The typicality requirement looks to whether "the claims of the class representatives [are] typical of those of the class, and [is] 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).  Like the commonality requirement, the typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Defendants challenge the typicality element based on the same arguments raised against the commonality element.  For the same reasons that commonality is satisfied, the Court concludes that the named class representatives Cancino Castellar and Hernandez raise a claim reasonably co-extensive with the claims of the class. *See Rodriguez I*, 591 F.3d at 1124 (holding that although the named class representatives and some class members "are detained under different statutes and are at different points in the removal process and hence do not raise identical claims, they all . . . raise similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings").

Because Plaintiff Gonzalez was subject to expedited removal proceedings, the Court finds that his claim is subject to the jurisdictional bar under Section 1252(e)(1) and thus is not co-extensive with the class.  *See supra* Part II.A.

### 4.    Adequacy[5]

Under Rule 23(a)(4), the named representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether this adequacy requirement is met, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also Walters*, 145 F.3d at 1046 ("Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an

---

[5] Because the Court has found that Plaintiff Gonzalez's claims are atypical of the class, the Court does not reach whether he is an adequate representative.  *See* supra Part IV.B.3.

1  absence of antagonism, a sharing of interests between representatives and absentees, and
2  the unlikelihood that the suit is collusive.'" (quoting *Crawford v. Honig*, 37 F.3d 485, 487
3  (9th Cir. 1994))).
4
5  ### a.  Mootness of Named Plaintiffs' Claims
6          Defendants argue that Plaintiffs are not adequate class representatives because their
7  claims have become moot after receiving the requested hearings and being released from
8  detention.  (Defs.' Opp'n at 22:16–23:14.)  However, in a previous court filing, Defendants
9  waived the mootness argument by stipulating that they "will not oppose . . . [the] Motion
10 for Class Certification on the grounds that the named  Plaintiffs-Petitioners . . . are
11 inadequate class representatives because their claims became moot when they each
12 appeared before an immigration judge or were released from custody." (Joint Mot. Ext. at
13 2:17–22, ECF No. 18.)  Such a stipulation binds the parties who make it absent "special
14 circumstances."  *Parks v. American Warrior, Inc.*, 44 F.3d 889, 894 (10th Cir. 1995).
15 Defendants do not explain why this stipulation does not constitute a waiver of the
16 argument, and the Court does not find other special circumstances that would nullify the
17 waiver.
18          In any case, even if Defendants did not waive the mootness argument, it lacks merit.
19 Ordinarily, a federal court loses jurisdiction once the issues presented are no longer live or
20 the plaintiff no longer holds a legally cognizable interest in the outcome because the action
21 is made moot.  *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980).  Such
22 mootness principle applies to class actions, and when a "plaintiff's claim becomes moot
23 before the district court certifies the class, the class action normally also becomes moot."
24 *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).
25 However, an exception to this rule applies where the claims "are so inherently transitory
26 that the trial court will not have even enough time to rule on a motion for class certification
27 before the proposed representative's individual interest expires."  *Id.* (quoting *Pitts v.*
28 *Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011)).  For such inherently transitory

claims, the mootness is adjudged at the time of the filing of the complaint.  *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) (holding that in cases involving inherently transitory claims, "the 'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution"); *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1043 (S.D. Cal. 2020) (invoking the relation-back doctrine to determine "whether adequacy was satisfied at the filing of the complaint").

Here, Plaintiffs' Fifth Amendment claim challenges the denial of prompt judicial presentment to class members after arrest.  The Fifth Amendment claim is inherently transitory because the immigration detainees would likely receive a judicial presentment before courts can rule on a motion for class certification.  Therefore, the Court invokes the relation-back doctrine and examines whether Plaintiffs' claims were moot at the time of the filing of the Complaint.  *See McLaughlin*, 500 U.S. at 52; *Pitts*, 653 F.3d at 1090.  At the time Plaintiffs filed their Complaint, all named Plaintiffs were detained by DHS. (Compl. ¶ 9 (Cancino Castellar), ¶ 10 (Hernandez Aguas).)  All Plaintiffs had been detained without appearance before a judge or a judicial determination of probable cause for her detention.  (*Id.* ¶ 47 (Cancino Castellar), ¶ 48 (Hernandez Aguas).)  Therefore, Plaintiffs' claims were not moot at the time of the filing of the Complaint, and under the relation-back doctrine that is enough to satisfy the adequacy requirement.

### b.    Defendants' Other Arguments

Defendants also argue that Plaintiffs have not met the burden to show that they have the willingness to litigate the class claims.  (Defs.' Opp'n at 23:15–24:13.)  Separately, Defendants argue that Plaintiffs' failure to name an adequate representative for each of the DHS facilities at issue defeats a finding of adequacy.  (*Id.* at 24:14–21.)

Adequacy is satisfied if the proposed class representative "has some rudimentary knowledge of her role as a class representative and is committed to serving in that role in the litigation."  1 Newberg on Class Actions § 3:67 (5th ed. rev. Dec. 2020); *cf. CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (holding that an

argument based on the credibility of a class representative does not undermine adequacy unless "a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims").  While Defendants argue Plaintiffs have not shown that the proposed class representatives hold an interest in litigating the class claims, "there is no requirement that a named plaintiff submit a declaration specifically affirming their interest, willingness, and understanding of the need to participate." *Padilla v. US Immigr. & Customs Enf't*, No. C18-928 MJP, 2019 WL 1056466, at *5 (W.D. Wash. Mar. 6, 2019).  Further, Plaintiffs have submitted declarations in support of the initial motion for class certification that indicate the proposed class representatives' interests in representing the class.  (*See* Cancino Castellar Decl., ECF No. 2-2, Ex. 1; Hernandez Aguas Decl., ECF No. 2-2, Ex. 2.1–2.2.)  Plaintiffs have demonstrated that the class representatives held enough interest in the class action and were willing to pursue it at the time of the filing of the Complaint, which is enough to satisfy the adequacy requirement under the relation-back doctrine.  *See Doe*, 424 F. Supp. 3d at 1043 (invoking the relation-back doctrine to determine "whether adequacy was satisfied at the filing of the complaint").

Defendants fare no better with their argument that Plaintiffs must include a class representative for each detention center implicated in this class action to satisfy the adequacy requirement.  While creative, the argument is not supported by any authority or rationale.  Further, courts have rejected a similar argument in other contexts.  *See Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1034 (8th Cir. 2018) (affirming certification of a class of individuals in the custody of Missouri Department of Corrections represented by three named plaintiffs, although the plaintiffs did not name a class representative for each of the facilities in the system); *see also Baxley v. Jividen*, 338 F.R.D. 80, 89 (S.D.W. Va. 2020) ("Plaintiffs are not required to name a class representative at each facility.").

The Court concludes that the adequacy requirement is satisfied as to Cancino Castellar and Hernandez Aguas.

//

//

17cv491

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Rule 23(b) Requirements

Having found that the redefined class satisfies the Rule 23(a) requirements, the Court next turns to determine whether the proposed certification under Rule 23(b)(2) would be warranted.  Rule 23(b)(2) permits class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  The Ninth Circuit has held that "'it is sufficient' to meet the requirements of Rule 23(b)(2) [when] 'class members complain of a pattern or practice that is generally applicable to the class as a whole.'" *Rodriguez I*, 591 F.3d at 1125 (quoting *Walters*, 145 F.3d at 1047).  "The rule does not require [the Court] to examine the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Id.* at 1125; *see also Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal quotation marks omitted).

The Court finds that Plaintiffs have established that the proposed class meets the requirements of Rule 23(b)(2).  Plaintiffs' Prayer for Relief requests that this Court: (1) declare that Defendants' policies, practices, acts, and omissions violate the Due Process Clause of the Fifth Amendment and the APA; and (2) issue injunctive relief prohibiting Defendants from continuing to implement the challenged policies, practices, acts, and omissions.  (Compl. at 22–23.)  This relief would benefit the Named Plaintiffs as well as members of the proposed class in the same manner, in a single stroke.  *See Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014) ("[E]very [member] in the proposed class is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice."); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG (SHKx), 2018 WL 1061408, at *12 (C.D. Cal. Feb. 26, 2018).

Defendants' arguments against certifying the class under Rule 23(b)(2) lack merit. Defendants argue that Plaintiffs have not demonstrated that Defendants have "refused to act on grounds that apply generally to the class" as required by Rule 23(b)(2). Defendants also argue the civil immigration detainees hold no right to prompt presentment and neither DHS nor EOIR has a policy on how quickly a detained alien can appear before an immigration judge. However, those arguments go to the merit of the class claims and not to whether the proposed class falls within the scope of a Rule 23(b)(2) class. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). As to Defendants' argument that they did not hold a "policy," for Rule 23(b)(2) purposes "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole." *Walters*, 145 F.3d at 1047; *Rodriguez I*, 591 F.3d at 1126 (certifying class of immigrant detainees under Rule 23(b)(2) where "relief from a single practice is requested by all class members"). Plaintiffs have met their burden because they request relief from a single practice, that is, Defendants' alleged failure to promptly present them to an immigration judge after the initial arrest.

Therefore, the Court concludes the requirements of Rule 23(b)(2) are satisfied.

## IV.   CONCLUSION

Plaintiffs have met the requirements of Rule 23(a) and (b)(2). Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for class certification (ECF No. 125) and **ORDERS** the following:

1.   The following class is **CERTIFIED** for declaratory relief only:

All individuals in the Southern District of California—other than individuals subject to expedited removal under § 1225(b)(1), unaccompanied minors, or individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San

17cv491

Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an immigration judge.

2.      Plaintiffs Cancino Castellar and Ana Maria Hernandez Aguas are appointed class representatives.

3.      On or before September 15, 2021, Plaintiffs are ordered to submit a short brief, not to exceed three pages, about which attorneys are to be appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

**IT IS SO ORDERED.**

**DATED: September 8, 2021**

Hon. Cynthia Bashant
United States District Judge

17cv491