UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ORLANDO CANCINO CASTELLAR, ANA MARIA HERNANDEZ AGUAS, MICHAEL GONZALEZ,<br><br>Plaintiff-Petitioners,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary of Homeland Security; et al.,<br><br>Defendant-Respondents. | Case No.: 17cv491-JO-AHG<br><br>**ORDER IN RESPONSE TO THE PARTIES' MOTIONS FOR CLARIFICATION** |

After the Court granted in part Plaintiffs' renewed motion for class certification [Dkt. 179], the parties moved the Court to clarify its order with respect to how it defined the certified class. Dkts. 191, 192. The Court *sua sponte* construes these requests as motions to reconsider the Court's previous order and grants in part the relief requested by Plaintiffs and denies the relief requested by Defendants.

## I. BACKGROUND

Plaintiffs brought this action to challenge Department of Homeland Security ("DHS") and its agencies ("Defendants") for its alleged practice of detaining individuals

1

for longer than 48 hours without a hearing before an immigration judge. On October 16, 2020, Plaintiffs requested to certify a class of individuals held in the custody of Defendants for longer than 48 hours without a hearing before an immigration judge, excluding unaccompanied minors and individuals with administratively final removal orders. On September 8, 2021, the Court granted certification but defined the class as follows:

> All individuals in the Southern District of California—other than individuals subject to expedited removal under 8 U.S.C. § 1225(b)(1), unaccompanied minors, or individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego offices of Defendants for longer than 48 hours and (2) have not had a hearing before an immigration judge. *See* Dkt. 179 (the "Order").

The Court explicitly carved out from Plaintiffs' requested class definition "individuals subject to expedited removal under 8 U.S.C. §1225(b)(1)" on the grounds that it lacked jurisdiction over these individuals.

On November 10, 2021, Plaintiffs and Defendants each separately moved to clarify the Court's order with respect to the category of individuals excluded from the class because they are "individuals subject to expedited removal." Dkts. 191, 192. Defendants contend that any individual initially screened for expedited removal at the outset should remain excluded from the class because they are "individuals subject to expedited removal," even if DHS ultimately places them in regular removal proceedings. Plaintiffs argue that the carve-out language above should not include individuals who have been transitioned to regular removal proceedings because they are no longer in expedited removal proceedings.

**A. Relevant Statutory Framework**

*1. Regular Removal and Expedited Removal*

Under the Immigration and Nationality Act ("INA"), non-United States citizens (referred to as aliens throughout the text of the INA) who do not meet the requirements for either entry at the border or continued presence in the United States may be subject to removal. Individuals subject to removal are placed into one of two types of removal

proceedings: (1) regular removal under 8 U.S.C. § 1229a; or (2) expedited removal under 8 U.S.C. § 1225(b) for those who are apprehended at or near the border and lack valid entry documentation or misrepresent their identity. *See* 8 U.S.C. § 1229a(a)(2); 8 U.S.C. § 1225(b)(1)(A)(i). As discussed below, however, a person originally placed in expedited removal proceedings may be subsequently placed in regular removal proceedings if determined eligible to pursue asylum claims or at the discretion of DHS. 8 C.F.R. §§ 208.2(c)(1)–(3), 208.30(f); Order at 6; *see also, e.g.*, Dkt. 171-5 at 23.

Regular removal proceedings are governed by § 1229a, which provides specific processes for the initiation of proceedings and final determinations of removability by an immigration judge. 8 U.S.C. § 1229a. After a non-citizen individual is apprehended as inadmissible or deportable, an immigration officer initiates regular removal proceedings by filing a Notice to Appear ("NTA") against the individual with the immigration court, providing the time, place, and date of the initial hearing before an immigration judge. 8 C.F.R. § 1239.1(a); *see also* 8 C.F.R. §§ 1003.14, 1003.18(b).[1] The first hearing in regular removal proceedings is the initial Master Calendar Hearing. Dkt. 1 ¶¶ 21, 29–30; Dkt. 28-1 at 6. At the initial Master Calendar Hearing, the immigration judge explains to the individual "the nature of the removal proceeding, the contents of the [NTA] 'in non-technical language,' an alien's right to representation at his or her own expense, and the availability of pro bono legal services." Dkt. 1 ¶ 29 (citing 8 C.F.R. § 1240.10(a)). Following the initial Master Calendar Hearing, the individual receives a hearing at which the immigration judge decides admissibility or deportability. § 1229a.

In contrast, expedited removal proceedings under § 1225(b) provide a more streamlined route to removal without the judicial process available to those placed in regular removal proceedings. Individuals in expedited removal are removed from the

---

[1] If this information is not contained in the NTA, the immigration court has the responsibility of providing the government and the individual subject to removal proceedings with notice of the time, place, and date of the initial removal hearing. 8 C.F.R. § 1239.1(a); *see also* 8 C.F.R. §§ 1003.14, 1003.18(b). The immigration court is otherwise responsible for scheduling removal hearings. 8 C.F.R. § 1003.18(a).

United States "without further hearing or review unless [he or she] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).

For individuals who indicate that asylum proceedings may be appropriate as set forth above, the expedited removal process provides additional steps prior to removal. An asylum officer conducts an interview to determine whether the individual has a "credible fear," defined as "a significant possibility," taking credibility into account, "that the individual could establish eligibility for asylum." §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B)(i), § 1225(b)(1)(B)(v). An individual is eligible for asylum under the INA when she is unable or unwilling to return to a country because of persecution or a well-founded fear of persecution based on race, religion, nationality, membership in a social group, or political opinion. *See* 8 U.S.C. §§ 1158(b)(1)(A);1101(a)(42)(A). After the interview, the asylum officer determines whether the individual has a credible fear as defined above.

If the asylum officer determines that the individual has a credible fear, he or she is detained and transferred to regular removal proceedings. The expedited removal statute requires an individual with a credible fear to be "detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). DHS refers such an individual to an immigration judge for regular removal proceedings under § 1229a, and an NTA is issued. *See* 8 C.F.R. § 208.30(f) (instructing DHS to issue a notice of referral to an immigration judge for regular removal proceedings). Once an NTA issues, regular removal proceedings begin and § 1229a governs the proceedings. *See* 8 C.F.R. § 208.2(c)(1)–(3) (after referral, immigration judge has exclusive jurisdiction over asylum application); 8 C.F.R. § 208.2(c)(3) (thereafter "proceedings shall be conducted in accordance with the same rules of procedure as proceedings conducted under [§ 1229a]").[2]

---

[2] At DHS's discretion, individuals that meet the requirements for expedited removal under § 1225(b) may also be placed in regular removal proceedings rather than expedited removal. Order at 6; *see also, e.g.*, Dkt. 171-5 at 23.

For individuals found not to have a "credible fear," the expedited removal statute provides an opportunity for additional review of the asylum officer's determination before removal. Such individuals can request review of the determination by an immigration judge, which "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the [asylum officer's credible fear] determination." § 1225(b)(1)(B)(iii)(III). An individual in this category "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." § 1225(b)(1)(B)(iii)(IV).

Judicial review of the expedited removal process set forth in § 1225(b) is very limited. Only the United States District Court for the District of Columbia has jurisdiction to review challenges to the expedited removal scheme under certain limited circumstances. §§ 1252(e)(1)–(3). Furthermore, no court, not even the District of Columbia, can certify a class challenging the implementation of the expedited removal scheme. *See id.*

## II. DISCUSSION

### A. The Court's Prior Order

The Court's prior order excluded "individuals subject to expedited removal under 8 U.S.C. § 1225(b)(1)" from the certified class on the grounds that it lacked jurisdiction to issue orders regarding these individuals under the provisions of the INA.[3] This prior order noted that § 1252(e)(3)(A) awards the District of Columbia sole jurisdiction over challenges to the implementation of expedited removal procedures set forth in 8 U.S.C. § 1225(b). Order at 10. Because any challenge to the "implementation" of §1225(b)'s expedited removal procedures would be jurisdictionally off-limits, the Court examined the meaning of the word "implement," and considered whether Plaintiffs' claim regarding "when to present a detained individual to an immigration judge" concerned the "implementation" of § 1225(b). *Id.* at 10–11. After noting that § 1225(b) generally

---

[3] The prior order was issued by Judge Cynthia Bashant. On January 5, 2022, this action was transferred from Judge Bashant to this Court.

mandates detention of individuals screened for expedited removal, the Court determined that Plaintiffs' claims regarding presentment concerned the implementation of mandatory detention under § 1225(b), and thus could only be brought before the District of Columbia. *Id.* The Court, therefore, excluded from the certified class all individuals who had ever been screened as part of the § 1225(b) expedited removal process.

Upon reviewing the parties' motions for clarification, the Court finds that the prior order did not specifically address whether the above reasoning should extend to the subset of individuals who were screened for expedited removal but were found to have a credible fear and subsequently transferred to regular removal proceedings. Because the parties now ask the Court to revisit its reasoning as applied to this subset previously excluded from the certified class, the Court *sua sponte* construes the foregoing motions as motions to reconsider under Federal Rule of Civil Procedure 60(b). *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (holding that district court had discretion to reconsider its own order *sua sponte*); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 633 (9th Cir. 1982) ("before entry of a final judgment on the merits, a district court's order respecting class status is not final or irrevocable, but rather, it is inherently tentative"); Fed. R. Civ. P. 23(c)(1)(C) (a court's order granting or denying class certification may be altered or amended at any time before final judgment).

## B. The Court's Reconsideration

The crux of the issue before the Court is whether a challenge to the timing of presentment before an immigration judge concerns the "implementation" of § 1225(b) for individuals detained under the expedited removal statute but transferred to regular removal proceedings to seek asylum. For this subset of individuals ("Asylum Plaintiffs"),[4] if the timing of the initial hearing "implements" the requirements of § 1225(b), then this Court

---

[4] "Asylum Plaintiffs," as used in this order, includes individuals that are transferred from expedited removal to regular removal proceedings at DHS's discretion.

does not have jurisdiction under § 1252(e)(3). 8 U.S.C. § 1252(e)(3) (challenges to the implementation of the expedited removal statute may only be reviewed by the District of Columbia). If, however, the timing of the initial hearing does not "implement" the requirements of § 1225(b), then this Court does have jurisdiction such that Asylum Plaintiffs may be included in the class certified for declaratory relief by the Court's prior order. As with the Court's prior order, therefore, the Court's analysis begins with an examination of what it means to implement the expedited removal statute, § 1225(b).

A plaintiff's claim concerns the implementation of the expedited removal statute if it directly challenges the statute itself, or if it challenges a policy intended to carry out expedited removal. In its prior order, the Court defined implement as "carry out, accomplish" or "provide instruments . . . for." Order at 10; *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 422 (2d ed. 2001) (explaining that the verb "to implement" ordinarily means "to carry out"). Courts applying this definition have concluded that direct challenges to the expedited removal statute—including an individual's initial placement in removal proceedings, the expedited removal proceedings themselves, and final removal orders—concern implementation of the expedited removal statute. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th Cir. 2011) (court lacked jurisdiction to review "general attacks on the expedited removal process"); *Shunaula v. Holder*, 732 F.3d 143, 146 (2d Cir. 2013) (court lacked jurisdiction to review challenge to the "way [plaintiff's expedited] removal was carried out"). In addition, challenges that do not explicitly challenge expedited removal but challenge a policy that carries it out also concern implementation of the expedited removal statute. *See Grace v. Barr*, 965 F.3d 883, 892 (D.C. Cir. 2020). In making this determination, courts have looked to the overarching purpose of the challenged policy and its nexus to the process of expedited removal. For example, in *Kiakombua v. Wolf*, the District of Columbia found that a "Lesson Plan" implemented the credible fear section of § 1225(b) where the policy was intended to guide asylum officers in how to make credible fear determinations for individuals subject to expedited removal. 498 F. Supp. 3d 1, 34–35 (D.D.C. 2020); *Las*

*Americas Immigrant Advocacy Ctr. v. Wolf*, 507 F. Supp. 3d 1, 20–21 (D.D.C. 2020) (similar). On the other hand, courts have found that challenges to "other circumstances incidental to removal," such as a challenge to a separate provision of the INA that does not "call[] into question the legality of the expedited removal process itself," do not implicate the implementation of expedited removal. *Al Otro Lado, Inc. v. McAleenan*, 423 F. Supp. 3d 848, 867 (S.D. Cal. 2019), *order clarified sub nom. Al Otro Lado v. Wolf*, 497 F. Supp. 3d 914 (S.D. Cal. 2020) (holding that a challenge to asylum eligibility requirements implemented 8 U.S.C. §1158, not expedited removal). The Court applies these principles to the matter at hand to determine whether Plaintiffs' challenge concerns the implementation of expedited removal.

Mandatory detention is the only requirement that the expedited removal statute continues to impose on Asylum Plaintiffs after they are transferred to regular removal proceedings. The expedited removal statute requires that individuals found to have a credible fear "be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). While the expedited removal statute makes detention mandatory for individuals who were screened for expedited removal and subsequently placed in regular removal proceedings, the statute specifies no other requirements governing how or where detention is implemented. Indeed, a separate statute, § 1231, governs "the appropriate places for detention" for all individuals awaiting a removal decision. Neither does § 1225(b) impose any requirements regarding the steps or the timing of regular removal proceedings: those are governed entirely by § 1229 and § 1229a.

Asylum Plaintiffs' claim concerning the timing of the initial hearing in regular removal proceedings does not challenge, nor even incidentally implicate, their detention—the sole requirement that the expedited removal scheme continues to impose on them after transfer to regular removal proceedings. Plaintiffs' claim does not attack § 1225(b)'s mandatory detention requirement; thus, this case poses no direct challenge to the statute's implementation. *See* 8 U.S.C. § 1225(b); *Barajas-Alvarado*, 655 F.3d at 1086 n.10; Dkt. 192. Neither do Asylum Plaintiffs challenge a policy that carries out expedited

removal—the initial hearing in regular removal proceedings is a circumstance attendant to regular removal, not expedited removal. *See* 8 U.S.C. § 1229a; Dkt. 192. Furthermore, the timing of presentment before an immigration judge can hardly be deemed even incidental to detention.[5] The time at which Asylum Plaintiffs first see an immigration judge in regular removal proceedings does not affect their detention status in any way. Asylum Plaintiffs remain detained pending "further consideration of the application of asylum." § 1225(b)(1)(B)(ii). This remains the prescribed term of detention whether Asylum Plaintiffs receive an initial hearing in regular removal proceedings within 48 hours or 40 days. Because the initial hearing in regular removal proceedings does not "implement" or "carry out" the expedited removal statute, the Court has jurisdiction to hear a challenge to its timing. Accordingly, the Court may certify a class that includes individuals screened for expedited removal and transferred to regular removal proceedings.

The language in the expedited removal statute regarding the process available to individuals in expedited removal determined *not* to have a credible fear confirms the Court's conclusion that the timing of a hearing in regular removal proceedings does not implement expedited removal. Principles of statutory interpretation require the Court to look to the plain language of the statute. *Caminetti v. United States*, 242 U.S. 470, 485 (1917). Moreover, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Duncan v. Walker*, 533 U.S. 167, 173 (2001) (citation omitted). Here, the statute expressly provides that individuals found not to have a credible fear are afforded specific proceedings that must occur within a specific time frame. § 1225(b)(1)(B)(iii)(III) (review requested from an immigration judge to be concluded within 7 days). Conversely, the expedited removal

---

[5] Challenges to "other circumstances incidental to removal," do not "call[] into question the legality of the expedited removal process itself," and thus do not implicate the implementation of expedited removal. *Al Otro Lado*, 423 F. Supp. 3d at 867.

statute does not specify any proceedings available to individuals found to have a credible fear, and other provisions clarify that proceedings thereafter are governed by § 1229a. *See* 8 C.F.R. §§ 208.2(c)(1), 208.2(c)(3), 208.30(f); *see also* 8 U.S.C. §§ 1225(b), 1229(a). Had Congress intended that the expedited removal statute continue to govern proceedings after an individual has been found to have a credible fear and transferred to regular removal proceedings, it presumably would have done so expressly as it did for individuals determined to be without a credible fear. Thus, the absence of any similar language regarding individuals transferred to regular removal proceedings confirms that § 1225(b) does not implement such proceedings.

### III. CONCLUSION AND ORDER

For the reasons set out above, the Court GRANTS IN PART Plaintiffs' motion for reconsideration [Dkt. 192] and DENIES Defendants' motion for reconsideration [Dkt. 191] as follows. The Court determines it has jurisdiction to include Asylum Plaintiffs in the class and orders the parties to meet and confer regarding revising the class definition or defining a subclass for certification accordingly. The parties are to file their stipulation by August 31, 2022. If the parties are unable to reach an agreement, Plaintiffs shall file their proposed subclass along with briefing by September 28, 2022, and obtain a hearing date on the motion from the Court in accordance with the local rules. Defendants shall submit their opposition by October 12, 2022. Plaintiffs may submit a reply by October 19, 2022.

**IT IS SO ORDERED.**

Dated: 7/27/22

Hon. Jinsook Ohta
United States District Judge