| | |
|---|---|
| Bardis Vakili (SBN 247783)<br>(bardis@vakililegal.com)<br>Law Office of Bardis Vakili P.C.<br>Cooperating Counsel, ACLU of San Diego & Imperial Counties<br>P.O. Box 234160<br>Encinitas, CA 92023<br>T: (619) 483-3490<br><br>Aleksandr Gelberg (SBN 279989)<br>(gelberg@fr.com)<br>Megan A. Chacon (SBN 304912)<br>(chacon@fr.com)<br>Geuneul Yang (SBN 323287)<br>(jyang@fr.com)<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Suite 400<br>San Diego, CA 92130<br>T: (858) 678-5070<br><br>*Counsel for Plaintiff-Petitioners*<br>Additional Counsel Listed on Signature Page | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br>Civil Division, U.S. Department of Justice<br>WILLIAM C. PEACHEY<br>Director<br>Office of Immigration Litigation (OIL)<br>District Court Section (DCS)<br>MATTHEW P. SEAMON<br>Senior Litigation Counsel, OIL-DCS,<br>CA Bar No. 309249<br>CATHERINE M. RENO<br>Senior Litigation Counsel, OIL-DCS,<br>NY Bar No. 5118047<br>HUY M. LE<br>Trial Attorney, OIL-DCS, MA. Bar No. 697256<br><br>*Attorneys for Defendant-Respondents* |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Orlando CANCINO CASTELLAR, Ana Maria HERNANDEZ AGUAS, Michael GONZALEZ,<br>　　　　Plaintiff-Petitioners,<br>v.<br>Alejandro MAYORKAS, Secretary of Homeland Security; et al.,<br>　　　　Defendant-Respondents. | Case No. 3:17-cv-00491-JO-AHG<br>**Joint Motion for Final Approval of Settlement**<br>Fairness Hearing Date: March 14, 2024, 9:30 am<br>Judge: Hon. Jinsook Ohta |

## I. INTRODUCTION

The parties hereby jointly request that this Court grant final approval of the class action settlement agreement ("Agreement") in this case, attached hereto as Exhibit A to the Declaration of Bardis Vakili ("Vakili Decl."). The Court previously granted preliminary approval of the Agreement and approved a notice plan to inform class members and give them an opportunity to object. The 30-day notice period has now ended, and there have been no objections. Thus, there is no cause to alter the presumption that the Agreement is fair, reasonable, and adequate.

Accordingly, because the Agreement provides substantial relief to the class and was reached via arms-length settlement negotiations after years of zealous litigation, the parties respectfully request that the Court find the Agreement "fair, reasonable, and adequate" under Fed. R. Civ. P. 23(e) and grant final approval.

## II. RELEVANT BACKGROUND

The parties provided a detailed procedural history in their motion for preliminary approval, ECF No. 242 at 1-4, and a similar history is included in the first four pages of the Agreement, Vakili Decl., Ex. A. Therefore, they will spare the Court repetition of that history here. In summary, the history amply demonstrates that this case was vigorously litigated by both sides for many years, during which time voluminous discovery was taken and the parties ascertained the Court's views on the case through several decisions on the merits of the claims.

On August 31, 2022, the Court issued an Order certifying the following class:

> *All individuals in the Southern District of California—other than (a) individuals being subjected to expedited removal proceedings under § 1225(b)(1) as defined by the Court's order at ECF No. 210, (b) unaccompanied minors, or (c) individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an*

> *immigration judge.*
>
> *Any such detained individual who is transferred from expedited removal to INA § 240 removal proceedings at DHS's discretion or transferred to INA § 240 removal proceedings to seek asylum or withholding of removal after the individual has been found to have a credible fear and has not had a hearing before an immigration judge enter the class upon the filing of the Notice to Appear (NTA) in immigration court.*

ECF Nos. 212, 214.

On January 18, 2024, the parties filed a Joint Motion for Preliminary Approval of Settlement and Request for Fairness Hearing, which included a proposed process for the provision of notice to the class. ECF No. 242. On January 22, 2024, the parties filed a Joint Motion to Amend the Start of the 30-Day Notice Period. ECF No. 243. On January 24, 2024, the Court granted both motions. ECF No. 245.

Pursuant to that Order, a 30-day notice period began on January 30, 2024. *Id.* The notice period required Defendants to post signage "in intake rooms, holding cells, and near telephones in the common areas of housing units, of all **CBP** and **ICE** facilities within the geographical definition of the class where **Class Members** may be held." Agreement § 10.a. (emphasis in original). The signage was to be provided in English, Spanish, Arabic, Russian, and Mandarin, *id.*, which the parties confirmed were among the most frequently spoken languages by people in removal proceedings in the region. The signage was to contain plain language, agreed upon by the parties, describing the terms of the Agreement, as well as "a phone number that **Class Members** can call to reach class counsel free of charge to discuss this Agreement," "the date of the final approval hearing," and "detailed instructions for how a **Class Member** can file objections to the Agreement with the Court from within **ICE** or **CBP** custody." *Id.* (emphasis in original).

Defendants complied with the requirements of the notice plan. Vakili Decl.,

Ex. B–E (Decl. of Joseph J. Suazo, Jr.; Decl. of Moises Castillo; Decl. of Stephen Crudale; Decl. of Kyle Harvick). In addition, class counsel circulated the notice and Agreement to several listservs and groups known to advocate for and/or represent class members in the facilities covered by the Agreement, including to the local chapter of the American Immigration Lawyers Association, non-profit legal organizations providing free legal representation to people in custody at Otay Mesa Detention Center and Imperial Regional Detention Facility, and advocacy organizations dedicated to protecting the rights of people in immigration custody. Vakili Decl. ¶ 7.

The class notice period ended on February 29, 2024. To date, it appears no individuals have filed objections on the Court's docket, and no individuals who called class counsel lodged objections. *Id.* ¶¶ 8-12.

### III.  KEY TERMS OF THE AGREEMENT

Among other things, the Agreement provides the following relief for class members:

- Once a class member enters ICE custody, ICE shall file a Notice to Appear ("NTA"), the charging document in regular removal proceedings, with the immigration court as soon as reasonably possible and no later than 72 hours after a class member enters its custody (Agreement § 2.a.);
  - When Border Patrol arrests individuals who most recently entered the United States more than 14 days prior to the apprehension date, the agency will transfer such class members to ICE custody within 72 hours, at which point the class member will benefit from the above provision (*id.* § 2.b.);[1]
  - When the CBP Office of Field Operations (the component of CBP

---

[1] Nothing in the settlement prevents any agency from releasing any class member at any time in its discretion. *See* Agreement § 4.d.

       operating at ports of entry) takes individuals with exigent medical needs and individuals over 65 years of age into its custody, the agency will transfer such individuals to ICE custody within 72 hours, at which point the individual will benefit from the provision in the first bullet point above (*id.*);

- When agents of ICE or CBP complete NTAs, they will provide an agreed-upon written notice to class members, which they may keep, advising them of their rights to a prompt first appearance before an immigration judge (*id.* § 3);
  - If a class member elects to have a prompt first appearance, the immigration court will schedule the first hearing so that it takes place within 8 days of the court receiving the NTA (*id.* § 4.a.);
  - If a class member does not elect to have a prompt first appearance, the immigration court will schedule the first hearing so that it takes place within 15 days of the court receiving the NTA (*id.* § 4.b.);
- ICE or CBP will file class member requests for custody redeterminations on a Form I-286 along with the NTA, and upon receiving such a request, the immigration court will schedule a bond hearing for the soonest available date, though the class member may request a continuance to gather evidence or secure counsel (*id.* § 5);
- ICE will program a telephone number, agreed upon in advance by the parties, into each of its pro bono telephone platforms at the Otay Mesa Detention Center and the Imperial Regional Detention Facility, allowing individuals in those facilities to place free telephone calls to an organization or agency that provides free legal representation to individuals in that facility (*id.* § 6)
- Defendants will provide semi-annual reporting to class counsel to allow monitoring of compliance with the Agreement, with the Magistrate Judge to retain jurisdiction over compliance disputes (*id.* §§ 7, 8);

- Defendants will pay $645,000 to class counsel in settlement of attorneys' fees and costs (*id.* § 9).

## IV. ARGUMENT

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). It has repeatedly recognized that "voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

Court approval is required for settlement of a certified class action. Fed. R. Civ. P. 23(e)(1). Because the Court "serves as guardian for the absent class members who will be bound by the settlement," it "therefore must independently determine the fairness of any settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1124 (E.D. Cal. 2009) (citing *Ficalora v. Lockheed Cal. Co.,* 751 F.2d 995, 996 (9th Cir. 1985)).

Having issued its preliminary approval, this Court now must make a final determination whether the Agreement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). In making this determination, the Court must consider at least four statutory factors:

 (1) whether "the class representatives and class counsel have adequately represented the class;"

 (2) whether "the proposal was negotiated at arm's length;"

 (3) whether "the relief provided for the class is adequate," taking into

account (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class," (iii) "the terms of any proposed award of attorney's fees," as well as (iv) "any agreement to be identified under Rule 23(e)(3);", and

(4) whether "the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has identified other factors courts may consider, many of which overlap with the requirements of Rule 23(e), but which also include: the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and, most notably for final approval, the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

"Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

### A. The Court Has Already Considered the Relevant Factors and Found the Agreement Was within the Range of Judicial Approval as Fair, Reasonable, and Adequate.

In granting preliminary approval after the parties provided detailed support for each factor identified above, the Court necessarily found that the Agreement was sufficiently "within the range" of being fair, reasonable, and adequate to warrant setting a final fairness hearing and providing notice to the class. ECF Nos. 242, 245; *see In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM JMA, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (quoting Newberg on Class Actions, § 11:25 (4th Ed. 2002)). As detailed in the parties' joint motion for preliminary approval,

ECF No. 242, consideration of the relevant factors amply demonstrates that the Agreement is indeed fair, reasonable, and adequate.

*First*, counsel and the named plaintiffs adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This case was intensely litigated for nearly seven years, including two rounds of motions to dismiss, two motions to reconsider the orders on those motions to dismiss, two rounds of class certification motions, voluminous and lengthy discovery including review of thousands of pages of documents, nine depositions (including 30(b)(6) depositions from four agency components), and retention of experts, as well several motions and conferences to resolve discovery disputes. *See* ECF No. 242 at 5-7.

*Second*, the Agreement was reached after extended arms-length negotiations spanning years, much of which was conducted under the oversight of Magistrate Judge Goddard. *Id.* at 7-8; Fed. R. Civ. P. 23(e)(2)(B). This fact alone creates a presumption of fairness. *See Harris v. Vector Mktg. Corp.*, No. 08–cv–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

*Third,* the relief provided and described above more than adequately addresses the central harms alleged in the complaint regarding the alleged delays in presenting class members to immigration judges for initial appearances. Although it does not achieve everything Plaintiffs sought to accomplish at the outset of the case, the substantial relief is adequate under Rule 23(e) when considering the "costs, risks, and delay of trial and appeal risks of continued litigation." Fed. R. Civ. P. 23(e)(2)(C)(i); *see* ECF No. 242 at 8-12.

The proposed fee and cost award was also subject to rigorous scrutiny by Defendants and Magistrate Judge Goddard, and it is eminently reasonable in light of the fact that this case has been zealously litigated for nearly seven years. Fed. R. Civ. P. 23(e)(2)(C)(iii); ECF No. 242 at 12. The amount of fees was not even discussed, much less negotiated, until after agreement on the substantive merits of

settlement was negotiated and substantially finalized. *Id.* at 8. Thus, although "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is fundamentally fair, adequate, and reasonable," there is no risk here that Defendants obtained, in exchange for paying more in attorneys' fees, "an economically beneficial concession with regard to the merits provisions, in the form of … less injunctive relief for the class than [it] could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003).

*Fourth*, the Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); ECF No. 242 at 13. As a Rule 23(b)(2) class action, the Agreement's provisions apply equally to all class members. There are slight variations depending on the arresting agency, but these variations merely mitigate the impact of additional processing imposed on class members apprehended by CBP. It is appropriate for class settlements to account for slightly different legal or factual positions occupied by different categories of class members. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 839-40, 854-61 (1999).

The additional factors identified by the Ninth Circuit, *Hanlon*, 150 F.3d at 1026, also weigh in favor of approval. Ample discovery has been conducted, the views of experienced counsel support approval, and the federal government is a participant in the case. ECF No. 242 at 5-6, 12.

Thus, the Court already considered the relevant factors and deemed the Agreement to be "within the range" for judicial approval, pending the class notice period. *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009). As detailed below, nothing that has happened since the Court's preliminary approval order warrants altering the presumption that the Agreement is indeed fair, reasonable, and adequate.

### B. The Response of Class Members Does Not Refute the Presumption that the Agreement is Fair, Reasonable, and Adequate.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also Harris v. Vector Mktg. Corp.*, No. 08–cv–5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). Here, the Agreement was clearly reached after such arm's length negotiations, and the response of class members during the notice period does not disturb the presumption that the Agreement is fair, reasonable, and adequate.

Class counsel received several dozen phone calls during the notice period from individuals in immigration custody or their family members inquiring about the Agreement. Vakili Decl. ¶ 8. None expressed any objection to the Agreement, and most were explicitly supportive. *Id.* ¶¶ 8-12. No class members raised concerns about attorneys' fees. *Id.* ¶ 12. Several individuals were in a procedural posture in which they had been waiting several weeks or months for a credible fear interview. *Id.* ¶ 10. Class counsel explained to each that, due to the Court's order on class certification, ECF No. 179, they were not yet class members covered by the Agreement, but that their rights might be protected by a separate class action settlement and that they might join the class in this case if they pass their credible fear interviews and an NTA was filed. *Id.* While these individuals expressed disappointment that they were not included in the class definition for this case, none objected to the Agreement. *Id.*

Class counsel also informed organizations and professional associations of advocates and immigration attorneys representing and/or assisting people in

immigration custody. Vakili Decl. ¶ 7. None objected to the Agreement, and the response was positive. *Id.*

Thus, now that the class notice period is complete, nothing in the response from class members, former class members, soon-to-be class members, or advocates representing the interests of class members warrants altering the presumption that the Agreement is fair, reasonable, and adequate.

## V.   CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court find the Agreement is fair, reasonable, and adequate, and grant final approval of the Agreement.

Dated: March 7, 2024          Respectfully submitted,

By: */s/ Bardis Vakili*
Bardis Vakili (SBN 247783)
(bardis@vakililegal.com)
Law Office of Bardis Vakili, P.C.
Cooperating Counsel, ACLU of San Diego & Imperial Counties
P.O. Box 234160
Encinitas, CA 92023
T: (619) 483-3490

Aleksandr Gelberg (SBN 279989)
(gelberg@fr.com)
Megan A. Chacon (SBN 304912)
(chacon@fr.com)
Geuneul Yang (SBN 323287)
(jyang@fr.com)
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070

|   |   |
|---|---|
|   | Leonard B. Simon (SBN 58310) |
|   | (lens@rgrdlaw.com) |
|   | LAW OFFICES OF LEONARD B. SIMON P.C. |
|   | 655 West Broadway, Suite 1900 |
|   | San Diego, CA 92101 |
|   | Telephone: (619) 338-4549 |
|   |   |
|   | **Attorneys for Plaintiff-Petitioners** |
|   |   |
| Dated: March 7, 2024 | BRIAN BOYNTON |
|   | Principal Deputy Assistant Attorney General |
|   | Civil Division, U.S. Dep't of Justice |
|   | WILLIAM C. PEACHEY |
|   | Director, Office of Immigration Litigation- |
|   | District Court Section (OIL-DCS) |
|   | CATHERINE M. RENO |
|   | Senior Litigation Counsel, OIL-DCS |
|   | HUY M. LE |
|   | Trial Attorney, OIL-DCS |
|   | <u>s/ Matthew P. Seamon</u> |
|   | MATTHEW P. SEAMON |
|   | Senior Litigation Counsel, OIL |
|   | E-mail: matthew.seamon2@usdoj.gov |
|   |   |
|   | TARA K. MCGRATH |
|   | United States Attorney, S.D. Cal. |
|   | SAMUEL W. BETTWY |
|   | Assistant U.S. Attorney |
|   |   |
|   | **Attorneys for Defendant-Respondents** |