# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between the parties in *Cancino Castellar, et al v. Mayorkas et al.*, Case 3:17-cv-00491-JO-AHG.

The plaintiffs are Jose Cancino Castellar, Ana Maria Hernandez Aguas, and Michael Gonzalez ("Plaintiffs").

The defendants, in their official capacities only, are Alejandro Mayorkas, Secretary of Homeland Security; Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement; Troy A. Miller, Acting Commissioner, U.S. Customs and Border Protection; Jamison Matuszewski, Director, San Diego Field Office, U.S. Immigration and Customs Enforcement; Merrick Garland, Attorney General of the United States; and David L. Neal, Director, Executive Office for Immigration Review ("Defendants").

Except as otherwise specified, defined terms shall have the meanings set forth in this Agreement.

## RELEVANT PROCEDURAL HISTORY

**A.**　　On March 9, 2017, Plaintiffs filed a complaint in the United States District Court for the Southern District of California ("Court"), initiating this action *Cancino Castellar, et al v. Mayorkas et al.*, Case 3:17-cv-00491-JO-AHG ("Action"). Plaintiffs asserted three claims, alleging violations of the (1) Fifth Amendment to the U.S. Constitution, (2) Fourth Amendment of the U.S. Constitution and (3) Administrative Procedures Act, 5 U.S.C. § 551, et seq. ("APA"). On the same day, Plaintiffs filed a motion for class certification.

**B.**　　On May 22, 2017, Defendants filed a motion to dismiss and an opposition to class certification.

**C.**　　On December 14, 2017, the Court heard argument on Defendants' motion to dismiss.

**D.**　　On February 8, 2018, the Court issued an order granting Defendant's motion to dismiss.

**E.**     On March 8, 2018, Plaintiffs filed a motion to reconsider the order granting Plaintiffs' motion to dismiss in light of intervening Supreme Court precedent in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Defendants opposed.

**F.**     On September 5, 2018, the Court issued an order granting in part and denying in part Plaintiffs' motion to reconsider. The Court reaffirmed its order granting Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim for detention without a neutral finding of probable cause, but reinstated Plaintiffs' Fifth Amendment and related APA claims for detention without prompt presentment for an initial appearance.

**G.**     On October 15, 2018, Defendants filed a renewed motion to dismiss Plaintiffs' remaining claims. Plaintiffs opposed.

**H.**     On June 11, 2019, the Court issued an order granting in part and denying in part Defendants' renewed motion to dismiss. The Court dismissed Plaintiff Gonzalez's procedural due process claim under the Fifth Amendment of the U.S. Constitution, as well as Plaintiffs' APA claims under 5 U.S.C. § 706(1) for unreasonable delay. The Court denied Defendants' motion with regard to the remaining Plaintiffs' procedural due process claims under the Fifth Amendment, as well as all Plaintiffs' substantive due process claims under the Fifth Amendment and related APA claims under 5 U.S.C. § 706(2).  The Court declined to decide Plaintiffs' class certification motion and directed the parties to propose a briefing schedule for a renewed class certification motion.

**I.**     On July 15, 2019, Defendants filed an answer to the complaint.

**J.**     The Parties proceeded to engage in substantial discovery, including production of documents, taking depositions, and responding to written discovery. They also sought resolution of certain discovery disputes before the Court.

**K.**     On October 16, 2020, Plaintiffs filed a renewed motion for class certification. Defendants opposed.

**L.**     On November 9, 2020, Plaintiffs filed a motion to reconsider the order dismissing their Fourth Amendment claims, in light of intervening precedent in

2

*Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020) and *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020). Defendants opposed.

**M.**    On August 30, 2021, the Court issued an order denying Plaintiffs' motion to reconsider the order dismissing their Fourth Amendment claims.

**N.**    On September 8, 2021, the Court issued an order granting in part and denying in part Plaintiffs' motion for class certification. On September 20, 2021, the Court appointed as class counsel the following attorneys who remain as counsel of record in this Action: Bardis Vakili, Aleksandr Gelberg, Megan Chacon, Esha Bandyopadhyay, and Leonard Simon.

**O.**    On November 20, 2021, after a dispute arose regarding the scope of the class definition, the Parties submitted briefing seeking clarification on the class definition.

**P.**    On January 5, 2022, the Court issued an order transferring this case from the calendar of the Honorable Cynthia Bashant to the calendar of the Honorable Jinsook Ohta.

**Q.**    On July 27, 2022, the Court issued an order (ECF No. 210) resolving the dispute regarding the class definition and ordered the Parties to meet and confer regarding the class definition.

**R.**    On August 31, 2022, the Court issued an Order granting the Parties stipulation on the definition of the certified class, which had the effect of certifying the following class jointly proposed by the Parties:

> *All individuals in the Southern District of California—other than (a) individuals being subjected to expedited removal proceedings under § 1225(b)(1) as defined by the Court's order at ECF No. 210, (b) unaccompanied minors, or (c) individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border*

*Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an immigration judge.*

*Any such detained individual who is transferred from expedited removal to INA § 240 removal proceedings at DHS's discretion or transferred to INA § 240 removal proceedings to seek asylum or withholding of removal after the individual has been found to have a credible fear and has not had a hearing before an immigration judge enter the class upon the filing of the Notice to Appear (NTA) in immigration court.*

## AGREEMENT

## 1. <u>Definitions</u>

      **a.**    The term "***Action***" means the civil action captioned *Cancino Castellar, et al v. Mayorkas et al.*, Case 3:17-cv-00491-JO-AHG, United States District Court for the Southern District of California.

      **b.**    The term "***Agreement***" means this Class Action Settlement Agreement, including all exhibits.

      **c.**    The term "***CBP***" means U.S. Customs and Border Protection and any of its component agencies, including the Office of Field Operations ("OFO") and U.S. Border Patrol ("Border Patrol").

      **d.**    The term "***Class Member***" means all individuals in the Southern District of California—other than (a) individuals being subjected to expedited removal proceedings under § 1225(b)(1) as defined by the Court's order at ECF No. 210, (b) unaccompanied minors, or (c) individuals with administratively final removal orders—who (1) are or will have been in the civil custody of the San Diego Field Office of ICE, the San Diego Field Office of CBP Office of Field Operations, the San Diego Sector of U.S. Border Patrol, and/or the El Centro Sector of U.S. Border Patrol, collectively, for longer than 48 hours and (2) have not had a hearing before an immigration judge. Any such detained individual who is transferred from expedited removal to INA § 240 removal proceedings at DHS's discretion or transferred to INA § 240 removal proceedings to seek asylum or

withholding of removal after the individual has been found to have a credible fear and has not had a hearing before an immigration judge enter the class upon the filing of the Notice to Appear (NTA) in immigration court.

**e.**     The term "***Compliance Report***" means a report produced by Defendants as described in Section 7.

**f.**     The term "***Defendants***" means U.S. Customs and Border Protection, including the Office of Field Operations and U.S. Border Patrol; the Executive Office for Immigration Review, within the United States Department of Justice; and U.S. Immigrations and Customs Enforcement.

**g.**     The term "***Defendants' Counsel***" means the United States Department of Justice, Civil Division, Office of Immigration Litigation – District Court Section.

**h.**     The term "***Domiciled Individual***" means an individual apprehended by Border Patrol who most recently entered the United States more than 14 days prior to the apprehension date.

**i.**     The term "***EOIR***" shall mean the Executive Office for Immigration Review, within the United States Department of Justice.

**j.**     The term "***Final Order***" means entry by the Court of an order that grants final approval of this Agreement as binding upon the Parties and the Class Members, and dismisses the case, with prejudice respecting the Settled Claims.

**k.**     The terms "***Initial MCH***" or "***Initial Master Calendar Hearing***" means a first appearance before an immigration judge in removal proceedings.

**l.**     The term "***ICE***" means U.S. Immigration and Customs Enforcement and Removal Operations.

**m.**     The term "***IRDF***" means the Imperial Regional Detention Facility.

**n.**     The term "***NTA***" means the Notice to Appear, Form I-862.

**o.**      The term "***OMDC***" means the Otay Mesa Detention Center.

5

**p.**     The term "***Parties***" means Plaintiffs and Defendants.

**q.**     The term "***Plaintiffs' Counsel***" or "***Class Counsel***" means the Law Offices of Bardis Vakili P.C., Fish & Richardson P.C., the ACLU Foundation of San Diego & Imperial Counties, and the Law Offices of Leonard B. Simon.

**r.**     The term "***Settled Claims***" means all claims for relief that were brought or could have been brought on behalf of Class Members based on the facts and circumstances alleged in the operative complaint or at any other time during litigation of the Action, excluding claims for damages.

## 2.  Prompt Filing of NTAs

**a.**     If ***ICE*** or ***CBP*** determines that a ***Class Member*** will remain in ***ICE*** custody for the initiation of removal proceedings, ***ICE*** shall file the ***NTA*** with the immigration court as soon as is reasonably possible and no later than 72 hours after taking the individual into custody. ***ICE*** will continue to maintain a goal of filing the NTA within 48 hours of taking the individual into custody, but the failure to do so will not be a violation of this Agreement.

**b.**     As it pertains to ***CBP***, Section 2.a applies only to ***Domiciled Individuals*** that Border Patrol apprehends. Specifically, Border Patrol will process and transfer ***Domiciled Individuals*** into ***ICE*** custody within 72 hours of Border Patrol apprehending them. OFO also will process and transfer into ***ICE*** custody individuals with exigent medical needs and individuals over 65 years of age within 72 hours of OFO apprehending them.

**c.**     The timing requirements of this section may be extended for an additional reasonable period of time where extraordinary circumstances exist, including but not limited to: court closures, detention center quarantines, sickness or injury of a party, or other unforeseen circumstances outside Defendants' control. When such extraordinary circumstances exist, ***ICE*** and ***CBP*** will endeavor to meet the requirements of this section as soon as possible once the extraordinary circumstance has passed. Ordinary or common circumstances impacting agency operations, including staffing and resource constraints, generally will not qualify as extraordinary circumstances. In the event of any dispute regarding whether a circumstance impacting the timing requirements of this section qualifies as an extraordinary circumstance, the Parties will promptly meet and confer to resolve

the dispute, and may seek resolution of the dispute before Judge Goddard pursuant to Section 8 if necessary.

**3.** __Notice of Right to a Prompt First Appearance__

**a.**    When an agent or officer of ***ICE*** or ***CBP*** completes an ***NTA*** for a ***Class Member***, the agent or officer will provide a form with the following notice to the ***Class Member***:

> *"The Department of Homeland Security has determined you will remain in custody for your removal proceedings.*
>
> *You have the right to a prompt first appearance before the immigration court. The date of your first appearance will be at least 10 days from now so you can have an opportunity to find an attorney. But you can request an earlier hearing date if you give up your right to that 10-day period by signing where indicated on the NTA form.*
>
> *At your first appearance, you can request more time to prepare your case or to seek an attorney. You can also ask the court about the process for seeking your release."*

**b.**    A copy of the form will be given to each ***Class Member*** to keep.

**c.**    If requested by the Class Member, the form will be read orally in a language the Class Member can understand by the officer, agent, or an interpreter. The form will also be available in the following languages: English, Spanish, Arabic, Russian, and Mandarin.

**4.** __Prompt Scheduling by EOIR of Initial First Appearance in Immigration Court__

**a.**    For individuals who request a prompt initial appearance pursuant to Section 3, ***EOIR*** will schedule the ***Initial MCH*** such that it occurs within 8 calendar days, if not sooner, after EOIR receives the ***NTA***.

**b.**    For individuals who do not request a prompt initial appearance pursuant to Section 3, ***EOIR*** will schedule the ***Initial MCH*** such that it occurs within 15 days after EOIR receives the ***NTA***.

**c.**     The timing requirements of this section may be extended for an additional reasonable period of time where extraordinary circumstances exist, including but not limited to: court closures, detention center quarantines, sickness or injury of a party or immigration judge, or other unforeseen circumstances outside Defendants' control. When such extraordinary circumstances exist, ***EOIR*** will endeavor to hold the ***Initial MCH*** as soon as possible once the extraordinary circumstance has passed. Ordinary or common circumstances impacting agency operations, including staffing and resource constraints, generally will not qualify as extraordinary circumstances. In the event of any dispute regarding whether a circumstance impacting the timing requirement of this section qualifies as an extraordinary circumstance, the Parties will promptly meet and confer to resolve the dispute, and may seek resolution of the dispute before Judge Goddard pursuant to Section 8 if necessary.

**d.**     Nothing in this section prevents ***ICE*** or ***CBP***, in the exercise of their discretion, from reconsidering a determination to keep a ***Class Member*** in custody.

## 5. <u>Prompt Notice of Bond Hearing Requests and Scheduling of Bond Hearings</u>

**a.**     ***CBP*** or ***ICE*** will file a completed Form I-286 along with the ***NTA*** for individuals detained under 8 U.S.C. § 1226.

**b.**     Upon receiving a Form I-286 with a box checked indicating that a ***Class Member*** requests a redetermination of the custody decision by the immigration judge, ***EOIR*** will schedule a bond hearing for the soonest available date. At that hearing, ***Class Members*** may request additional time to gather evidence or to secure the representation of counsel.

## 6. <u>Facilitation of Access to Counsel</u>

**a.**     ICE will program a telephone number, agreed upon in advance by the parties, into each of its pro bono telephone platforms at ***OMDC*** and ***IRDF***, allowing individuals in those facilities to place free telephone calls to organizations or agencies that provide free legal representation to individuals in that facility. The precise number and corresponding organization or agency for each facility will be agreed upon by the parties and approved by EOIR prior to finalizing this Agreement.

**b.**     ICE will place a notice next to the phones in the facility advising individuals of the availability of free calls to the specific organization or agency on the agreed upon numbers in this section. The notice will be written in the following 5 languages: English, Spanish, Arabic, Russian, and Mandarin.

## 7.  <u>Compliance Reporting</u>

**a.**     For three years after final approval of this Agreement or until early termination pursuant to Section 11.c. is granted, on the last business day of every sixth month, Defendants will provide **Compliance Reports** to **Class Counsel** that include data for a subset of the preceding six-month time period to include five consecutive business days (Monday to Friday), excluding federal holidays, in each reporting month, for a total of approximately 30 days total per six-month reporting period. Specifically, **Defendants** will provide the five consecutive business days starting with the first Monday of each reporting month. For example, if final approval were to occur on March 23, 2023, **Defendants** would provide the first **Compliance Report** to **Class Counsel** on September 29, and the **Compliance Report** would provide data for April 3-7, May 1-5, June 5-9, July 3-7, August 7-11, and September 4-8, 2023 (excluding the federal holidays on July 4 and September 4). Each **Compliance Report** will include the following data points:

  i.   For **Class Members** who enter **ICE** custody on a reported day,[1] the mean and median days from the date an individual enters **ICE** custody until **ICE** files an **NTA** for that **Class Member**, excluding those who had a Credible Fear Interview, as well as the underlying data for each **Class Member** (all information relating to an individual protected from disclosure under law will be redacted);

  ii.  For **Class Members** identified by **ICE** pursuant to subparagraph i., the mean and median days from the date **EOIR** receives an **NTA** for a **Class Member** until the time that **Class Member** had their **Initial MCH**, as well as the underlying data**;** and

---

[1] **ICE** will send **EOIR** a list of all **Class Members** taken into **ICE** custody during the relevant reporting week and **EOIR** will use this list as the universe of **Class Members** for that reporting cycle. **EOIR** will use the "A" Numbers received from **ICE** to query its data system to determine the date that **EOIR** received each **Class Member's NTA**. **EOIR** will share this information with **ICE** for their reporting purposes. **EOIR** will also determine each **Class Member's Initial MCH** from the list provided by **ICE** and report that data, including means and medians.

iii. For ***Domiciled Individuals*** taken into Border Patrol custody on a reported day, the mean and median days a ***Domiciled Individual*** spent in Border Patrol custody, as well as the underlying data. Specifically, for each ***Domiciled Individual***, ***CBP*** will report the date of arrest, the date of the placement/detention request, and the date of ***ICE*** approval for detention.

iv. The underlying data to be provided will include, to the extent applicable for each ***Class Member***: (a) the ***Class Member's*** first name, last name, and Alien number; (b) the date the ***Class Member*** entered ***ICE*** custody; (c) the date the ***Class Member*** entered Border Patrol Custody; (d) the ***NTA*** filing date; (e) the ***NTA*** receipt date[2]; and (f) the date of the ***Initial MCH***. Within 10 business days after receiving the underlying data, Plaintiffs may request a copy of the ***NTA*** form, which may be redacted if necessary, for up to 30 of the ***Class Members*** included in that reporting period for the purposes of reviewing compliance with Section 4.

## 8. <u>Remedies</u>

**a.** The parties agree to consent to Magistrate Judge Allison H. Goddard's handling of any disputes regarding compliance with the terms of this Agreement and shall file all necessary forms with the Court to effectuate that consent.

**b.** In the event of any dispute, the parties must meet and confer to attempt to informally resolve the dispute. If the parties are unable to reach an informal resolution, they must email Judge Goddard's chambers at <u>efile_goddard@casd.uscourts.gov</u> to request a conference with Judge Goddard to discuss the dispute. The email must include: (1) at least three proposed times mutually agreed upon by the parties for the conference; (2) a neutral statement of the dispute; and (3) for each party, a one-paragraph description of their position on the dispute. The Parties will request a Court order if necessary to protect the privacy rights of any person under law.

---

[2] The ***NTA*** receipt date is the date the case commences for ***EOIR***. Although the ***NTA*** receipt date frequently is the same as the ***NTA*** filing date, that is not always the case. For example, if an incomplete or defective ***NTA*** is filed, the immigration court will reject it and the case will not commence until a corrected ***NTA*** is re-filed. Including both dates will provide helpful context in these situations.

9. **Attorneys' Fees and Costs**

    **a.**    Upon final approval by the Court of this Agreement, Defendant agrees to pay Plaintiffs an amount of $645,000.00 in attorneys' fees and costs in full settlement of attorneys' fees and costs for this action and all obligations and disputes arising from it.

10. **Class Notice**

    **a.**    If the Court preliminarily approves this Agreement and sets a date for a final approval hearing, the parties will thereafter cooperate in implementing a notice plan reasonably designed to ensure that *Class Members* receive notice of this Agreement. This notice plan will include, at a minimum:

    i.    Posting by Defendant of signage, agreed upon by both parties, in intake rooms, holding cells, and near telephones in the common areas of housing units, of all *CBP* and *ICE* facilities within the geographical definition of the class where *Class Members* may be held, for the period between any preliminary approval of this Agreement and the final approval hearing;

    ii.    Such signage shall be in in the following 5 languages: English, Spanish, Arabic, Russian, and Mandarin. The signage shall contain plain language informing *Class Members* of the terms of this Agreement mutually agreed upon by the Parties, and shall provide a phone number that *Class Members* can call to reach class counsel free of charge to discuss this Agreement;

    iii.    Such signage shall contain the date of the final approval hearing as well as detailed instructions for how a *Class Member* can file objections to the Agreement with the Court from within *ICE* or *CBP* custody. The instructions shall explain that any objections filed by *Class Members* must contain the name and booking number of the objecting *Class Member*, as well as a clear statement of each objection and any legal or factual support for the objection(s) made. The instructions shall explain that objections shall be deemed delivered on the date the *Class Member* delivers the objection to a member of Defendant's staff or subcontractor's staff to be placed in the mail;

    iv.  Copies of the Agreement will be available for review at the guard desk in each housing unit in **OMDC** and **IRDF**.

    **b.**    Nothing in this paragraph or this Agreement shall prevent Plaintiffs' counsel from further disseminating notice of this Agreement through other methods reasonably calculated to ensure **Class Members** receive adequate notice.

    **c.**    Prior to any final approval hearing regarding this Agreement, Defendants shall provide declarations to the Court confirming the posting of signage referenced in this provision, and Plaintiffs' counsel shall provide a declaration to the Court detailing additional efforts, if any, they have undertaken to ensure **Class Members** are aware of this Agreement.

## 11. <u>Jurisdiction, Termination of Obligations, and Dismissal</u>

    **a.**    Upon final approval by the Court of this Agreement, and except as otherwise provided herein, each **Class Member** and his or her assignees, heirs, successors and personal representatives, agrees to unconditionally release the United States of America and all Defendants, including their sub-agencies, officers, agents, and employees, from all claims related to the timing of initial appearances or probable cause review as asserted or as could have been asserted in the Complaint based on events that occurred on or before the date of entry of the preliminary approval order. Plaintiffs agree to the dismissal with prejudice of this **Action** and all **Settled Claims**, according to the terms of this Settlement including the Court's ongoing jurisdiction regarding enforcement. Nothing in this Agreement shall have any preclusive effect on any damages claim by any Class Member.

    **b.**    The parties shall consent to the continuing jurisdiction of United States Magistrate Judge Allison H. Goddard to enforce the terms of this Agreement for a period of up to three (3) years after dismissal of the action. The Court may enforce the terms of Sections 2 through 5 this Agreement only on an individual basis, with respect to the application of such terms to an individual class member against whom proceedings under 8 U.S.C. §§ 1221-1231 have been initiated.

    **c.**    Defendants may request early termination of jurisdiction and the obligations of this Agreement if, after submitting four consecutive reports pursuant to Section 7, they have demonstrated substantial compliance with the terms of this Agreement.

**d.**      Unless otherwise stated in this Agreement, the obligations of this Agreement shall automatically terminate at the same time as the Court's jurisdiction. At that time, the Agreement shall dissolve without further action.

**e.**      Upon entry of the ***Final Order***, the ***Parties*** will execute and file a Joint Motion for Dismissal of the ***Action*** with prejudice, consistent with the terms of this ***Agreement***.

## 12. <u>General Provisions</u>

**a.**      This Agreement reflects the Parties' compromise and settlement of disputed claims. Its provisions, and all related drafts, communications and discussions, cannot be construed as or deemed to be evidence of an admission or concession of any point of fact or law by any person or entity and cannot be offered or received into evidence or requested in discovery in this Action or any other action or proceeding as evidence of an admission or concession.

**b.**      This Agreement is entered into freely by the Parties. The Parties agree that an Order approving this Agreement will determine that the Agreement is "fair, reasonable, and adequate" to the class pursuant to Fed. R. Civ. P. 23(e)(2). The Parties further agree that nothing in this Agreement authorizes the Court to order injunctive relief in any form against the Defendants on behalf of the Class.

**c.**      Defendants expressly reserve their discretion, authority, and prerogative to issue new regulations. Additionally, nothing in this Agreement shall prevent Defendants from amending their regulations, manuals, policies, procedures, and/or practices as necessary or for purposes of complying with applicable case law, statutory changes, and/or precedential decisions.

**d.**      The Parties' counsel shall use their best efforts to cause the Court to grant Preliminary Approval of this Agreement and Settlement as promptly as practicable, to take all steps contemplated by this Agreement to effectuate the Settlement on the stated terms and conditions, and to obtain Final Approval of this Agreement and Settlement.

**e.**      The time periods and/or dates described in this Agreement with respect to providing Notice of the Preliminary Approval of the Agreement and Preliminary Approval and Fairness hearings are subject to approval and change by

the Court or by the written agreement of the Parties' counsel, without notice to Class Members.

      **f.**    The dates described herein refer to calendar days, unless otherwise stated. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday, or court holiday, that act may be performed on the next business day with the same effective as if it had been performed on the day or within the period of time specified by or under this Agreement.

      **g.**    The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement will constitute the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any judicial or other proceeding, if any, involving the interpretation of this Agreement. Any amendment or modification of the Agreement must be in a writing signed by Plaintiffs, Plaintiffs' Counsel, and Defendants' Counsel.

      **h.**    This Agreement shall be binding upon and inure to the benefit of the Parties' respective heirs, successors, and assigns.

      **i.**    All counsel and any other person executing this Agreement and any of the exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken under the Agreement to effectuate its terms.

      **j.**    Nothing in this Agreement should be construed as establishing any right or interest in challenging any other ICE, CBP, or EOIR action, decision, determination, order, form, instruction, training material, delay, or process or procedure, beyond those expressly provided herein or under law.

      **k.**    The Parties shall have the right to seek from the Court relevant modifications of this Agreement to ensure that its purposes are fully satisfied, provided that any request for a modification has been preceded by good faith

negotiations between the Parties. The Parties may agree in writing to modify the deadlines established in this Agreement without Court approval, but such writing must be lodged with the Court.

**l.**     The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

**m.**     This Agreement shall be valid and binding as to the Class Members and Defendants upon (1) signature by two of the three Plaintiffs, (2) signature by authorized representatives of Defendants, and (3) signature as to form by an authorized representative of each of the law firms defined as Plaintiffs' Counsel, under the condition that the Agreement is approved by the Court.

**n.**     This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**o.**     The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

**p.**     The Parties acknowledge that the Parties have mutually participated in the drafting of this Agreement and it is agreed that no provision herein shall be construed against any party hereto by virtue of the drafting of this Agreement. If any provision of this Agreement shall be held invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. This instrument shall constitute the entire agreement between the Parties, and it is expressly understood and agreed that this Agreement has been freely and voluntarily entered into by the parties hereto with the advice of counsel, who have explained the legal effect of this Agreement. The Parties further acknowledge that no warranties or representations have been made on any subject other than as set forth in this Agreement.

**q.**     This Agreement, whether or not executed, and any proceedings taken pursuant to it:

      i.   shall not be construed to waive, reduce, or otherwise diminish the authority of the Defendants to enforce the laws of the United States against Class Members, consistent with the Constitution and laws of the United States, and applicable regulations;

      ii.   shall not be offered or received against the Defendants as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by any of the Defendants of the truth of any fact alleged by the Plaintiffs or the validity of any claim that had been or could have been asserted in the Action or in any litigation or the deficiency of any defense that has been or could have been asserted in the Action or of any liability negligence, fault, or wrongdoing of the Defendants or any admission by the Defendant of any violation of or failure to comply with the Constitution, law or regulations; and

      iii.   shall not be offered or received against the Defendants as evidence of a presumption, concession, or admission of any liability, negligence fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Agreement, in any other civil criminal or administrative action or proceeding, other than such proceedings a may be necessary to effectuate the provisions of this Agreement; provided however that if this Agreement is approved by the Court, Defendants may refer to it and rely upon it to effectuate the liability protection granted them hereunder.

**r.**    Class Counsel and Plaintiffs have concluded that the terms and conditions of this Agreement are in the best interests of Class Members and that further litigation would be protracted and delay any relief to the Class Members. Taking into account these factors, as well as the risks and limitations of further litigation, Class Counsel and Plaintiffs agreed to settle in the manner and upon the terms set forth in this Agreement. Such agreement to settle is not an admission or concession that the procedures agreed upon, in whole or in part, comport with Defendants' statutory or constitutional obligations.

    **s.**     All notices to the Parties required by this Agreement shall be made in writing and communicated by email to the following addresses:

       Plaintiffs' Counsel or Class Counsel:

Bardis Vakili
Law Office of Bardis Vakili, PC
Cooperating Counsel for the ACLU Foundation of San Diego & Imperial Counties
(619) 483-3490
bardis@vakililegal.com

Aleksandr Gelberg
gelberg@fr.com
Megan A. Chacon
chacon@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real, Suite 100
San Diego, CA 92130

Esha Bandyopadhyay
bandyopadhyay@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063

Leonard B. Simon
lens@rgrdlaw.com
LAW OFFICES OF LEONARD B. SIMON P.C.
655 West Broadway, Suite 1900
San Diego, CA 92101

       Defendants or Defendants' Counsel:

Matthew P. Seamon
Trial Attorney
United States Department of Justice

Civil Division
Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
Telephone No.: (202) 598-2648
Email: matthew.seamon2@usdoj.gov

Catherine M. Reno
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
Telephone No.: (202) 353-8557
Email: Catherine.M.Reno@usdoj.gov

Huy Le
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
Telephone No.: (202) 353-4028
Email: huy.m.le2@usdoj.gov

The parties hereby agree to this settlement and have signed below accordingly.

**For Plaintiffs-Petitioners**

    /s/ Bardis Vakili                      Dated:  3/4/2024
Bardis Vakili
LAW OFFICE OF BARDIS VAKILI, P.C.
Cooperating Counsel, ACLU FOUNDATION
OF SAN DIEGO & IMPERIAL COUNTIES

    /s/ Aleksandr Gelberg              Dated:  3/4/2024
Aleksandr Gelberg
FISH & RICHARDSON P.C.

    /s/ Geuneul Yang                 Dated:  3/4/2024
Geuneul Yang
FISH & RICHARDSON P.C.

    /s/ Leonard B. Simon            Dated:  3/4/2024
Leonard B. Simon (SBN 58310)
LAW OFFICES OF LEONARD B. SIMON P.C.

    /s/ Jose Cancino Castellar        Dated:  3/4/2024
Jose Cancino Castellar
Plaintiff-Petitioner

    /s/ Ana Maria Hernandez Aguas    Dated:  3/4/2024
Ana Maria Hernandez Aguas
Plaintiff-Petitioner

**For Defendant-Respondents**

    /s/ Matthew P. Seamon          Dated:  3/6/24
Matthew P. Seamon
Senior Litigation Counsel, OIL

    /s/ Catherine M. Reno          Dated:  3/6/24
Catherine M. Reno
Senior Litigation Counsel, OIL

__/s/ Huy M. Le_____               Dated:__3/6/24_____
Huy M. Le
Trial Attorney, OIL